IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRAVETTE JOHNSON AND
CURTIS WILLIAMS,

    Plaintiffs,

v.                              Civil Action No. 3:17-cv-00553-MHL

CITY OF RICHMOND, VIRGINIA,
ET AL,

    Defendants.

**BRIEF IN SUPPORT OF DEFENDANT JASON NORTON'S
RULE 12(B)(6) MOTION TO DISMISS THE COMPLAINT**

## I.      INTRODUCTION

Plaintiffs Bravette Johnson ("Johnson") and Curtis Williams ("Williams") were both arrested after police officers discovered contraband in their possession during the execution of search warrants that were allegedly procured by Defendant Jason Norton ("Norton"). Each Plaintiff admits he had illegal contraband in his possession, and there is no dispute that the possession of this contraband constitutes probable cause to arrest and prosecute. In fact, Plaintiffs pleaded guilty to the crimes committed.

Plaintiffs' convictions were eventually vacated after inconsistencies with the search warrants Norton obtained were discovered. In asking that the convictions be vacated, Plaintiffs argued that evidence discovered in the searches should have been suppressed because of discrepancies involving the reliability of confidential informants in the applications for the search warrants.

Now, Plaintiffs are attempting to use those discrepancies in the applications for the search warrants to bring a civil claim against Norton for malicious prosecution under 42 U.S.C. §1983

and Virginia common law. Yet, even if the searches were unlawful, Plaintiffs' arrests and subsequent prosecutions were supported by probable cause - the possession of contraband - which is fatal to their malicious prosecution claims. Tellingly, Plaintiffs do not dispute that they are guilty.[1]

Unlike a criminal proceeding, the "fruit of the poisonous tree" doctrine does not apply to Section 1983 actions. Even if it did, Plaintiffs' indictments and guilty pleas constitute intervening and superseding causes that preclude their recovery under a malicious prosecution theory. At no point before bringing this action did Plaintiffs challenge the constitutionality of the search or seizure, and the statute of limitations for them to do so has long since run.

Realizing their Fourth Amendment search claims are time barred, Plaintiffs seek to assert their Fourth Amendment rights under the guise of malicious prosecution claims under the Fourth Amendment. Plaintiffs also attempt to assert claims that they were deprived of their Fourteenth Amendment right to make voluntary and intelligent pleas and their Fourteenth Amendment right to liberty. Finally, Plaintiffs claim that Norton, who had nothing to do with their conditions of confinement, violated their Eighth Amendment rights. The Court should not be distracted by Plaintiffs' novel theories of recovery, and Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

---

[1] Although not at issue in this motion, for which evidence outside the Complaint and supporting exhibits cannot be considered, a plaintiff's actual innocence is a prerequisite for bringing a Section 1983 action and, if Plaintiffs' claims survive, Norton will raise this defense at the appropriate time. See, e.g., Donahue v. Gavin, 280 F.3d 371, 383-84 (3d Cir. 2002) (plaintiff must be actually innocent to bring a Fourth Amendment claim).

## II.    ALLEGATIONS

A primary focus of Plaintiffs' Complaint is alleged misconduct on the part of Norton dating back to 2008.[2]  Plaintiffs allege that Norton was "troubled" and "earned a reputation as a sloppy, dishonest, and corrupt officer."  See Complaint (ECF Doc. 1, ¶ 22).  The Complaint alleges that Norton was known to seize money from criminals unlawfully.  Id. at ¶¶ 24-32.  The Complaint also alleges that Norton had a reputation of dishonesty among his colleagues.  Id. at ¶¶ 33-40.  There are also allegations that Norton had connections with gangs.  ¶41-50.  None of these allegations relate to the claims against Norton or the conduct Norton allegedly engaged in concerning Plaintiffs.[3]

With respect to the claims against Norton, the Complaint alleges that Norton, in establishing confidential informants' reliability, falsified informant resumes on applications used to procure search warrants pertaining to Plaintiffs.  More specifically, Plaintiffs allege that Norton would employ "differing résumés . . . for the same informant and identical résumés . . . for purportedly different informants."  Id. at ¶ 66.  Plaintiffs claim that but-for this misconduct, a search warrant would not have been issued, and they would not have been arrested, indicted, or imprisoned.  Id. at ¶¶ 70-85, 86-97.  Indeed, Plaintiffs both have a similar story: each was arrested after police officers discovered contraband in his possession; each acknowledged his guilt and pleaded guilty; and each had his conviction vacated after confidential informant inconsistencies or irregularities with the search warrant were later discovered.  Id. at ¶¶ 70-85, 86-97.

The Complaint and criminal documents referenced therein reveal the following:

---

[2] For a more detailed statement of the allegations, Norton directs the Court's attention to the Motions to Dismiss and Briefs in Support filed by the other defendants.

[3] Norton denies these allegations; however, for purposes of this motion only, it is recognized that the Court must treat the allegations as true.

<u>Bravette Johnson</u>:   On March 11, 2010, state and federal officers executed a search warrant at a home in the City of Richmond.   <u>Id.</u> at ¶ 70, 78.   The officers discovered contraband. <u>Id.</u> at ¶ 78.   Johnson was immediately arrested.   <u>Id.</u>   Johnson was a guest in the home and did not live there.   <u>Id.</u>

Johnson acknowledged his guilt.   <u>Id.</u> at ¶ 80.   He pled guilty to state charges on August 17, 2010 and received a prison sentence of 15 years in jail, with 13 years suspended, and a period of supervised probation.   <u>Id.</u>   Johnson, however, could not stay out of trouble as he was arrested again less than a year after his release from prison.   <u>Id.</u> at ¶ 82.   He was charged with possession with the intent to distribute a controlled substance.   <u>Id.</u>   The Commonwealth originally nolle prossed the charges against Johnson, but he was later indicted for these same acts.   <u>Id.</u> at ¶ 83. Johnson again acknowledged his guilt, pled guilty in 2014, and received a four-year sentence. <u>Id.</u> at ¶¶ 83-4.   The Commonwealth's Attorney later moved to vacate Johnson's 2010 conviction, citing problems with the arrest warrant prepared by Norton.   <u>Id.</u> at ¶ 85.   On August 27, 2015, Johnson's 2010 conviction was vacated and his 2012 conviction was amended to constitute a second offense.   <u>Id.</u>

<u>Curtis Williams</u>:   Like Johnson, Williams was found with contraband.   <u>Id.</u> at ¶ 92.   Like Johnson, Williams was immediately arrested.   <u>Id.</u>   And, like Johnson, criminal charges were instituted against him.   <u>Id.</u> at ¶ 93.

