UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRAVETTE JOHNSON

and

CURTIS WILLIAMS,

    Plaintiffs,

v.                                                    Civil Action No. 3:17CV553

CITY OF RICHMOND, VIRGINIA, *et al.*,

    Defendants.

## BRIEF IN SUPPORT OF DEFENDANTS GLEASON, SIPPLE, AND RUSSELL'S MOTION TO DISMISS

Defendants Christopher Gleason ("Gleason"), Charles Sipple ("Sipple"), and Roger Russell ("Russell") (collectively the "Officers"), by counsel, submit the following Brief in Support of their Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

## I. INTRODUCTION

Plaintiffs' multi-million dollar civil rights claims hinge on a single allegation of misconduct – that Jason Norton ("Norton") included false information about confidential informants in search warrant applications that ultimately led to their arrests. Plaintiffs spend over fifty pages of text trying to link this alleged misconduct to their subsequent convictions and imprisonment and to impute liability for Norton's actions to the Officers. However, Plaintiffs' theories of liability against the Officers ignore fundamental principles of law governing Section 1983 claims and are without merit.

First, a state actor can only be held liable for his own misconduct. The Complaint is devoid of any allegation that Gleason, Sipple, or Russell personally violated the Plaintiffs' constitutional rights. Rather, Plaintiff's theory is that the Officers violated their rights indirectly by failing to prevent or remediate Norton's misconduct.

Secondly, although the Fourth Circuit recognizes claims for bystander liability and supervisory liability based on an officer's failure to act, both of these claims require knowledge of a fellow officer's misconduct. Plaintiffs do not allege sufficient facts to show that the Officers knew of any relevant misconduct committed by Norton. Instead, they rely on conclusory allegations, such as "[w]idespread rumors, Norton's garbage paperwork, and a longstanding custom of ignoring the N-10 form . . . requirements easily put the [Officers] on . . . notice that Norton's warrant affidavits could not be trusted." Compl. ¶ 125 (internal quotation marks omitted). These allegations do not satisfy the federal pleading standard.

Third, Section 1983 claims require proof that the alleged misconduct was the proximate cause of the plaintiff's injury. The only relevant misconduct by Norton that Plaintiffs' allege is that he initiated unlawful searches. Even if these allegations are true, Plaintiffs' subsequent arrests and prosecutions broke any causal chain between Norton's conduct and Plaintiffs' imprisonment. Furthermore, any claim challenging Plaintiffs' arrests is barred by the two-year statute of limitations.

Lastly, the Officers are entitled to qualified immunity under the facts pled. Plaintiffs fail to allege a plausible claim for relief against the Officers, and, thus, the Officers' motion should be granted.

## II. BACKGROUND

Solely for purposes of this motion, the Officers accept all factual allegations contained in the Complaint as true.[1] This action is brought by two former inmates, who pled guilty to drug charges in 2009-10. *Id.* at ¶¶ 80, 94.

### a. Plaintiff Bravette Johnson

Bravette Johnson ("Johnson") was arrested on March 11, 2010, after officers "allegedly" discovered contraband during the execution of a search warrant at a private residence. *Id.* at ¶¶ 70, 78. Norton had applied for the search warrant. *Id.* at ¶ 71. Johnson contends that Norton's warrant application was flawed for several reasons. *Id.* at ¶¶ 72-76.

First, the informant resume that Norton submitted was nearly identical to two other resumes that Norton submitted for different informants in other cases. *Id.* at ¶¶ 75-76. Second, Johnson points to the N-10 form "associated with [his] arrest." *Id.* at ¶ 72. The Richmond Police Department (the "Department") uses N-10 forms to document payments made to confidential informants. *Id.* at ¶ 63. The N-10 form includes the informant's assigned number; the amount paid; and signatures of the informant, the officer working with the informant, and an officer witnessing the payment. *Id.* Johnson claims that the N-10 form connected to his arrest did not include a witness signature and that the informant, whose number and signature appeared on the form, later denied signing it. *Id.* at ¶ 72-73. Johnson also claims that Sipple signed and verified the N-10 form, despite the missing witness signature. *Id.* at ¶ 74.

