**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **BRAVETTE JOHNSON and** | ) | |
| **CURTIS WILLIAMS,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17-CV-553** |
| | ) | |
| **CITY OF RICHMOND,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT BRYAN T. NORWOOD'S MOTION TO DISMISS THE COMPLAINT
FOR FAILURE TO STATE A CLAIM AND MEMORANDUM IN SUPPORT**

The Plaintiffs in this § 1983 case demand more than $20 million for their incarceration even though they pleaded guilty to drug and weapons offenses and do not dispute their guilt. Each Plaintiff was arrested because officers executing search warrants caught him red-handed with contraband. Plaintiffs do not dispute that this evidence was genuine and sufficient for probable cause to arrest. That evidence was also sufficient for independent prosecutors to bring charges and for grand juries to return indictments. And by pleading guilty, each Plaintiff conceded that this evidence was sufficient for conviction.

Plaintiffs demand compensation because they allege that Officer Jason Norton lied to obtain the initial search warrants, and as a result their sentences were later vacated. Those allegations fail to state a § 1983 claim under the Fourth Amendment or any other provision. Among other reasons, the grand juries' decisions to indict Plaintiffs—or a Plaintiff's decision to waive indictment—conclusively established probable cause to prosecute. And Plaintiffs acknowledged the proof of their guilt by pleading guilty. In a civil case where neither the exclusionary rule nor the "fruit of the poisonous tree" doctrine apply, *Ware v. James City*

*County*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009), all those decisions break any causal chain between an improperly procured warrant and Plaintiffs' prison sentences.   As one court said under nearly identical circumstances:  "[T]his is not a case of actual innocence or wrongful imprisonment."  *Williams v. City of Tulsa*, 2016 WL 1572957, at *7 (N.D. Okla. Apr. 19, 2016).  There is accordingly "no reason to compensate" Plaintiffs for the time they served after pleading guilty to offenses of which they were guilty.  *Id.*

This memorandum also explains why former Richmond Chief of Police Bryan Norwood would not be liable in any event.  There is no vicarious liability under § 1983.  And under the Supreme Court's holding in *Ashcroft v. Iqbal*, a supervisor can only be liable if his *own individual actions* violated the Constitution.  556 U.S. 662, 676 (2009).  Chief Norwood did not submit the warrant applications in question, did not instruct another officer to do so, and did not adopt or implement any policy of lying on warrant applications (nor do Plaintiffs allege that he did any of these).  Because Plaintiffs do not allege that any of Chief Norwood's individual actions violated the Constitution, *Iqbal* precludes the claims against him.

Even under the pre-*Iqbal* standard for supervisory liability, Plaintiffs bear a "heavy burden of proof," *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984), because proving that a supervisor was *negligent* is not enough.  Rather, supervisors are only liable for being *deliberately indifferent* to constitutional violations—for choosing to do *nothing* in the face of a serious problem.

Plaintiffs think they have a smoking gun:  in 2012, the leadership of the Richmond Police Department asked Lieutenant Brian Corrigan to "clean up the RPD's confidential informa[nt] program" that allegedly contributed to problems with the warrants in question.  Compl. ¶ 121.  But this allegation proves the *opposite* of deliberate indifference: assigning Lieutenant Corrigan

to the CI program was, in Plaintiffs' own words, a "targeted effort by RPD leadership to fix serious problems." Compl. ¶ 124. Because Plaintiffs' own allegations preclude supervisory liability, and Chief Norwood is not liable on any other grounds, the Court should dismiss all claims against him.

## ARGUMENT

**I.    Chief Norwood is not liable as a supervisor for alleged Fourth Amendment violations.**

**A.    Plaintiffs cannot satisfy the requirements of the asserted Fourth Amendment claim.**

Plaintiffs cannot state a "supervisory claim" based on the Fourth Amendment because they fail to state a Fourth Amendment claim in the first instance. Plaintiffs assert the elements of malicious prosecution, Compl. ¶¶ 129-30, which requires "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

That claim fails because Plaintiffs were not seized pursuant to legal process without probable cause. Plaintiffs allege that the search warrants lacked probable cause, but they were not arrested pursuant to those *search* warrants. Compl. ¶¶ 78, 92. Rather, Plaintiffs were subject to warrantless arrest based on the evidence discovered when the search warrants were executed. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) (a detention was "*without legal process*" because the police "did not have a warrant for his arrest"); *Evans*, 703 F.3d at 647 (a warrantless arrest is not "a seizure . . . pursuant to legal process").