Williams also acknowledged his guilt.   <u>Id.</u> at ¶ 94.   He pled guilty on December 11, 2009, and was sentenced to two years in jail and a term of probation.   <u>Id.</u>   On the same date, Williams was also sentenced to four months in jail for additional criminal conduct in an unrelated case.   *Id.* Williams was released from prison in April 2012.   <u>Id.</u> at ¶ 95.   Like Johnson, Williams could not stay out of trouble.   On August 3, 2013, Williams was arrested for violating the terms of his

probation.  Id.  He was released soon after his arrest.  Id.  On September 15, 2015, the Commonwealth moved to vacate Williams's 2009 conviction due to discrepancies with the warrant prepared by Norton.  Id. at ¶ 97.  On April 12, 2016, a Richmond Circuit Court judge vacated Williams' conviction.  Id.

## III.    LAW AND ARGUMENT

### A.    Standard of Review.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted.  Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Legal conclusions, however, enjoy no such deference.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009).  As the court pointed out in Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  556 U.S. at 678, 129 S. Ct. at 1949 (Emphasis added.  Internal quotations omitted).

To state a plausible claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). To discount such unadorned conclusory allegations "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950.  This approach recognizes that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of

entitlement to relief."' <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Twombly</u>, 550 U.S. at 557, 127 S. Ct. at 1966) (Emphasis added). As the court further noted in <u>Francis</u>, "[a]t bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 588 F.3d at 193 (internal quotation marks omitted).

**B.**     <u>**Plaintiffs Have Not Stated A Claim under Section 1983.**</u>

      **1.**     <u>**Plaintiffs' Fourth Amendment Claims Fail as a Matter of Law.**</u>

Plaintiffs each allege that Norton violated their Fourth Amendment rights by "intentionally or recklessly misrepresent[ing] material information to court in his applications for search warrants" which resulted in Plaintiffs being "seized, detained, imprisoned, and subjected to supervised probation pursuant to legal process unsupported by probable cause." <u>See</u> Complaint (ECF Doc. 1 at ¶¶ 128-29). In effect, Plaintiffs attempt to assert a malicious prosecution claim under Section 1983. <u>See</u> <u>e.g.</u>, <u>Burrell v. Virginia</u>, 395 F.3d 508 (4th Cir. 2005) (holding that a Section 1983 malicious prosecution claim is properly understood as a Fourth Amendment claim); <u>Smith v. Munday</u>, 848 F.3d 248, *2 (4th Cir. 2017) (holding that Section 1983 malicious prosecution claims are "founded on a Fourth Amendment seizure."). Plaintiff's Fourth Amendment claims nonetheless fail for three reasons: (1) there was probable cause for Plaintiffs' arrests; (2) the fruit of poisonous tree doctrine does not apply to Section 1983 claims; and (3) Plaintiffs' indictments are intervening and superseding causes that insulate Norton from liability. Consequently, Count I of the Complaint should be dismissed with prejudice.

### a.　　　Probable cause defeats Plaintiffs' Fourth Amendment Claims

To state a Fourth Amendment violation under a malicious prosecution theory, Plaintiffs must allege that "[1] the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." Smith, 848 F.3d at *2. Thus, the question at issue is whether there was probable cause to arrest Plaintiffs. Id. at *3. Probable cause requires more than bare suspicion, but it requires less than evidence necessary to convict. Id.

Here, it is clear from the Complaint that there was probable cause to support the arrest of each Plaintiff. Plaintiffs' claims against Norton hinge on allegations that Norton falsified confidential informant resumes to bolster their reliability on applications used to procure the search warrants. Plaintiffs do not, however, allege that the material facts constituting the probable cause for the search in the applications for the search warrants were fabricated, and Plaintiffs were not arrested based on Norton's alleged representations in the search warrants.[4]

Instead, Plaintiffs were arrested after illegal contraband was discovered when the search warrants were executed. It is the possession of the illegal drugs or weapons that provided the probable cause for Plaintiffs' arrests. Indeed, probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to believe] that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343 (1979).

---

[4] Plaintiffs cannot recover unless they prove a violation of their Fourth Amendment right to be free from unreasonable seizures. But the illegal seizure cannot be just any seizure: unlike the torts of false arrest and false imprisonment, the tort of malicious prosecution requires a seizure "pursuant to legal process." Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016), citing Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371 (1994). Legal process includes an arrest warrant. Id.

Under these circumstances, there is no question that probable cause existed to support Plaintiffs' arrests and prosecutions. See, e.g., United States v. Clyburn, 24 F.3d 613, 618 (4th Cir. 1994) (although the informant's reliability initially was questionable, the officer set up and monitored controlled purchases of cocaine supporting probable cause finding); Durham v. Horner, 690 F.3d 183 (4th Cir. 2012) (finding probable cause to arrest plaintiff for drug distribution based on police investigation even though police arrested the wrong person); Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016) (police officer cannot be liable for malicious prosecution if the arrest warrant was supported by probable cause); Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (deputies were amply justified in believing that Porterfield was engaging in criminal activity by attempting to sell a Mercedes Benz for cash and drugs based on informant information and police observations); Washington v. Daniels, No. 5:12-CT-3080-FL, 2014 WL 4701174, at *4 (E.D.N.C. Sept. 22, 2014), aff'd, 591 F. App'x 237 (4th Cir. 2015) (dismissing Section1983 malicious prosecution case because there was probable cause for the arrest despite plaintiff's contention that confidential informant lacked credibility).