Johnson pled guilty to possession of a controlled substance with the intent to distribute, second offense, on August 17, 2010, in the Circuit Court for the City of Richmond. *Id.* at ¶ 80,

---

[1] "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

82. He was released from prison on probation in November 2011. *Id.* at ¶ 81. In 2012, Johnson was arrested for probation violations and a third possession with intent to distribute charge. *Id.* at ¶ 82-83.

Johnson pled guilty to the third possession charge in August 2014. *Id.* at ¶ 84. While serving his sentence, Johnson "heard about Norton's misconduct" and alerted Richmond's Commonwealth's Attorney. *Id.* In July 2015, the Commonwealth's Attorney's Office moved the Richmond Circuit Court to vacate Johnson's 2010 conviction. *Id.* at ¶ 85. The Court granted this request and amended Johnson's 2014 conviction to that of a second offense. *Id.*

### b. Plaintiff Curtis Williams

Curtis Williams ("Williams") was arrested on July 7, 2009, for possession of contraband "allegedly" found on his person. *Id.* at ¶ 92. Norton had obtained a warrant for the search, which Williams contests. *Id.* at ¶¶ 86-89. Williams claims that the informant resume that Norton submitted was suspect on its face because it stated that the informant assisted with an unbelievably high number of prior searches and arrests. *Id.* at ¶ 88. Williams also claims that the resume was nearly identical to four other resumes that Norton submitted in 2009, some of which were attributed to other informants. *Id.* at ¶ 89.

Williams pled guilty to possession charges on December 11, 2009. *Id.* at ¶ 94. He was sentenced to two years for possession and received an additional four months of a suspended sentence on a prior charge. *Id.* Williams was released in April 2012, but was arrested for probation violations in August 2013. At the request of the Commonwealth's Attorney's Office, the Richmond Circuit Court vacated Williams' 2009 conviction in April 2016. *Id.* at ¶ 97.

### III. PLAINTIFFS' ALLEGATIONS AGAINST THE OFFICERS

In Count VI of their Complaint, Plaintiffs allege that the Officers deprived them of their Eighth and Fourteenth Amendment rights because they knew that Plaintiffs' imprisonment and probation were unwarranted, but "failed to take reasonable steps to secure, or assist in securing" their release. *Id.* at ¶¶ 157-163. Plaintiffs also assert a supervisory claim in Count IV, alleging that the Officers were deliberately indifferent to Norton's constitutional misconduct. *Id.* at ¶¶ 142-45. Plaintiff's constitutional claims against Norton include a Fourth Amendment claim for unlawful seizure (Count I); a Fourteenth Amendment claim for depriving Plaintiffs of their right to make voluntary and intelligent pleas (Count II); and an Eighth and/or Fourteenth Amendment claim, similar to that alleged against the Officers, that Norton failed to take reasonable steps to remedy Plaintiffs' unlawful imprisonment (Count III). *Id.* at ¶¶ 127-141. Plaintiffs' state law claim against Norton for malicious prosecution does not implicate the Officers.

The Complaint includes pages of rambling, scatter shot allegations against the Officers in an attempt to implicate them in Norton's alleged misconduct. These allegations can be divided into three categories, as described below.