To the extent Plaintiffs allege that their arrests (rather than the search warrants) were unlawful, the claims fail because there was indisputable probable cause for their arrests based on evidence discovered when the search warrants were executed. In a civil action, the court cannot

ignore the undisputed evidence of guilt revealed in those searches. As at least three circuits have held, "the exclusionary rule and the fruit-of-the-poisonous-tree doctrine *never* apply in a civil suit against police officers." *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) (emphasis added) (citing *Townes v. City of N.Y.,* 176 F.3d 138, 145 (2d Cir. 1999); *Wren v. Towe,* 130 F.3d 1154, 1158 (5th Cir. 1997)). This Court applies that same rule. *See Ware*, 652 F. Supp. 2d at 705 ("'[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.'" (quoting *Townes,* 176 F.3d at 148-49)).

In *Williams v. City of Tulsa*, the court applied that bright-line rule to nearly identical allegations. 2016 WL 1572957 (N.D. Okla. Apr. 19, 2016). There, an officer fabricated a confidential informant in an affidavit to obtain a search warrant. *Id.* at *2. Police then executed the search warrants, found drugs and a firearm, and later arrested the plaintiff, who was convicted and sentenced to life imprisonment. *Id.* at *3. After serving six years in a maximum-security federal prison, the plaintiff was released around the time that officer was indicted for—and later convicted of—perjury. *Id.* at *4.

Relying on *Black, Townes*, and *Wren*, the court held that the fruit of the poisonous tree doctrine did not apply to the plaintiff's malicious prosecution claim. *Id.* at *6-7. The court acknowledged that "a constitutional violation did occur" when the search warrant was executed. But "without the benefit of the exclusionary rule and the fruit of the poisonous tree doctrine . . . no further constitutional violation occurred." *Id*. at *7. The court concluded that "this is not a case of actual innocence or wrongful imprisonment," and accordingly found "no reason to compensate [the plaintiff] for the six years he served." *Id.*; *see also Bradshaw v. Mazurski*, 2004 WL 170337, at *6 (N.D. Ill. Jan. 15, 2004) (refusing to apply the fruit of the poisonous tree doctrine where officers allegedly procured a search warrant using false testimony and then

discovered contraband that led to the plaintiff's arrest and prosecution); *Hopkins v. O'Brien*, 2011 WL 4585233, at *5 (N.D. Ill. Sept. 30, 2011) (In *Townes* and *Bradshaw*, "an allegedly unlawful search disclosed evidence that supported the plaintiff's arrest; that evidence doomed the plaintiff's civil rights challenge to his arrest and prosecution, regardless of the circumstances in which it was uncovered.").

Finally, Plaintiffs' claims fail to the extent they rely on their indictments as the "seizure," because each indictment was sought and returned by independent prosecutors and grand juries (or waived altogether), and supported by unchallenged evidence of their guilt. Those independent decisions break the causal link between any defects in the warrants and Plaintiffs' prison sentences. Thus, no Fourth Amendment claim is possible on these allegations.[1]

**B.      *Iqbal* eliminated Plaintiffs' theory of supervisory liability.**

Even if Plaintiffs could state a predicate Fourth Amendment claim, Chief Norwood would not be liable as a supervisor. Plaintiffs' theory of supervisory liability in Count IV is that Chief Norwood "had actual or constructive knowledge" of a risk of constitutional injury, Compl. ¶ 143, and showed "deliberate indifference to, or tacit authorization of" that risk, Compl. ¶ 144. The Supreme Court rejected that theory in *Ashcroft v. Iqbal*.