Importantly, as discussed below, Plaintiffs have not alleged an illegal search claim against Norton, because they cannot successfully do so. As a result, the discovery of illegal contraband – the probable cause for their arrest and prosecution - is fatal to Plaintiffs' Fourth Amendment claims against Norton.

**b.      Norton is not liable under a "fruit of the poisonous tree" theory.**

Plaintiffs do not dispute that illegal drugs or other contraband were found when the search warrants were executed. Instead, it appears that Plaintiffs want to support their malicious prosecution claims on the theory that their possession of illegal drugs or weapons could not be considered for purposes of probable cause, because they were discovered during an illegal

search. However, even if the Plaintiffs' Fourth Amendment rights were violated by an illegal search, Norton cannot be liable under Section 1983 for a lawful arrest that results after an allegedly unlawful search. The "fruit of the poisonous tree" doctrine does not apply in Section 1983 cases.

The fruit of the poisonous tree doctrine is merely an extension of the exclusionary rule, see Segura v. United States, 468 U.S. 796, 804, 104 S. Ct. 3380 (1984), and as such generally operates "only in criminal trials." Pa. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 364 n. 4, 118 S. Ct. 2014 (1998). Consequently, "[v]ictims of unreasonable searches . . . may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999) (the lack of probable cause to stop and search does not vitiate the probable cause to arrest); see also Ware v. James City County, Virginia, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) (holding that the fruit of the poisonous tree doctrine does not apply in Section 1983 civil cases); see also Sommerville v. Dobson, No. 4:10CV67, 2011 WL 9160525, at *8 (E.D. Va. Mar. 8, 2011) (rejecting the argument that defendants were precluded from relying on probable cause evidence found during an unlawful search under the fruit of the poisonous tree doctrine in a Section 1983 claim); Guerrero v. Deane, 750 F. Supp. 2d 631, 652 (E.D. Va. 2010) (finding in a Section 1983 case that the lawfulness of an entry is a separate question from the lawfulness of a subsequent seizure).

Ware addressed legal issues similar to those at issue here. In Ware, the investigating officer, responding to a harassment complaint, entered a residence without a warrant to question the suspect plaintiff. 652 F. Supp. 2d at 697. An altercation ensued. Id. The investigating

officer called back-up and arrested the plaintiff.  Id. at 697-700.  In the subsequent civil suit, the plaintiff argued that his arrest was unlawful, regardless of whether the arresting officer had probable cause, because the officer violated his right to privacy by forcibly entering the home. Id. at 705.  The Court rejected this claim and held that the legality of the officer's entry was irrelevant to the question of probable cause for the arrest.  Id. at 706 (holding that the fruit of the poisonous tree doctrine does not apply in Section 1983 civil cases); see also Sommerville v. Dobson, No. 4:10CV67, 2011 WL 9160525, at *8 (E.D. Va. Mar. 8, 2011) (rejecting the argument that defendants were precluded from relying on probable cause evidence found during an unlawful search under the fruit of the poisonous tree doctrine in a Section 1983 claim. "Whether Dobson's and Ledbetter's entry onto Sommerville's property was lawful is irrelevant to the question of whether Dobson and Ledbetter are entitled to summary judgment on Sommerville's unreasonable seizure claim. The answer to that question depends solely upon whether Sommerville's alleged seizure was supported by probable cause.")

Moreover, Courts of Appeals for the Second, Third, Fifth, Ninth, and Eleventh Circuits have also found that the doctrine does not apply to Section 1983 claims.  See Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999) ("[v]ictims of unreasonable searches . . . may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution."); Hector v. Watt, 235 F.3d 154, 157 (3rd Cir. 2001) (declining to extend the exclusionary rule to civil cases) ; Wren v. Towe, 130 F.3d 1154 (5th Cir. 1997) (holding that the exclusionary rule was not applicable in a truck owner's Section 1983 action against law enforcement officers who allegedly conducted an illegal search of truck); Lingo v. City of Salem, 832 F.3d 953, 960 (9th Cir. 2016) ("Nothing within the fruit-of-the-poisonous-tree doctrine

suggests that an officer must ignore facts that would give him probable cause to arrest a person merely because those facts were procured through an unlawful search."); Black v. Wigington, 811 F.3d 1259, 1267-68 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers", finding that arrest warrants were plainly supported by probable cause listing the marijuana, drug paraphernalia, and clothing that the officers found in the Blacks' trailer).

Further, as the Second Circuit observed in Townes,

> The Supreme Court has refused . . . to extend the exclusionary rule to non-criminal contexts, including civil tax proceeding, see U.S. v. Calandra, 414 U.S. 338 at 454 & n. 28, 96 S.Ct. at 3032 & n. 28, habeas proceedings, see Stone v. Powell, 428 U.S. 465, 493, 96 S.Ct. 3037, 3051–52, 49 L.Ed.2d 1067 (1976), grand jury proceedings, see Calandra, 414 U.S. at 349–52, 94 S.Ct. at 620–22, INS deportation proceedings, see INS v. Lopez–Mendoza, 468 U.S. 1032, 1050, 104 S.Ct. 3479, 3489, 82 L.Ed.2d 778 (1984), and parole revocation proceedings, see Pennsylvania Bd. of Prob. & Parole v. Scott, 118 S.Ct. 2014, 2020 (1998).

Townes, 176 F.3d at 145–46 (2d Cir. 1999).