    **a.**     **Formal Reprimands and General Misconduct**

Plaintiffs cite two formal reprimands that Norton received in March 2011. One concerned an incident in February 2009, in which Norton seized narcotics from two suspects, but failed to make an arrest. *Id.* at ¶¶ 32, 110-11. Allegedly, Norton said that he did not arrest the suspects because he was "attempt[ing] to use [one of them] as an informant." *Id.* ¶¶ 32, 111 (internal quotation marks omitted). But, neither suspect was registered as an informant. *Id.*

The second reprimand concerned inconsistencies in a group of Norton's N-10 forms. *Id.* at ¶¶ 34, 112. The signatures of one informant on two forms did not match that informant's

signatures on the other forms in the group. *Id.* Additionally, the informant signature on one form did not appear to be the signature of the informant identified elsewhere on that form. *Id.*

Plaintiffs further allege that Norton had affiliations with local gangs. Plaintiffs claim that Norton tipped off a gang member, known as R.A. ("R.A."), during a 2010 investigation conducted by the Richmond Area Violent Enterprise task force. *Id.* at ¶¶ 41-47, 109. The F.B.I. drafted a report documenting Norton's behavior and added it to the task force's files. *Id.* at ¶ 48. Plaintiffs also point to surveillance tapes, on which gang members identify Norton as an officer who could provide assistance to the gang. *Id.* at ¶ 49. Additionally, Norton failed to execute an arrest warrant on a known gang member and befriended another gang member on social media. *Id.* at ¶¶ 49-50.

Plaintiffs also reference a recorded interview of R.A. taken by the Department. *Id.* at ¶ 106. Plaintiffs allege that the recording was provided to internal affairs. *Id.* However, they do not allege what the content of the interview was. *Id.*

Plaintiffs allege, in general terms, that Norton's practice of falsifying search warrant applications was widespread. *Id.* at ¶¶ 66-69. But, they do not site any specific examples of this behavior other than in the Plaintiffs' cases. They rely, instead, on quotations from the Richmond Times Dispatch and statements made by an Assistant Commonwealth's Attorney to the F.B.I., which suggest that Norton's misconduct was repeated. *Id.*

  **b.**  **Inter-department Gossip**

Plaintiffs allege that Norton was a frequent topic of gossip in the Department. *Id.* at ¶ 31. Plaintiffs reference a number of statements made by fellow officers, none of whom are named in this suit, during the F.B.I.'s investigation. These officers mentioned several rumors about Norton within the department, including – that Norton "made up" language used in search

6

warrant applications, that he had friendly relationships with informants, that he failed to complete necessary forms when drafting warrants for body cavity searches, that on one occasion he searched a hotel room without a warrant, that he was connected to "missing money," and that he became intoxicated outside of work. *Id.* at ¶¶ 99-102.

      **c.    Problems with the N-10 Forms**

Finally, Plaintiffs point to broader problems in the Department's confidential informant program, specifically with the maintenance of N-10 forms. Based on statements made by Officer David Phillips to the F.B.I., Plaintiffs allege that officers would frequently sign N-10 forms as a witness without actually witnessing a payment. *Id.* at ¶ 119-120. Plaintiffs further allege that officers did not follow the Department's practice of updating resume sheets for their informants. *Id.* at ¶ 122. The resume sheets were meant to document each instance in which an informant provided valuable assistance to an officer. *Id.*

## IV. STANDARD OF REVIEW

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Mere labels, conclusions, or a "formulaic recitation of the elements of a cause of action" are insufficient. *Id.* Rather, allegations are facially plausible only when they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (internal quotation marks omitted).

# V. ARGUMENT

Plaintiffs' claims against the Officers arise under 42 U.S.C. § 1983, which provides causes of action to those deprived of their federal constitutional rights by persons acting under the color of state law. *Briggs v. Waters*, 455 F. Supp.2d 508, 518 (E.D. Va. 2006). Plaintiffs' claims fail under this statute because the facts pled do not establish that the Officers personally deprived the Plaintiffs of a constitutional right or that they knew of and tacitly authorized a constitutional violation committed by Norton. Moreover, the Complaint fails to state an underlying constitutional claim against Norton because Plaintiffs' cannot show that Norton's misconduct was the proximate cause of their injuries. The Plaintiffs have no basis for recovery.