The plaintiff in *Iqbal* argued that federal officers unconstitutionally discriminated against post-9/11 detainees on the basis of race and religion, and that their supervisors should be liable "under a theory of 'supervisory liability' . . . for 'knowledge and acquiescence in their subordinates' use of discriminatory criteria.'" 556 U.S. at 677. The Supreme Court "reject[ed] this argument." *Id.* The Court explained that "[i]n a § 1983 suit or a *Bivens* action—where

---

[1] Moreover, the Fourth Amendment counts and all other counts are time-barred (as explained in the City of Richmond's brief) because Plaintiffs have been on notice of all their claims more than two years. Va. Code § 8.01-243.

masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." *Id.* That is because a supervisor "is only liable for his or her own misconduct." *Id.* And "[b]ecause vicarious liability is inapplicable in *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Id.* at 676 (emphasis added).

*Iqbal* thus eliminated supervisory liability based on a supervisor's alleged "knowledge and acquiescence." *Id.* at 677. As the dissent explained, this holding "is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects." *Id.* at 693 (Souter, J., dissenting); *see also* Martin A. Schwartz, *Section 1983 Litigation* 117-18, Fed. Jud. Ctr. (3d ed. 2014) ("[T]he Court jettisoned the very concept of supervisory liability, and held that a supervisor may be found liable under § 1983 or *Bivens* only when the supervisor herself engaged in unconstitutional conduct."). *Iqbal* accordingly marked a dramatic change in the law of supervisory liability.[2]

---

[2] *See, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) ("We therefore conclude that after *Iqbal,* Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved 'knowingly or with 'deliberate indifference' that a constitutional violation would occur' at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges."); *Sandra T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) ("While it appears that our precedent would have previously allowed a plaintiff to recover from a supervisor based on that supervisor's 'deliberate indifference' toward a subordinate's purposeful discrimination, . . . after *Iqbal* a plaintiff must also show that the supervisor possessed the requisite discriminatory intent."); *George v. Owen*, 2009 WL 5125307, at *4 & n.4 (D.S.C. Dec. 28, 2009) (Floyd, J.) (suggesting that Fourth Circuit precedent is inconsistent with *Iqbal*). Unlike the Seventh and Tenth Circuits, the Fourth Circuit has applied pre-*Iqbal* precedent without apparent consideration of how *Iqbal* changed the standard of supervisory liability. *See, e.g.*, *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (citing the supervisory liability standard of *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). *But see Evans*, 703 F.3d at 660–61(Wilkinson, J., concurring) ("[T]he Supreme Court explained in *Iqbal*

Of course, a supervisor could still be liable under § 1983 if his *own individual actions* violate the Constitution, such as by actively promulgating an unconstitutional policy. *See, e.g.*, *Iqbal*, 556 U.S. at 677 ("[T]o state a claim based on a violation of a clearly established right, [plaintiff] must plead sufficient factual matter to show that [the supervisors] adopted and implemented the detention policies at issue . . . for the purpose of discriminating on account of race, religion, or national origin."). But Plaintiffs cannot and do not even attempt to allege facts showing that Chief Norwood adopted or implemented an unconstitutional policy. *See id.* at 664, 680-81 (allegations that a supervisor was the "principal architect" of an unconstitutional policy or "'instrumental' in adopting and executing it" are "conclusory and not entitled to be assumed true"). And Plaintiffs plead no facts showing that Chief Norwood "*through [his] own individual actions*, has violated the Constitution." *Id.* at 676 (emphasis added). Rather, Plaintiffs' claims amount to the same "knowledge and acquiescence" theory rejected in *Iqbal*. *Id.* at 677.

C.     **Plaintiffs' theory of supervisory liability would fail against Chief Norwood in any event.**

Even if Plaintiffs' theory had not been eliminated by *Iqbal*, they would fail to satisfy the "heavy burden of proof in supervisory liability cases." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Under the Fourth Circuit's standard for supervisory liability based on pre-*Iqbal* law, a plaintiff must show (1) "actual or constructive knowledge of a risk of constitutional injury"; (2) "deliberate indifference to that risk"; and (3) "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Carter v.*

---

that 'a supervisor's mere knowledge' that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor can be held liable only for 'his or her own misconduct.'").

*Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Plaintiffs do not plausibly allege that Chief Norwood had "actual or constructive knowledge" of, or "deliberate indifference" to, their particular constitutional injury. First, Plaintiffs "cannot rely upon scattershot accusations of unrelated constitutional violations" because they must demonstrate deliberate indifference to the risk "that a violation of a *particular* constitutional or statutory right will follow." *Carter*, 164 F.3d at 218; *see also Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011) (dismissing a supervisory claim for failing to plead a supervisor's knowledge of "factually similar" violations). Plaintiffs must show that Chief Norwood knew or should have known specifically about Officer Norton's alleged misstatements with respect to confidential informants on search warrant applications and that Officer Norton was relying on unreliable informants. But most of Plaintiffs' laundry list of alleged wrongdoing by Officer Norton is an impermissible attempt "to splatter-paint a picture of scattered violations." *Carter*, 164 F.3d at 219; *see also, e.g.*, Compl. ¶¶ 24-31 (alleging that Officer Norton seized cash without writing receipts); ¶¶ 33-40 (dishonest excuses); ¶¶ 41-48 (protecting a confidential informant from arrest); ¶¶ 49-50 (involvement with gangs); ¶¶ 119-21 (post-dating signatures on confidential informant payment forms).

Second, Plaintiffs attempt to rely on undated rumors to show Chief Norwood's knowledge of Officer Norton's alleged wrongdoing. *See* Compl. ¶¶ 31, 99, 102-03. Much of those rumors are irrelevant "scattershot accusations" that do not reflect the particular constitutional violations alleged by Plaintiffs. *Carter*, 164 F.3d at 218. But even if the rumors were relevant, Plaintiffs do not allege that those rumors relate to the period *before* their arrests, the last of which occurred in February 2012, or indeed to *any* time relevant to this case. These

allegations thus lack the "factual content that allows the court to draw the reasonable inference" that Chief Norwood was on notice at the necessary time, and create at most a "sheer possibility" that Chief Norwood could be liable. *Iqbal*, 556 U.S. at 678. Plaintiffs' rumor mill accordingly "stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

Third, Plaintiffs attempt to demonstrate Chief Norwood's knowledge by showing the steps that RPD took in response to alleged misconduct or problems with the confidential informant program. But those steps are conclusive evidence that Chief Norwood was *not* deliberately indifferent. For example, bringing in Lieutenant Corrigan to address recordkeeping and accountability issues with the confidential informant program shows that the RPD leadership was not indifferent to those issues. *See* Compl. ¶ 121. To the contrary, Plaintiffs concede that the leadership made "a targeted effort" to fix them. *Id.* at ¶ 124. Likewise, issuing reprimands to Officer Norton based on his confiscation of drugs without making an arrest (Compl. ¶ 110-11) and failure to properly record signatures for payments to confidential informants (Compl. ¶ 112) shows that the RPD was *not* indifferent to that misconduct. When a supervisor takes disciplinary action in response to officer misconduct, "it simply cannot be said that he is indifferent to the risk of the underlying constitutional violation." *Carter*, 164 F.3d at 221. Plaintiffs may dispute whether those disciplinary actions were reasonable, but the "heavy burden" of proof for supervisory liability requires more than negligence. *Slakan*, 737 F.2d at 373.

Finally, Plaintiffs cannot establish "an affirmative causal link" between Chief Norwood's supposed inaction and Plaintiffs' prison sentences. That is because there were multiple "intervening superseding causes that break the causal chain." *Evans*, 703 F.3d at 647. In particular, after Plaintiffs were arrested, they were imprisoned due to the "subsequent acts of independent decision-makers," *id.*, including the prosecutors who saw fit to press charges, the

grand juries that decided to indict (or the Plaintiff who decided to waive indictment), and the

Plaintiffs themselves who all pleaded guilty.  Given that the "fruit of the poisonous tree" doctrine

does not apply here, *Ware*, 652 F. Supp. 2d at 705, the causal chain between Chief Norwood and

Plaintiffs' imprisonment is far too attenuated to hold Chief Norwood liable as a supervisor.