Not extending the exclusionary rule to civil claims makes sense when the genesis of the exclusionary rule is considered. "The exclusionary rule is [ ] a judicially created means of deterring illegal searches and seizures." Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363 (1998). **The Supreme Court has "emphasized repeatedly that the governments' use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution."** Id. at 362. **The rationale behind the exclusionary rule is "to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved," and "application of the rule has been restricted to those areas where its remedial objectives are thought to be most efficaciously served."**

United States v. Janis, 428 U.S. 433, 446–447 (1976) (citing U.S. v. Calandra, 414 U.S. 338, 348, 94 S. Ct. 613, 620, 38 L.Ed.2d 561 (1974)).

Again, the Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363, 118 S. Ct. 2014, 2019, 141 L. Ed. 2d 344 (1998). That is because applying the exclusionary rule to civil claims under Section 1983 has minimal deterrence benefits, since the use of the exclusionary rule in criminal trials already deters illegal searches. See e.g., U.S. v. Janis, 428 U.S. 433, 448 (1976) (holding that the exclusionary rule did not bar the introduction of unconstitutionally obtained evidence in a civil tax proceeding because the costs of excluding relevant and reliable evidence would outweigh the marginal deterrence benefits, which, the Court noted, would be minimal because the use of the exclusionary rule in criminal trials already deterred illegal searches).

While an illegal search may be actionable, a prosecution based on that search is not grounds for a malicious prosecution claim. Williams v. City of Tulsa demonstrates this point. 2016 WL 1572957 (N.D. Okla. Apr. 19, 2016). There, an officer fabricated a confidential informant in an affidavit to obtain a search warrant. Id. at *2. Police then executed the search warrants, found drugs and a firearm, and later arrested the plaintiff, who was convicted and sentenced to life imprisonment. Id. at *3. After serving six years in a maximum-security federal prison, the plaintiff was released around the time that officer was indicted for—and later convicted of—perjury. Id. at *4.

Relying on Black, Townes, and Wren, the court held that the fruit of the poisonous tree doctrine was inapplicable in the plaintiff's malicious prosecution case. Id. at *6-7. The court acknowledged that "a constitutional violation did occur" when the search warrant was executed.

But "without the benefit of the exclusionary rule and the fruit of the poisonous tree doctrine . . . no further constitutional violation occurred." Id. at *7. The court concluded that "this is not a case of actual innocence or wrongful imprisonment," and accordingly found "no reason to compensate [the plaintiff] for the six years he served." Id.; see also Bradshaw v. Mazurski, 2004 WL 170337, at *6 (N.D. Ill. Jan. 15, 2004) (refusing to apply the fruit of the poisonous tree doctrine where officers allegedly procured a search warrant using false testimony and then discovered contraband that led to the plaintiff's arrest and prosecution); Hopkins v. O'Brien, 2011 WL 4585233, at *5 (N.D. Ill. Sept. 30, 2011) (In Townes and Bradshaw, "an allegedly unlawful search disclosed evidence that supported the plaintiff's arrest; that evidence doomed the plaintiff's civil rights challenge to his arrest and prosecution, regardless of the circumstances in which it was uncovered."). Using illegally obtained evidence to prosecute does not itself violate the Constitution. Scott, 524 U.S. at 362.

Thus, the law is clear that Norton's alleged conduct in purportedly obtaining invalid search warrants does not preclude a finding of probable cause for the Plaintiffs' arrests in a civil malicious prosecution claim under Section 1983. Simply put, Plaintiffs are not permitted to pursue monetary compensation as a result of the alleged unlawful searches when there was probable cause for their arrest and prosecution. Plaintiffs have received the relief to which they were entitled as evidenced by the dismissal of their criminal charges and their release from jail. Townes, 176 F.3d at 148 ("Townes has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment.") Accordingly, Plaintiffs' Fourth Amendment claim should be dismissed with prejudice.

     **c.**     **Plaintiffs' indictments and/or waiver of indictments are intervening and superseding causes that insulate Norton from liability.**

Even if Plaintiffs could pursue a fruit of the poisonous tree theory, the actions of prosecutors and the guilty plea of both Plaintiffs broke any chain of causation between Norton obtaining the search warrants and any harm to Plaintiffs. Plaintiffs were indicted, and those indictments were supported by probable cause.

The Fourth Circuit has stated that "a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution.'" Evans v. Chalmers, 703 F.3d at 648. Because Section 1983 constitutional torts "require a demonstration of both but-for and proximate causation" id. at 674 (citing Murray v. Earle, 405 F.3d 278, 289-90 (5th Cir. 2005) and Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999)), "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure" id. (citation omitted).

The Fourth Circuit has recognized that "[it] has long since been settled by the Supreme Court that 'an indictment' 'fair upon its face,' returned by a 'properly constituted grand jury,' 'conclusively determines the existence of probable cause.'" Durham v. Horner, 690 F.3d 183, 189 (2012) (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)). The Durham court noted, however, that "notwithstanding the conclusive effect of the indictments, our precedents instruct that 'a grand jury's decision to indict….will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.'" Id. (internal citation omitted). While Plaintiffs allege alleges that Norton was subpoenaed in Williams's criminal case,[5] Norton is not accused of actually testifying at any of the hearings, let alone testifying falsely, nor is he

---

[5] See Complaint (ECF Doc. 1 at ¶ 94).

accused of misleading a grand jury about Williams. Indeed, no Defendant is accused of influencing either of the grand juries that indicted Williams and Johnson. Therefore, as in Durham, "the grand jury's probable cause determination and its [ ] indictments were the proximate cause of the Plaintiff's arrest and detention." Id.