    **a.    The legal standards governing the claims alleged against the Officers are well established.**

For an individual to be liable under Section 1983, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks and citations omitted). The defendant must have personal knowledge of and involvement in the constitutional violation alleged. *Id.* The Supreme Court of the United States affirmed this principle in *Iqbal*, holding that "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." 556 U.S. at 677.

Personal liability based on omissions or a failure to act is disfavored, in light of the general rule requiring affirmative misconduct. *Randall v. Prince George's County*, 302 F.3d 188, 202-03 (4th Cir. 2002). The Fourth Circuit recognizes bystander liability and supervisory liability as two limited exceptions to this rule that apply when a failure to act is coupled with a legal duty to act. *Id.* at 203.

Bystander liability requires proof that the defendant – "(1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." *Id.*; *Ruttenberg v. Jones*, 603 F. Supp. 2d 844, 871 (E.D. Va. 2009). Actual knowledge of another officer's misconduct is required. *Randall*, 302 F.3d at 204 n.24 ("If the bystander lacks . . . specific knowledge, he cannot be a participant in the unlawful acts . . ."); *Wiggins v. Queensberry*, 222 F. Supp. 3d 490, 501 (E.D. Va. 2016) (holding that the plaintiff must allege facts to show that the defendant was on notice that a fellow officer was violating the plaintiff's constitutional rights to state a plausible claim for bystander liability).

The Court in *Iqbal* characterized supervisory liability in the Section 1983 context as a "misnomer." *Id.* And it is well settled that vicarious liability, under the theory of *respondeat superior*, is inapplicable to Section 1983 claims. *Monell v. New York City Dep't of Soc. Services.*, 436 U.S. 658, 693-94 (1978). To establish supervisory liability, the plaintiff must satisfy the elements outlined in *Shaw v. Stroud*, 13 F.3d 791, 799 (1994). *See Dawkins v. Arthur*, No. 17-1024, 2017 U.S. App. LEXIS 11818, *5 (4th Cir. May 30, 2017).

Under *Stroud*, the plaintiff must show –

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practice, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

13 F.3d at 799 (internal quotation marks and citations omitted).[2]

---

[2] While the Fourth Circuit continues to follow the standard outlined in *Stroud,* the *Iqbal* decision could be read to eliminate supervisory liability claims based on a supervisor's knowledge of a subordinate's misconduct altogether. *See Iqbal*, 556 U.S. at 693 (Souter, J., dissenting).

The plaintiff faces a heavy burden of proof in supervisory liability cases. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Indeed, the requisite mental state, deliberate indifference, requires proof of more than mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Gross negligence is also insufficient. *Cranford v. Frick*, 1:05CV00062, 2007 U.S. Dist. LEXIS 14609, *17 (M.D.N.C. Feb. 28, 2007) (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). "The supervisor[] must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Jones*, 856 F.2d at 992.

Even when a Section 1983 defendant is found liable, "[t]he plain words of the statute impose liability . . . only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). Thus, a defendant can only be found liable for injuries that are proximately caused by his conduct, and a superseding cause breaks the chain between the defendant's conduct and the plaintiff's injury. *See Kane v. Lewis*, 604 Fed. App'x 229, 234-35 (4th Cir. 2015) (citations omitted). Specifically, the "subsequent acts of independent decision makers (*e.g.*, prosecutors, grand juries, and judges) may constitute intervening superseding causes . . . [and] insulate a police officer from liability." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Zahrey v. Coffee*, 221 F.3d 342, 351 (2d Cir. 2000)).

### b. Plaintiffs do not establish that their constitutional rights were violated by any act or omission committed by the Officers.

The Complaint is devoid of any allegation showing, or even suggesting, that Gleason, Sipple, or Russell personally violated Plaintiffs' rights. Plaintiffs do not allege that the Officers were involved in their arrests, prosecutions, or sentencings in any way. Nor do Plaintiffs' allege that the Officers were at all involved in procuring the search warrants that led to their arrests.