**II.     Chief Norwood is not liable as a supervisor for allowing Plaintiffs, who do not dispute their guilt, to plead guilty.**

      **A.     Alleged Fourth Amendment violations do not render a guilty plea invalid.**

Plaintiffs also fail to state a claim that their guilty pleas were flawed.  A guilty plea is

valid as long as it "represents a voluntary and intelligent choice among the alternative courses of

action open to the defendant."  *Burket v. Angelone*, 208 F.3d 172, 190 (4th Cir. 2000).  "[T]he

Constitution imposes 'the minimum requirement that [the] plea be the voluntary expression of

[the defendant's] own choice.'" *United States v. Moussaoui,* 591 F.3d 263, 278 (4th Cir. 2010)

(quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)).  Plaintiffs do not allege that anyone

coerced them into pleading guilty, or concealed the consequences of their pleas, or deprived

them of counsel's advice.

Rather, Plaintiffs allege that their pleas were not voluntary and intelligent because they

were not aware of the alleged Fourth Amendment violations.  Compl. ¶¶ 134-35.  The Fourth

Circuit had previously rejected this argument in *United States v. Murphy*, 380 F. App'x 344 (4th

Cir. 2010).  There, a criminal defendant argued that "her plea was not knowing and voluntary

because she did not realize at the time of her plea that the evidence against her had been seized in

violation of the Fourth Amendment."  *Id.* at 345.  The court held that "even assuming arguendo

a Fourth Amendment violation had occurred, this would not undermine her guilty plea because a

plea is an admission of past conduct and does not depend on the seized evidence."  *Id*.  Under

*Murphy*, Plaintiffs' guilty-plea claim would be squarely foreclosed because Plaintiffs admitted to their past conduct when they pleaded guilty.

A divided Fourth Circuit panel nevertheless stated in *United States v. Fisher* that a guilty plea may be involuntary in rare and "egregious circumstances" due to undisclosed Fourth Amendment violations.  711 F.3d 460, 469 (4th Cir. 2013).  *Fisher* arguably alters the categorical holding in *Murphy*, though without addressing the persuasive logic of *Murphy*.  To the extent *Fisher* recognizes a claim for violations of the right to make a voluntary guilty plea under these circumstances, it is inconsistent with the precedent from the Supreme Court and other circuits.  *See, e.g.*, *Haring v. Prosise*, 462 U.S. 306, 321 (1983) ("[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized."); *Alvarez v. City of Brownsville*, 860 F.3d 799, 803 (5th Cir. 2017) (holding that a § 1983 defendant "did not have a constitutional right to exculpatory evidence when he pleaded guilty" and recognizing the conflict with *Fisher*).[3]

> **B.**     **Plaintiffs' supervisory liability claim would fail even if there were a cause of action for allowing the guilty to plead guilty.**

In any event, Chief Norwood would not be liable as a supervisor for the Plaintiffs' guilty pleas.  As already explained, Chief Norwood was not personally involved (and is not alleged to have been personally involved) in the violations alleged here.  That dooms these claims under *Iqbal*.  *See Iqbal*, 556 U.S. at 676 (Under § 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."

---

[3] To the extent this Court finds *Fisher* binding here, Norwood preserves this argument for appeal.

(emphasis added)). Moreover, Plaintiffs' allegations do not meet even the pre-*Iqbal* standard for supervisory liability. *See* section I.C *supra*.

## III. Chief Norwood is not liable under the Eighth or Fourteenth Amendments for failing to have Plaintiffs released from prison sooner.

### A. There is no Eighth or Fourteenth Amendment claim for allowing defendants who plead guilty and do not dispute their guilt to remain in prison.