Moreover, Plaintiffs' indictments were both justified by the plain fact that drugs and/or weapons were actually found. There is no question that probable cause existed to arrest and indict each Plaintiff. Indeed, Plaintiffs pleaded guilty, which also establishes there was probable cause to arrest. See Ein v. Barry, 14 F.3d 594 at *2-3 (4th Cir. 1994). It stands to reason that if Plaintiffs were not guilty of the underlying charges, they would have fought to suppress the evidence. If they were innocent, they would have known at the outset that there were deficiencies in the warrant applications. The independent actions of prosecutors, grand juries, and the Plaintiffs themselves in pleading guilty each serve as independent, superseding causes of any harm to the Plaintiffs. Consequently, Plaintiffs' Section 1983 malicious prosecution claims should be dismissed with prejudice.

## 2. Plaintiffs Cannot Sustain a Claim that their Fourteenth Amendment Right to Make a Voluntary And Intelligent Plea Was Violated.

In Count II of the Complaint, Plaintiffs pursue a novel theory of recovery against Norton, alleging that their Fourteenth Amendment right to make a voluntary and intelligent plea was violated. This theory of recovery is not actionable.

The Supreme Court has recognized that guilty pleas cannot be accepted by a criminal court without an affirmative showing that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). However, there does not appear to be any authority in this Circuit for the proposition that Section 1983 can be used as a vehicle to rectify an involuntary or unintelligent guilty plea. It makes sense that

Plaintiffs cannot use this device as a sword since the right to a voluntary and intelligent guilty plea is limited to a determination by a criminal court that the criminal defendant is properly informed about the charges he faces and the consequences of pleading guilty. See id. at 243-44 ("What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."); Meyer v. Branker, 506 F.3d 358, 367–68 (4th Cir.2007) ("For a guilty plea to be constitutionally valid, a defendant must be made aware of all the 'direct,' but not the 'collateral,' consequences of his plea."), cert. denied, 554 U.S. 925, 128 S. Ct. 2975, 171 L.Ed.2d 899 (2008)).

Plaintiffs will most likely rely on the Fourth Circuit's decision in United States v. Fisher, 711 F.3d 460 (4th Cir. 2013) to support their theory. Fisher, unlike the case at bar, was a criminal case. In Fisher, the defendant was charged with drug trafficking and a firearm crime solely based on evidence seized from his residence during the execution of a search warrant. Id. at 463. Subsequently, the defendant pleaded guilty to the firearm charge and was sentenced to 10 years in prison. Id. Over a year later, Officer Lunsford, who swore out the affidavit that supported the search warrant, pleaded guilty to a variety of fraud and theft offenses related to his duties as a DEA taskforce officer. Id. As a part of the officer's plea, the officer admitted to falsely identifying a confidential informant on an affidavit supporting a wiretap application, an affidavit supporting a criminal complaint, and numerous investigation reports. Id. Specifically with regard to Fisher's case, the officer admitted that the confidential informant he identified in the search warrant affidavit "had no connection to the case" and that another individual was "the real informant[.]" Id. The officer also admitted to receiving monetary kickbacks by splitting reward money with the confidential informants he falsely attributed information to. Id.

Fisher filed a motion to vacate his guilty plea based on this new information which the district court denied. Subsequently, the Federal Public Defender's Office filed a Section 2255 motion on Fisher's behalf, asking the court to vacate the judgment. Id. The district court denied that motion as well. The Fourth Circuit reversed, holding that the officer's false statement in the search warrant affidavit amounted to impermissible government conduct and that the defendant's plea was induced by that misconduct. Id. at 462, 467-68.

In so holding, the Fourth Circuit stated:

> Given the totality of the circumstances of this case - a law enforcement officer intentionally lying in an affidavit that formed the sole basis for searching the defendant's home, where evidence forming the basis of the charge to which he pled guilty was found - Defendant's plea was involuntary and violated his due process rights. Under these egregious circumstances, Defendant was "deceived into making the plea, and the deception prevents his act from being a true act of volition." Lassiter v. Turner, 423 F.2d 897, 900 (4th Cir. 1970).

Id. at 469.

In the case at bar, unlike in Fisher, Norton did not commit a crime, and there is no allegation that Norton personally profited in any of these cases like the officer in Fisher had done. There is no allegation that the probable cause information in the search warrant affidavits was inaccurate or was provided by an unreliable informant. Indeed, Plaintiffs were both found to be in possession of contraband just as the search warrants indicated they would. Thus, there can be no civil claim based on Fisher. See e.g., United States v. Doyle, 650 F.3d 460, 468 (4th Cir. 2011) ("[F]alse information will only void a warrant if the information was necessary to the finding of probable cause.")

3.     **Plaintiffs Have Not Stated a Fourteenth Amendment Deprivation of Liberty Claim or an Eighth Amendment Cruel and Unusual Punishment Claim.**

As in Ensley et al. v. City of Richmond, Civil Action No. 3:17-CV0024, it is anticipated that Plaintiffs will argue that their claims are akin to deprivation of liberty claims asserted by prisoners who have been detained past when their sentences have terminated. So-called "overdetention" cases arise when a jailer fails to timely release a prisoner. See e.g., Golson v. Department of Corrections, 814 F.2d 1491 (4th Cir. 1990) (ECF Doc. 51 at p. 13, fn. 10). There are no analogous cases in which a deprivation of liberty claim was asserted against an officer who was merely involved in pre-indictment activities.

There is no disputing that the Eighth Amendment does not attach "until after conviction and sentence." Ingraham v. Wright, 430 U.S. 651, 664 (1977); Graham v. Connor, 490 U.S. 386, 393 n.6 (1989). All of the conduct attributed to Norton occurred before Plaintiffs were convicted. As a result, Norton's alleged conduct is not governed by the Eighth Amendment. See Shanklin v. Seals, No. CIV.A 3:07CV319, 2010 WL 1225741, at *8 (E.D. Va. Mar. 26, 2010) ("The conduct of which Shanklin complains clearly occurred prior to any conviction, as his Complaint is devoted to a discussion of Defendants' actions during an investigation. Therefore the Eighth Amendment prohibition against cruel and unusual punishment does not apply.").