Plaintiffs' only non-supervisory claim against the Officers, alleged in Count VI, is based on their failure to correct Norton's prior misconduct. The only potential claim under this theory is for bystander liability. The facts alleged do not support this claim.

The Complaint does not establish that the Officers had actual knowledge of any constitutional misconduct committed by Norton. Plaintiffs do not allege any instance in which the Officers witnessed Norton falsifying a search warrant application or were told, either orally or in writing, that he did so.

To the extent Plaintiffs claim that the warrant applications were facially invalid, the Complaint does not establish that the Officers ever saw them. Plaintiffs allege that the Officers were Norton's supervisors at relevant times, but they allege nothing about what their supervisory duties entailed. Specifically, there is no allegation that any of the Officers were required to review or verify Norton's search warrant applications. The reference to Sipple's signature on a single N-10 form is a desperate, but failed attempt to do so.

Plaintiffs claim that the N-10 form that Sipple signed was "associated with" Johnson's arrest. Compl. ¶ 72. However, it is clear from the pleadings that N-10 forms and search warrant applications are separate documents. There is no allegation that each N-10 form corresponds to a specific warrant application. And there is also no allegation that the warrant applications were subject to approval by anyone in the Department, let alone, the three named Officers. Plaintiffs do not even allege that the warrant applications were reviewed by other members of the Department prior to submission.

Furthermore, the signature that was allegedly missing from Johnson's N-10 form was of the witnessing officer, not the informant. *Id.* at ¶ 73. Without basis, Plaintiffs assume that Sipple knew that Norton falsified his warrant applications because he signed a single N-10 form

lacking a witness signature. *Twombly* prevents this kind of unsubstantiated, conclusory allegation.

Without establishing actual knowledge, Plaintiffs' cannot show that the Officers had the power to prevent Norton's misconduct, but chose not to act. As such, the alleged constitutional violations of the Eight and Fourteenth Amendments in Count VI are without merit and should be dismissed. Plaintiffs allege supervisory liability in a separate count, which also fails for the reasons stated below.

### c. **Plaintiffs' fail to satisfy the *Stroud* standard, and, thus, their supervisory liability claim must be dismissed.**

The first requirement under *Stroud* is that the Officers had actual or constructive knowledge of Norton's misconduct. As discussed above, Plaintiffs' allegations are woefully insufficient to establish actual knowledge. Generally speaking, constructive knowledge can be alleged in a number of ways, "including the existence of written reports . . . [,] a supervisor's high level of responsibility coupled with the violations alleged to have occurred . . . [, or] the fact that the [unlawful] practices have been so widespread or flagrant that . . . the governing body should have known of them." *Woodson v. City of Richmond*, 88 F. Supp. 3d 551, 573-74 (E.D. Va. 2015) (quoting *Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007); *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)) (internal quotation marks omitted).

The overarching theme of Plaintiffs' Complaint is that Norton's bad behavior was so widespread, that as his supervisors, the Officers should have known that he was an unethical member of the Department and, therefore, was likely to falsify search warrants to further his career. The problem with this theory is that *Stroud* does not require knowledge of general misconduct, but rather, knowledge of "conduct that posed a pervasive and unreasonable risk of *constitutional injury*." 13 F.3d at 799 (emphasis added).

Plaintiffs spend a great deal of ink portraying Norton as a bad cop, but none of their allegations show that he posed a risk of constitutional injury. The two formal reprimands that Plaintiffs treat as their smoking gun show, at most, that Norton violated protocol and falsified the Department's internal records. Neither reprimand is related to Norton's practice of applying for search warrants.

Norton's alleged gang affiliations are also irrelevant. Plaintiffs seem to argue that because R.A. was a confidential informant and Norton's relationship with R.A. was arguably improper, the Officers should have concluded that all of Norton's activities relating to confidential informants were suspect and should be scrutinized. This requires an incredible leap in logic, especially considering that the Complaint alleges nothing about the Officers' relationship with Norton, except that they were his supervisors in title.