Plaintiffs next contend that their rights were violated because, they allege, Chief Norwood should have intervened personally to secure their release from prison sooner. Compl. ¶ 155-56. Explaining this same allegation in the *Ensley* case, Plaintiffs' counsel asserted that state actors have a duty to secure a defendant's release whenever they have actual or constructive knowledge that "a person is held in jail in violation of law." Pls.' Opp. to Norton MTD, *Ensley v. City of Richmond*, No. 3:17-cv-24, ECF No. 51 (May 12, 2017) at 12. In their view, this cause of action derives from "so-called 'overdetention' cases" involving a jailer's duty "to release a prisoner when his sentence has terminated." *Id.* at 13 (citing *Golson v. Dep't of Corrections*, 914 F.2d 1491 (4th Cir. 1990) (unpublished)).

Overdetention cases like *Golson* do not support an Eighth or Fourteenth Amendment cause of action here. The plaintiff in *Golson* alleged that he should have been credited with time spent in another jail, and thus was imprisoned beyond his judicially imposed term. 914 F.2d 1491. He brought a § 1983 suit against the Department of Corrections, its director, and certain jail officials. *Id.* The Fourth Circuit affirmed the dismissal of his claim, but stated that "[i]ncarceration *beyond the termination of one's sentence* may state a claim under the due process clause and the eighth amendment." 914 F.2d 1491 (emphasis added).

*Golson* is thus limited by its terms to overdetention situations where prisoners remain in prison after their judicially determined sentences expire. It is beside the point here, where Plaintiffs do not allege that anyone miscalculated their release dates.

Furthermore, *Golson* at most suggests that corrections officials who are responsible for determining the correct release date could be liable. *See, e.g.*, *Owens v. Butler*, 2016 WL 538463, at *4 (W.D. N.C. Feb. 9, 2016) ("Specifically, [the Plaintiff] must establish that a *jail official* actually knew of and disregarded a serious risk that he was being improperly detained." (emphasis added)). Chief Norwood had no responsibility for calculating Plaintiffs' release dates.

**B.  Chief Norwood is not liable as a bystander for allowing defendants who pleaded guilty and do not dispute their guilt to remain in prison.**

In any event, Plaintiff's Eighth and Fourteenth Amendment claim for failing to intervene cannot survive because there is no duty to intervene except where an officer would be liable as a bystander. But bystander liability only applies when an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002).

For bystander liability, "the relevant question is whether . . . [the officer] *knew* the [plaintiffs] were being unlawfully detained." *Id.* (emphasis added). "The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Id.* at 204 n.24. Thus, bystander liability might attach if one officer passively observes another beating an arrestee, *see, e.g.*, *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 419 (4th Cir. 2014), or if one officer is a passenger in a car with which the driver attempts to injure a citizen, *Yang v. Hardin*, 37 F.3d 282, 283 (7th Cir. 1994). If the bystander lacks *actual knowledge* that another officer is violating a citizen's rights, however, "he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible." *Randall*, 302 F.3d at 204 n.24.

Chief Norwood is not liable as a bystander because the Complaint alleges no facts plausibly suggesting that he had actual knowledge of the alleged constitutional violations against these Plaintiffs. Chief Norwood is not alleged to have known about the decisions to seek the search warrants here, to make Plaintiffs' warrantless arrests, to pursue their prosecution, or to allow them to plead guilty. Indeed, Plaintiffs do not allege that Chief Norwood had even heard their names before their release.

Even if bystanders could be liable without "specific knowledge" of the alleged unconstitutional acts (they cannot), Plaintiffs' allegations fail to demonstrate that Chief Norwood had constructive knowledge that "the Plaintiffs' imprisonment . . . was unwarranted." Compl. ¶¶ 138, 153. By pleading guilty, Plaintiffs confessed to the charged conduct; at the time, this was a binding "admission of past conduct" that fully justified their convictions. *Murphy*, 380 F. App'x at 345. Chief Norwood accordingly could not have been on notice that their imprisonment was unwarranted.