Plaintiffs will likely attempt to rely on Golson. Any such reliance would be misplaced, because the Fourth Circuit's holding does not support their claims. Golson was a *pro se* plaintiff who filed a Section 1983 lawsuit against the Department of Corrections and various corrections officials alleging that he was not given the proper credit for previous time spent in jail, and was therefore incarcerated for a longer period of time than he should have been. While the Court recognized Golson's claim, it was hardly a novel development, because the Eighth Amendment claim in that case was brought against those who managed and maintained the jail – those who

were directly responsible for the conditions and manner in which Golson was confined. See, e.g., Wells v. Artrip, No. 1:16CV00041, 2017 WL 1788385, at *1 (W.D. Va. May 3, 2017); Owens v. Butler, 2016 U.S. Dist. LEXIS 15673, *13 (W.D. N.C. February 9, 2016) ("Specifically, [the Plaintiff] must establish that a *jail official* knew of and disregarded a serious risk that he was being improperly detained." (Emphasis added)); Cheatham v. Johnson, 2010 U.S. Dist. LEXIS 14346, *13-15 (E.D. Va. February 18, 2010) (also rejecting due process claim). The common thread is that these types of claims are brought against those responsible for holding the individual – for the conditions or manner of confinement – not those responsible for providing the legal basis for the incarceration.

Likewise, Plaintiffs do not have a substantive due process claim for deprivation of liberty under the Fourteenth Amendment. In Brooks v. City of Winston-Salem, 85 F.3d 178, 184 (4th Cir. 1996), the Fourth Circuit rejected a deprivation of liberty claim under Section 1983 and held that "the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." Plaintiffs may attempt to discount Brooks on the grounds that it only addresses rights that may be invoked before trial, but such a contention would fail to consider that the only conduct at issue here is what Norton may or may not have done before Plaintiffs' indictments. Because Plaintiffs' substantive due process claim is predicated on damages resulting from an allegedly unconstitutional search, that claim must be grounded in the Fourth Amendment. See e.g. Albright v. Oliver, 510 U.S. 266, 274 (1994) (holding that if a right to be free from prosecution absent probable cause exists, it must instead be grounded on the Fourth Amendment's prohibition on unreasonable searches and seizures.)

There is simply no justification – either in fact or law – for permitting Plaintiffs to proceed against Norton on a substantive due process claim. Plaintiffs' claims are merely an

attempt to assert a false arrest claim against Norton and/or to repackage their efforts to pursue a malicious prosecution theory.

### 4. <u>Qualified Immunity Bars Plaintiffs' Section 1983 claims</u>.

The doctrine of qualified immunity also bars Plaintiffs' Section 1983 claims against Norton. Plaintiffs can only defeat qualified immunity if the constitutional right in question was "clearly established" at the time of the defendant's alleged violation. <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808, 815-16 (2009). A clearly established right is not discussed in a generalized fashion, but instead must be defined at a high level of particularity. <u>Wilson v. Kittoe</u>, 337 F.3d 392, 403 (4th Cir. 2003). The United States Supreme Court recently reiterated that "clearly established law must be 'particularized' to the facts of the case . . . [o]therwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." <u>White v. Pauly</u>, 137 S. Ct. 548, 552 (2017). In another case decided this year, the Supreme Court held that

> a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted. If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity. If not, however—*i.e.,* if a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability.

<u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1867 (2017).

The Fourth Circuit's recent decision in <u>Safar v. Tingle</u>, 859 F.3d 241, 246 (4th Cir. 2017) illustrates both the high bar for overcoming qualified immunity and the absence of any clearly established duty requiring officers to second-guess a neutral third party's determination of probable cause to arrest. In <u>Safar</u>, an officer obtained arrest warrants after retail employees accused the plaintiffs of obtaining fraudulent refunds. <u>Id.</u> at 244-43. The next day, the store's

representatives recanted the allegation of fraud.  But the arrest warrants were never withdrawn, and the plaintiffs were later arrested and incarcerated.  Id.

The plaintiffs brought a § 1983 claim, arguing that the officer had a "duty to take steps to withdraw the warrants upon learning that the charges were meritless."  Id. at 246.  The Fourth Circuit affirmed the dismissal of that claim because the officer was entitled to qualified immunity.  Id. at 251.

First, the court emphasized the high hurdle for overcoming qualified immunity in a § 1983 claim.  The "first step in any such claim is to pinpoint the specific right that has been infringed."  Id. at 246.  The right "should not be defined 'at a high level of generality,'" (quoting White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam)), but rather "'must be particularized to the facts of the case' so as to avoid transforming qualified immunity into 'a rule of virtually unqualified liability.'"  id.  Thus, the plaintiff must "'identify a case where an officer acting under similar circumstances . . . was held to have violated'" the Constitution.  Id.

Applying that high standard, the Fourth Circuit found the officer entitled to qualified immunity.  The plaintiffs "fail[ed] to note what exactly the duty was or where in the law the obligation [to have the warrant withdrawn] was to be found."  Id.  They did "not sketch out the procedures [the officer] was supposed to follow, identify the point in the criminal process when such steps should have been taken, or explain why it was her responsibility to have the warrants revoked."  Id.  Indeed, the plaintiffs' theory "would invite a legion of cases urging us to second-guess an officer's decision about whether to second-guess a magistrate's finding of probable cause."  Id. at 247.  The court thus found no clearly established "duty requiring police officers to follow some undefined procedure whenever they come across further information that casts doubt on an active arrest warrant."  Id.