Of the numerous rumors recited in the Complaint, only one concerns a warrantless search and only one concerns Norton "making up verbiage" in warrant applications. *See* Compl. ¶¶ 99, 101. Plaintiffs do not allege that the officers who reported these rumors to the F.B.I. also reported them to the Officers or other members of the Department or that they memorialized their concerns in writing. Again, the argument that because one officer knew, then everyone knew or should have known is speculative and fails to support a plausible claim.

Finally, Plaintiffs attempt to link Norton's misconduct to the Department as a whole by complaining of "systemic" problems in the confidential informant program. However, the fact that informant resumes were not properly updated and the fact that officers routinely failed to witness the exchange of money between another officer and an informant, even if true, are wholly unrelated to Norton's practice of drafting search warrant applications.

It is Plaintiffs' burden to establish that Norton engaged in constitutional misconduct and that the Gleason, Sipple, and Russell knew or should have known about it. Even viewed in the light most favorable to Plaintiffs', the Complaint does not accomplish this. Listing copious and irrelevant accusations about Norton's job performance and poor record keeping practices in the Department does not establish that the Officers knew that Norton was likely to falsify a warrant application to procure a search and arrest. The Complaint does not provide any basis to conclude that the Officers had constructive knowledge.

Without the element of knowledge, Plaintiffs cannot establish that the Officers were deliberately indifferent to Norton's behavior or that a causal link exists between the Officers' conduct and the Plaintiffs' alleged injuries. Accordingly, Plaintiffs' supervisory claim in Court IV is baseless.

### d. The underlying claims fail because Plaintiffs cannot establish proximate cause.

Plaintiffs' Fourth, Eighth, and Fourteenth Amendment claims against Norton are all premised on the theory that because Norton falsified search warrant applications, all subsequent events, including Plaintiffs' arrests, prosecutions, and incarcerations were unlawful.[3] This theory is derived from the "fruit of the poisonous tree" doctrine applied in criminal cases that evidence discovered as a result of a Fourth Amendment violation is subject to suppression under the exclusionary rule. *United States v. Gaines*, 668 F.3d 170, 173 (4th Cir. 2012). However, courts

---

[3] Plaintiffs' Fourteenth Amendment claim for violation of their right to make a voluntary and intelligent plea contained in Count II fails on other grounds. The Fourth Circuit has expressly rejected the argument that a guilty plea is involuntary because the defendant was unaware of a prior Fourth Amendment violation. *See United States v. Murphy*, 380 F. App'x 344, 345 (4th Cir. 2010) ("[E]ven assuming arguendo a Fourth Amendment violation had occurred, this would not undermine [the defendant's] guilty plea because a plea is an admission . . . and does not depend on the seized evidence."); *but see United States v. Fisher*, 711 F.3d 460, 469 (4th Cir. 2013) (holding that a guilty plea may be involuntary because of undisclosed Fourth Amendment violations under certain "egregious circumstances").

have repeatedly held that that the "fruit of the poisonous tree" doctrine is inapplicable to Section 1983 claims. *E.g., Sommerville v. Dobson*, Civil Action No. 4:10cv67, 2011 U.S. Dist. LEXIS 156380, *36 (E.D. Va. Mar. 8, 2011) (collecting cases); *Ware v. James City County*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) (citing *Townes v. City of New York*, 176 F.3d 138, 148-49 (2nd Cir. 1999)). Thus, even if Norton's search warrants were invalid, there is no basis to establish liability against the Officers for the Plaintiffs' arrests and prosecutions, unless those acts were unlawful on other grounds and were committed by the Officers' subordinates.

Plaintiffs do not allege that they were arrested by Norton or another officer supervised by Gleason, Sipple, or Russell. And it goes without saying that the Commonwealth's Attorney's Office, not the Department, prosecuted the Plaintiffs in state court. Moreover, the facts pled demonstrate that the Plaintiffs' arrests were lawful.