### C. Plaintiffs' supervisory claim under the Eighth and Fourteenth Amendments fails like the other supervisory claims.

Plaintiffs' supervisory Eighth and Fourteenth Amendment claims fail against Chief Norwood for the same reasons as the other supervisory claims. Chief Norwood was not—and is not alleged to have been—personally involved in the alleged violations. Under *Iqbal*, that is the end of the supervisory inquiry. *See Iqbal*, 556 U.S. at 676 (Under § 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." (emphasis added)). Plaintiffs' allegations fail the pre-*Iqbal* standard for supervisory liability in any event. *See* section I.C *supra*.

**IV.    Chief Norwood is entitled to qualified immunity.**

Finally, Chief Norwood is entitled to qualified immunity because an objectively reasonable officer in his position would not have known that his actions violated Plaintiffs' rights.  Qualified immunity shields government officials from liability in a § 1983 suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Raub v. Campbell*, 785 F.3d 876, 880–81 (4th Cir. 2015) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

"The first step in [qualified immunity analysis] is to pinpoint the specific right that has been infringed."  *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).  For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Specifically, "the 'clearly established law must be 'particularized' to the facts of the case' so as to avoid transforming qualified immunity into 'a rule of virtually unqualified liability.'"  *Safar*, 859 F.3d at 246 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)).  "Before concluding that an officer has breached a clearly established right, the court "must 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'"  *Id.*  Courts determine "whether the right 'was clearly established at the time of the claimed violation' by looking at 'the decisions of the Supreme Court, [the Fourth Circuit] and the highest court of the state in which the case arose.'" *Trump Tight, LLC v. Bell*, 188 F. Supp. 3d 565, 570 (E.D. Va. 2016) (quoting *Wilson v. Kittoe*, 337 F.3d 392, 402–03 (4th Cir. 2003)).

**A.    Qualified immunity bars the malicious prosecution claims.**

Qualified immunity bars Plaintiffs' malicious prosecution claims because the facts would not have put a reasonable officer on notice of any defects in the warrants that produced

uncontested proof of Plaintiffs' guilt. *See Smith v. Munday*, 848 F.3d 248, 255-56 (4th Cir. 2017) ("[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner").

The Complaint does not dispute that those warrants produced uncontested proof of guilt, and under the law in effect at the time, each Plaintiff's guilty plea was "an admission of past conduct" that "does not depend on the seized evidence." *Murphy*, 380 F. App'x at 345. Thus, a reasonable officer in Chief Norwood's position would see no need to seek Plaintiffs' release, and there certainly was no clearly established requirement that he do so. *See Safar*, 859 F.3d at 247 ("[W]e are unaware of a nebulous duty requiring police officers to follow some undefined procedure whenever they come across further information that casts doubt on an active arrest warrant."). The fact that the fruit of the poisonous tree doctrine does not apply here (and it is *certainly* not clearly established that it applies here) only confirms that Chief Norwood is entitled to qualified immunity.

### B.      Qualified immunity bars the guilty-plea claims.

Chief Norwood is also immune from Plaintiffs' guilty-plea claims because it was not clearly established *at the time of their pleas* that undiscovered Fourth Amendment violations rendered a guilty plea invalid. *Pegg v. Herrnberger*, 845 F.3d 112, 117 (4th Cir. 2017). To the contrary, in 2010 the Fourth Circuit held that "even assuming arguendo a Fourth Amendment violation had occurred, this would not undermine [a criminal defendant's] guilty plea because a plea is an admission of past conduct and does not depend on the seized evidence." *Murphy*, 380 F. App'x at 345. It follows that a proposition *cannot* be clearly established when circuit precedent squarely rejects it.

*Brady v. United States* did not clearly establish that the alleged misstatements in the search warrant applications *in this case* rendered Plaintiffs' guilty pleas involuntary. 397 U.S. 742 (1970). Qualified immunity requires courts to "first identify the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). *Brady* is far too vague to clearly establish that specific right that Plaintiffs invoke. *See Brady*, 397 U.S. at 757 ("More particularly, absent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

Whatever *Brady* was subsequently construed to mean, it did not place Plaintiffs' proposition "beyond debate." *Brickey v. Hall*, 828 F.3d 298, 303 (4th Cir. 2016). Thus, reasonable officers (like reasonable Fourth Circuit judges) could certainly view the case as "strictly limited . . . only to false representations directly designed to induce a defendant to plead guilty." *United States v. Fisher*, 711 F.3d 460, 475 (4th Cir. 2013) (Agee, J., dissenting). In fact, the Supreme Court implicitly took that view of *Brady* in *Haring v. Prosise*, 462 U.S. at 321: "[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." The Fourth Circuit did likewise in *Murphy*.