Here, Plaintiffs seek to assert Section 1983 malicious prosecution claims despite the presence of probable cause for their arrest and prosecution. As set out above, there is no clearly established constitutional right to avoid arrest and prosecution when police officers discover illegal drugs and other contraband during a search, albeit through the execution of an invalid search warrant. There also is no clearly established constitutional right to have an officer who was only involved before plaintiffs' convictions ensure that pleas are intelligently and voluntarily made. Moreover, it was certainly not clearly established that the alleged actions of Norton would violate Plaintiffs' Fourteenth Amendment rights to liberty and Eighth Amendment rights against cruel and unusual punishment since Norton's alleged conduct could only implicate Fourth Amendment rights. Accordingly, Plaintiffs' Section 1983 claims should be dismissed on this basis as well.

5. **Plaintiffs' Section 1983 Claims are Barred by the Statute of Limitations**.

Each claim against Norton is predicated solely on the theory that Plaintiffs were illegally searched as a result of invalid search warrants. As such, Plaintiffs' Section 1983 claims are in reality claims for illegal searches, all of which are barred by the statute of limitations.

Section 1983 actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. Owens v. Okure, 488 U.S. 235, 239-40, 109 S. Ct. 573, 102 L.Ed.2d 594 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. § 8.01-243(A). The question of when a claim under Section 1983 accrues, however, is governed by federal law. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

A cause of action under Section 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable

inquiry will reveal his cause of action." Nasim, 64 F.3d at 955. Once a plaintiff has information regarding the fact of his injury and who effected it, the plaintiff has inquiry notice that requires him to undertake an investigation as to the details of his claims; and, "[t]o excuse him from promptly [making inquiry] by postponing the accrual of his claim would undermine the purpose of the limitations statute." Id. (citing and quoting United States v. Kubrick, 444 U.S. 111,122-124 (1979)); Lewis v. Clark, 534 F. Supp. 714 (D. Md. 1982) (holding the statute of limitations began to run at the time of the illegal search, not when the defendant police officer admitted to fabricating the search warrant and planting drugs). As the search warrants at issue were obtained and executed in 2009 and 2012, the statute of limitations has long expired.

There is one well-settled exception to this general rule: "a plaintiff attacking the legality of his conviction or confinement has no cause of action under Section 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corps." Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994). The Fourth Circuit, however, has held that "a Section 1983 action that would *not* render a conviction or sentence invalid and that seeks to recover damages other than those resulting from conviction or sentence was cognizable and could proceed, assuming no other bar to the action was present, even though the plaintiff's conviction or sentence had not been reversed." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 182-83 (4th Cir. 1996).

Claims involving allegedly falsified search warrant affidavits are analyzed under the Fourth Amendment. Miller v. Prince George's County, MD, 475 F.3d 621 (4th Cir. 2007). Such claims "do not necessarily imply the invalidity of [a] conviction and thus are not barred by" the accrual rule of Heck. Covey v. Assessor of Ohio County, 777 F.3d 186, 197 (4th Cir. 2015). Accordingly, Plaintiffs claims do not fall within this exception.

The Fourth Circuit's decision in <u>Cramer v. Crutchfield</u> perfectly illustrates this point. 648 F.2d 943, 945 (4th Cir. 1981). On September 5, 1977, the cab of Cramer's truck was allegedly searched illegally during a traffic stop initiated by Crutchfield. <u>Id.</u> at 944. An illegal radar detection device was found in the cab under a mattress. <u>Id.</u> Cramer was later convicted in the Prince George County General District Court for equipping his vehicle with the device in violation of Virginia law. <u>Id.</u> at 945. Cramer never asserted that the search was unlawful and never objected or moved to suppress the evidence found during the search. Cramer appealed his conviction to the Circuit Court for Prince George County. <u>Id.</u> On September 18, 1978, the charges against Cramer were dismissed by motion of the Commonwealth's Attorney. <u>Id.</u>

On September 18, 1979, more than two years after the search of Cramer's truck, Cramer filed a Section 1983 action against Officer Crutchfield, asserting that his constitutional rights were violated due to an unlawful search and seizure, malicious prosecution, and a malicious abuse of process. <u>Id.</u> at 944. The Fourth Circuit found that, while Cramer had stated a valid claim for illegal search and seizure, that claim was time-barred since the search occurred more than two years earlier. <u>Id.</u> at 945.

Just as in <u>Cramer</u>, Plaintiffs' claims here are predicated solely on the use of evidence that was allegedly obtained illegally through the execution of invalid search warrants. Because their claims are in reality claims for illegal search and seizure, Plaintiffs' claims are time-barred. Plaintiffs cannot state a claim for malicious prosecution for these reasons and the reasons stated by the other Defendants in their Motions to Dismiss and Briefs in Support.

**C.**     <u>**Plaintiffs' State Law Malicious Prosecution Claim Also Fails.**</u>

Plaintiffs also assert a claim against Norton for malicious prosecution under the common law of Virginia. The state law claim for malicious prosecution fails for the same reason the

Section 1983 malicious prosecution claim cannot survive – the arrests of each Plaintiff were supported by probable cause.

Actions for malicious prosecution "are not favored in Virginia" and "the requirements for maintaining such an action are more stringent than other tort cases." Reilly v. Shepherd, 273 Va. 728, 733, 643 S.E.2d 216, 218 (2007); Pallas v. Zaharopoulos, 219 Va. 751, 250 S.E.2d 356 (1979). This is because criminal prosecutions are essential for the maintenance of an orderly society, and people should not be discouraged from participating in such actions for fear of later civil lawsuits. Lee v. Southland Corp., 219 Va. 23, 26, 244 S.E.2d 756, 758 (1978). To sustain a cause of action for malicious prosecution, the plaintiff must prove that the prosecution was: (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and, (4) terminated in a manner not unfavorable to the plaintiff. O'Connor v. Tice, 281 Va. 1, 7, 704 S.E.2d 572, 575 (2011).