A warrantless arrest is permissible when probable cause exists. *Illinois v. Gates*, 462 U.S. 1, 7 (1989). Probable cause exists when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). The Complaint states that the arresting officers "allegedly discovered contraband" while executing the search warrants. Compl. ¶¶ 78, 92. However, Plaintiffs do not deny that they possessed contraband at the time of their arrests, and they both pled guilty to the charges. *Id.* ¶¶ 80, 97.

In many cases the presence of contraband in a person's home provides probable cause for arrest. *See, e.g., Michigan v. Summers*, 452 U.S. 692, 695 (1981) (noting that the investigating officers had probable cause to arrest the defendant after finding narcotics in his home); *Lugar v.*

15

*Commonwealth*, 214 Va. 609, 613, 202 S.E.2d 894, 898 (Va. 1974) ("Discovery of [contraband] gave the officers probable cause to arrest the occupants of the apartment for possession . . ."). Discovery of contraband on a suspect's person also provides probable cause. *See United States v. Humphries*, 372 F.3d 653, 659-660 (4th Cir. 2004). Although the Complaint provides few facts concerning the circumstances of Plaintiffs' arrests, Plaintiffs do not allege that the arrests themselves lacked probable cause. Compl. ¶¶ 78, 92. Instead, they link their arrests to the prior searches, which runs afoul to established precedent. The existence of probable cause at the time of Plaintiffs' arrests and the actions of the arresting officers break any causal link between Norton's conduct and the Plaintiffs' prosecutions.

Additionally, subsequent actions by the prosecutors and the Plaintiffs' own acts of pleading guilty sever any link between Norton's actions and the Plaintiffs' convictions. And any connection to Plaintiffs' later charges is broken by Plaintiffs' probation violations and later criminal offenses. Without proximate cause, Plaintiffs claims cannot survive.

      e.      **Plaintiffs' Fourth Amendment claims are time-barred.**

Any claim arising from Plaintiffs' arrests is barred by the two-year statute of limitations.[4] Actions arising from an unlawful search or seizure accrue at the time of the search or seizure. See *Smith v. McCarthy*, 349 F App'x 851, 857 (4th Cir. 2009); *Gonzales v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) (collecting cases holding that claims for Fourth Amendment violations necessarily accrue at the time of the search or seizure). Johnson was arrested in March 2010.

---

[4] Because Section 1983 does not provide its own statute of limitations, federal courts borrow the personal injury statute of limitations in the forum state. *Keck v. Commonwealth*, Civil Action No. 3:10cv555, 2011 U.S. Dist. LEXIS 115795, *31 (E.D. Va. Sep. 9, 2011) (citing *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); *Demuren v. Old Dominion Univ.*, 43 F. Supp. 2d 469, 476 (E.D. Va. 1999)). The statute of limitations for personal injury actions in Virginia is two years. Va. Code Ann. § 8.01-243(A).

Williams was arrested in July 2009. Plaintiffs filed this suit in August 2017, over seven years since the last arrest. The statute of limitations has long-since expired.

At the very least, Plaintiffs' claims accrued when they gained knowledge of Norton's misconduct.[5] Johnson had knowledge before the Commonwealth's Attorney's office moved to vacate his conviction in July 2015. A plain reading of the Complaint shows that Johnson's letter to the Commonwealth's Attorney initiated this process. Compl.¶ 84-85. Johnson's claim is certainly time-barred.