*United States v. Fisher* likewise does not overcome Chief Norwood's qualified immunity because it was not decided until April 2013. 711 F.3d 460 (4th Cir. 2013). By that time, Chief

Norwood had resigned from his position with the City of Richmond. Compl. ¶ 12.[4] Thus, he no longer had "final control over police policies, training, discipline, and the day-to-day operations of the Department," Compl. ¶ 11 n.1, and was no longer a "state actor" for the City of Richmond, *see DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999) (To be liable under § 1983, "[t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions.").

 *Fisher* also does not affect Chief Norwood's qualified immunity because it came *after* the alleged guilty-plea violations. Johnson and Williams had already pleaded guilty by April 2013— indeed, each had already *completed* the prison terms at issue. Compl. ¶¶ 81, 95. A case decided after the alleged violation cannot clearly establish the law *at the time of the violation*. *See Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) ("The qualified immunity inquiry depends on the official's perceptions *at the time of the incident in question*."); *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) ("*existing precedent* must have placed the statutory or constitutional question beyond debate") (emphases added). In *Ensley*, Plaintiffs' same counsel conceded that the time of the alleged violation of the guilty-plea right was "up to and including the guilty pleas." Opp. to Norton MTD 12 ("The misconduct [in the guilty-plea count] occurred up to and including the guilty pleas; in contrast, the misconduct [in the failure-to-intervene count] occurred *after* the Plaintiffs' guilty pleas."). And Judge Agee's dissent confirms that the right recognized in *Fisher* was not clearly established before *Fisher*. *See Swanson v. Powers*, 937 F.2d 965, 968

---

[4] *See also* Statement of Mayor Dwight C. Jones (Feb. 12, 2013) ("As of today, I have accepted the resignation of Bryan Norwood from his post as Chief of Police for the city of Richmond."), available at https://tinyurl.com/yczz4zqf.

(4th Cir. 1991) ("Since qualified immunity is appropriate if reasonable officers could disagree on the relevant issue, . . . it surely must be appropriate when reasonable jurists can do so.").

### C. Qualified immunity bars the Eighth and Fourteenth Amendment claims.

Finally, Chief Norwood is entitled to qualified immunity on Plaintiffs' Eighth and Fourteenth Amendment claims. Those claims allege that he failed to take action to secure their release from prison before the end of their term. But Plaintiffs identify no clearly established Eighth or Fourteenth Amendment right to be released from prison early—despite a guilty plea— due to alleged Fourth Amendment violations.

Plaintiffs' only hope that such a right is clearly established comes from *Golson*, 914 F.2d 1491. But *Golson* was limited by its terms to "overdetention" situations where prisoners remain in prison after their judicially determined sentence expires: "Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment." *Id.* Thus *Golson* does not establish *any* right that Plaintiffs can invoke here, let alone a *clearly established* right. *See* Pls.' Opp. to Norton MTD 14 (conceding that the Eight and Fourteenth Amendment claims "do not allege a classic overdetention case.").

## CONCLUSION

For these reasons, the Court should dismiss all claims against Bryan Norwood with prejudice.

Dated: October 6, 2017

Respectfully submitted,

/s/ Brian D. Schmalzbach
Jonathan P. Harmon (VSB #39081)
Brian D. Schmalzbach (VSB #88544)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that on October 6, 2017, I electronically filed the foregoing document with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to all registered users.

<div style="margin-left:50%;">

/s/ Brian D. Schmalzbach
Jonathan P. Harmon (VSB #39081)
Brian D. Schmalzbach (VSB #88544)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com

</div>