In the context of a malicious prosecution action, "malice is defined as any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished," Hudson v. Lanier, 255 Va. 330, 497 S.E.2d 471 (1998). The true issue is not whether the plaintiff was guilty or innocent, but whether there was probable cause for the prosecution and whether the civil defendant was motivated by malice. Page v. Wilson, 168 Va. 447, 454, 191 S.E. 678, 682 (1937).

"Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." Gaut v. Pyles, 212 Va. 39, 181 S.E.2d 645, 647 (1971) (internal quotation marks and citation omitted); Durham v. Horner, 759 F. Supp. 2d 810, 815 (W.D. Va. 2010), aff'd, 690 F.3d 183 (4th Cir. 2012).

As set forth above, Plaintiffs do not allege that the material facts constituting the probable cause for the search in the applications for the search warrants were fabricated. There are no allegations that Norton was materially involved in Plaintiffs' criminal proceedings. Plaintiffs do not dispute that illegal contraband was found during the search, and that cannot be ignored. Thus, there was in fact probable cause to arrest and prosecute. Norton is not aware of any case in Virginia that has allowed a malicious prosecution claim to proceed where the plaintiff actually committed the crime, but had his criminal case dismissed on a legal technicality.

Furthermore, the intervening indictments of Plaintiffs break any causal connection between Norton's alleged misconduct concerning the search warrants and the subsequent prosecutions, guilty pleas, and convictions.

Finally, the facts alleged do not support a finding of malice on the part of Norton under Virginia law. If anything, the alleged facts suggest an over-zealousness on the part of Norton to further the ends of justice and lock up criminals. That simply is not actionable under Virginia law. Thus, for these reasons and the reasons set forth with respect to the Section 1983 malicious prosecution claim, which incorporates elements of the analogous common law malicious prosecution claim, Plaintiffs' claims against Norton should be dismissed with prejudice.

**D.      The Rationale of the Townes Case Applies and Supports Dismissal of All Claims.**

Plaintiffs' demand for relief runs counter to the principles of tort law and public policy. "The evil of an unreasonable search and seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." Townes, 176 F.3d at 148. "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." Id.; Ware, 652 F. Supp. 2d at 706.

Numerous courts across the country, including the Third Circuit in <u>Hector v. Watt</u>, 235 F.3d 154, 157 (3rd Cir. 2001), and district courts, including in the Fourth Circuit, have followed <u>Townes</u> on this and related issues (such as the inapplicability of the fruit of the poisonous tree doctrine in Section 1983 actions).[6] Given the overwhelming consensus of opinion on this point, it is very likely that the Fourth Circuit would adopt the holdings in <u>Townes</u> and <u>Hector</u>. Norton urges this Court to do the same and dismiss this action with prejudice.

As noted above, a federal court considering a case with nearly identical circumstances dismissed those claims because that case, like this one, "[was] not a case of actual innocence or wrongful imprisonment," so there is "no reason to compensate" the plaintiffs for the time they served for offenses they committed. <u>Williams v. City of Tulsa</u>, 2016 WL 1572957, at *7 (N.D. Okla. Apr. 19, 2016). This Court should follow that same sound reasoning and dismiss this action with prejudice.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Defendant Jason Norton's Motion to Dismiss and dismiss Plaintiffs' Complaint with prejudice.

---

[6] <u>See</u> <u>Washington v. Hanshaw</u>, 552 Fed. Appx. 169, 172-173 (3rd Cir. 2014)(following <u>Townes</u> and <u>Hector</u>, and rebutting Fourteenth Amendment argument related to an illegal search); <u>Martin v. City of Chicago</u>, No. 15-cv-04576, 2017 U.S. Dist. LEXIS 1157 *9-13 (N.D. Ill. Jan. 5, 2017); <u>Willis v. Mullins</u>, Case No. 1:04-CV-6542 AWI BAM, 2014 U.S. Dist. LEXIS 37762, *16-17 (E.D. Cal. Mar. 20, 2014); <u>Koven v. Lewis</u>, 8:10CV373, 2014 U.S. Dist. LEXIS 2458 *15 (D. Neb. Jan. 9, 2014); <u>Silver v. D.C. Metro. Police Dept.</u>, 939 F. Supp. 2d 20, 22-23 (D.D.C. 2013) (citing <u>Townes</u> and <u>Hector</u>); <u>Smith v. Kelly</u>, Case No. C11-623RAJ, 2013 U.S. Dist. LEXIS 153172 *41 (W.D. Wash. Oct. 24, 2013); <u>Ruth v. Ford</u>, Case No. 09-11278, 2010 U.S. Dist. LEXIS 83825 *18-20 (E.D. Mich. Aug. 17, 2010); <u>Vaughn v. Davis</u>, Civil Action No. 8:07-1173-TLW-BHH, 2008 U.S. Dist. LEXIS 29867 *13-14 (D.S.C. Jan. 31, 2008); <u>see also</u> <u>Williams v. Carroll</u>, No. 08 C 4169, 1010 U.S. Dist. LEXIS 137868 *11, 14-15 (N.D. Ill. Dec. 29, 2010) (citing several Seventh Circuit district court decisions following <u>Townes</u> on the exclusionary rule and there agreeing that no damages were owed for an improper arrest once contraband was found).

**JASON NORTON**

By Counsel

/s/_____
David P. Corrigan
VSB No. 26341
Jeremy D. Capps
VSB No. 43909
M. Scott Fisher, Jr.
VSB No. 78485
Attorney for Jason Norton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 – Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

# C E R T I F I C A T E

I hereby certify that on the 6th day of October 2017, I filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send a Notice of Electronic Filing to all counsel of record.

/s/_____
David P. Corrigan
VSB No. 26341
Attorney for Jason Norton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com