### f. The Officers are protected by qualified immunity.

Qualified immunity protects government officials from liability for civil damages to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). Addressing a qualified immunity defense requires a two-step inquiry – (1) whether the facts alleged establish a constitutional violation; and (2) whether the right was clearly established at the time of the alleged misconduct. *Id.* at 232. A right is clearly established if a reasonable official would understand that his conduct is unlawful in light of the existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As discussed, Plaintiffs do not allege any personal misconduct on the part of the Officers, and the Complaint does not establish that the Officers had knowledge of any misconduct committed by Norton. Under these facts, Plaintiffs cannot show that the Officers deprived them of a constitutional right, let alone, a right that was clearly established. The Officers are entitled to qualified immunity as a matter of law.

---

[5] Notwithstanding the holdings of *Smith* and *Gonzales*, the Fourth Circuit has held that federal causes of action accrue when "the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim*, 64 F.3d at 955 (4th Cir. 1995).

## VI. CONCLUSION

For the reasons stated herein, the Defendants' motion should be granted, and the Plaintiffs' claims against Gleason, Sipple, and Russell should be dismissed with prejudice.

CHRISTOPHER GLEASON, CHARLES SIPPLE, and ROGER RUSSELL

_/s/_
D. Cameron Beck, Jr. (VSB No. 39195)
Walker Terry (VSB No. 84532)
*Attorneys for Defendants Gleason, Sipple, and Russell*
MCCANDLISH HOLTON
P.O. Box 796
1111 E. Main St., Suite 2100
Richmond, VA 23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
cbeck@lawmh.com
wterry@lawmh.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of October, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such Filing (NEF) to the following counsel of record:

Mark J. Krudys
The Krudys Law Firm, PLC
Suntrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
(804) 774-7950 Telephone
(804) 381-4458 Facsimile
mkrudys@krudys.com
*Counsel for Plaintiffs*

John Frederick Preis
7719 Rock Creek Road
Henrico, VA 23229
(804) 289-8682 Telephone
jpreis@richmond.edu
*Counsel for Plaintiffs*

Amy L. Austin
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite M
Richmond, VA 23219
(804) 343-1900 Telephone
(804) 343-1901 Facsimile
amyaustinlawyer@gmail.com
*Counsel for Plaintiffs*

Stephen M. Hall
Richard E. Hill, Jr.
Office of the City Attorney
900 E. Broad Street
Richmond, VA 23219
(804) 646-7953 Telephone
(804) 646-7939 Facsimile
Stephen.Hall@richmondgov.com
Richard.HillJr@richmondgov.com
*Counsel for Defendant City of Richmond*

David P. Corrigan
Jeremy D. Capps
M. Scott Fisher, Jr.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Drive, Suite 100
Glen Allen, VA 23060-9272
(804) 747-5200 Telephone
(804) 747-6085 Facsimile
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com
*Counsel for Defendant Norton*

Jonathan P. Harmon
Brian D. Schmalzbach
McGuireWoods LLP
Gateway Plaza
800 E. Canal Street
(804) 775-1000 Telephone
(804) 698-2304 Facsimile
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com
*Counsel for Defendant Norwood*

>Ashley L. Taylor, Jr.
>Stephen C. Piepgrass
>Brooke K. Conkle
>Troutman Sanders LLP
>1001 Haxall Point
>Richmond, VA 23219
>(804) 697-1286 Telephone
>(804) 697-1339 Facsimile
>ashley.taylor@troutmansanders.com
>stephen.piepgrass@troutmansanders.com
>brooke.conkle@troutmansanders.com
>*Counsel for Defendants Alston, Corrigan, Harrison, and Blackwell*

And I hereby certify that I will mail a copy of the foregoing by U.S. mail, postage prepaid, to the following non-filing user(s): none.

>*/s/*
>D. Cameron Beck, Jr. (VSB No. 39195)
>Walker Terry (VSB No. 84532)
>*Attorneys for Defendants Gleason, Sipple, and Russell*
>MCCANDLISH HOLTON
>P.O. Box 796
>1111 E. Main St., Suite 2100
>Richmond, VA 23218
>(804) 775-3100 Telephone
>(804) 775-3800 Facsimile
>cbeck@lawmh.com
>wterry@lawmh.com