**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **BRAVETTE JOHNSON and** | ) | |
| **CURTIS WILLIAMS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17-cv-00553-MHL** |
| | ) | |
| **CITY OF RICHMOND, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY
## DEFENDANTS ALSTON, CORRIGAN, HARRISON AND BLACKWELL

Defendants Lieutenant Michael Alston ("Lt. Alston"), Lieutenant Brian Corrigan ("Lt. Corrigan"), Captain Martin Harrison ("Cpt. Harrison"), and Captain William Blackwell ("Cpt. Blackwell") (collectively, the "Officers") submit this Memorandum in Support of their Motion to Dismiss the Complaint filed by Plaintiffs Bravette Johnson and Curtis Williams (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6):

### INTRODUCTION

Often, criminal defendants who were wrongfully arrested, prosecuted or convicted file suit against the officers or municipalities involved. Once exonerated, these innocent persons seek redress for a violation of their constitutional rights pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983").

This is not one of those cases. Police arrested both of the former defendants (now Plaintiffs in this case) after finding them in possession of contraband. Both of these former defendants acknowledged their guilt. And, both of these former defendants pled guilty. Their convictions were later vacated after discovery of irregularities in the search warrants that led to

their arrests.  The search warrants were all prepared and offered by one person:  Defendant Jason Norton ("Norton").  Plaintiffs now contend that the City, the Officers bringing this motion and the other Defendants are responsible for their incarcerations, but Plaintiffs do not argue that they are actually innocent of the crimes that led to their convictions.[1]

Apart from this striking omission, Plaintiffs' Complaint has a number of problems.  First, the statute of limitations bars the claims raised by Plaintiffs.  Second, the Complaint attempts to pin liability for Plaintiffs' incarcerations on three Officers who were not involved – either directly, or in a supervisory capacity – with Plaintiffs' arrests.  Third, all of the Defendants, except the City, are named in their individual capacities, but the Complaint does not allege personal involvement by anyone but Norton in the alleged constitutional violations.  Fourth, Plaintiffs cannot state a claim for supervisory liability or deprivation of liberty because their own actions break any causal link between action allegedly undertaken by Norton and any purported constitutional violation.  Fifth, Plaintiffs cannot state a claim for individual liability against the Officers because the Officers had no duty to intervene personally in their convictions and, furthermore, had no actual or constructive knowledge of their respective incarcerations.  And, finally, Plaintiffs cannot state a claim for "malicious prosecution" because the Complaint does not allege that any Officer maintained proceedings against either Plaintiff.  For all of these reasons, the Complaint should be dismissed.

---

[1]     Although not at issue in this motion, for which evidence outside the Complaint and supporting exhibits cannot be considered, a plaintiff's actual innocence is a prerequisite for bringing a Section 1983 action and, if Plaintiffs' claims survive, the Officers will raise this defense at the appropriate time.  *See, e.g.*, *Donahue v. Gavin*, 280 F.3d 371, 383-84 (3d Cir. 2002) (noting that a plaintiff must be actually innocent to bring a Fourth Amendment claim).

## FACTUAL BACKGROUND

Both Plaintiffs in this action have a similar story: both were arrested after police officers discovered contraband in their possession; both acknowledged their guilt and pled guilty; both had their convictions vacated after inconsistencies or irregularities with the search warrants in their cases were later discovered. (Compl. ¶¶ 70-85, 86-97.)

### **Bravette Johnson**

On March 11, 2010, state and federal officers executed a search warrant at a home in the City of Richmond. (Compl. ¶ 70, 78.) The officers discovered contraband. *Id.* at ¶ 78. Plaintiff Bravette Johnson ("Johnson") was immediately arrested. *Id.* Johnson was a guest in the home and did not live there. *Id.*

Johnson acknowledged his guilt. (Compl. ¶ 80.) He pled guilty to state charges on August 17, 2010 and received a prison sentence of 15 years in jail, with 13 years suspended, and a period of supervised probation. *Id.* Johnson, however, could not stay out of trouble and less than a year after his release from prison, he was again arrested. (Compl. ¶ 82.) He was charged with possession with the intent to distribute a controlled substance. *Id.* The Commonwealth originally nolle prossed the charges against Johnson, but he was later indicted for these same acts. (Compl. ¶ 83.) Johnson again acknowledged his guilt, pled guilty in 2014, and received a four-year sentence. (Compl. ¶¶ 83-4.) The Commonwealth's Attorney later moved to vacate Johnson's 2010 conviction, citing problems with the arrest warrant prepared by Defendant Norton. (Compl. ¶ 85.) On August 27, 2015, Johnson's 2010 conviction was vacated and his 2012 conviction was amended to constitute a second offense. *Id.*

## Curtis Williams

Like Johnson, Plaintiff Curtis Williams ("Williams") was found with contraband. (Compl. ¶ 92.) Like Johnson, Williams was immediately arrested. *Id.* And, like Johnson, criminal charges were instituted against him. (Compl. ¶ 93.)

Williams also acknowledged his guilt. (Compl. ¶ 94.) He pled guilty on December 11, 2009, and was sentenced to two years in jail and a term of probation. *Id.* On the same date, Williams was also sentenced to four months in jail for additional criminal conduct in an unrelated case. *Id.* Williams was released from prison in April 2012. (Compl. ¶ 95.) Like Johnson, Williams could not stay out of trouble and on August 3, 2013, was arrested for violating the terms of his probation. *Id.* He was released soon after his arrest. *Id.* On September 15, 2015, the Commonwealth moved to vacate Williams' 2009 conviction due to discrepancies with the warrant prepared by Defendant Norton. (Compl. ¶ 97.) On April 12, 2016, a Richmond Circuit Court judge vacated Williams' conviction. *Id.*

## Plaintiffs Allege Norton Engaged in Shoddy Police Work, but only a Few Allegations Address Issues Related to Plaintiffs' Arrests

In their Complaint, Plaintiffs allege that, despite their guilty pleas, all of their arrests, incarcerations, and subsequent terms of probation can be traced to the acts of Jason Norton and, as a result, Norton's supervisors at the Richmond Police Department ("RPD") should be held liable for both Norton's acts and for failing to personally secure Plaintiffs' releases from prison. Plaintiffs offer various examples of supposed shoddy or corrupt police work by Norton, but most of these allegations have nothing to do with Plaintiffs' arrests. For example, Plaintiffs allege that Norton pulled over cars, searched occupants, and took contraband and/or money without providing citations or receipts. (Compl. ¶¶ 24-32.) They also allege that there were a number of "rumors and stories" about Norton, but fail to provide further details. (Compl. ¶ 99.) Although

obviously intended to color the case, none of these stories – even if known to Norton's supervisors (and there is no evidence that they were) – would have put the Officers on notice of any issues related to allegedly invalid search warrants or mishandling of confidential informants.

Only a few of the allegations in the Complaint focus on Norton's alleged dealings with confidential informant resumes, which led to the invalidation of some of Norton's search warrants. Specifically, Plaintiffs allege that Norton used the same resume for two separate informants or, alternately, used two different resumes for the same informant. (Compl. ¶¶ 65-69.) Plaintiffs also allege that Norton and his colleagues would often sign the "witness" portion of the forms used to document confidential informant payments (referred to as "N-10 forms") after those payments were actually made. (Compl. ¶¶ 117-21.) However, Plaintiffs fail to tie this allegation to any alleged injury they suffered.

The Complaint itself, however, shows that the informant resumes about which Plaintiffs complain were offered months apart, making it virtually impossible for the inconsistencies to have been noticed at the time. For example, the Complaint compares and contrasts the differences between *five* different informant resumes. (Compl. ¶ 89.) All of these resumes were offered for different informants and, indeed, Plaintiffs do not even attribute some of the descriptions offered to particular informants. *Id.* The Complaint does not allege that a reasonable supervisor reviewing these resumes, for a number of different confidential informants, offered months apart, would have noticed these discrepancies.

### The Department Took Steps to Address Issues with Norton and Confidential Informant Management

Rather than painting a picture of a Department that overlooked deficiencies or any concerns related to Norton, the Complaint acknowledges that RPD officials took affirmative steps to reprimand him:

- RPD officials reprimanded Norton on March 25, 2011, for seizing marijuana and cocaine from certain individuals, in February of 2009, without arresting or seeking charges against those individuals (Compl. ¶ 110); and

- RPD officials also reprimanded Norton on March 25, 2011, for failing to follow Department policy when filling out the forms used to document confidential informant payments, because the informant signature on two N-10 forms did not match the signatures on other forms signed by that informant. (Compl. ¶ 112.)

With respect to the management of confidential informants, Plaintiffs allege that in August of 2012, Lt. Corrigan was placed in charge of the confidential informant program, and implemented a number of changes, including more systematic use of informant resumes and more frequent audits of confidential informants to ensure that informants were moved from "active" to "inactive" status. (Compl. ¶¶ 123-26.)

**<u>The Officers' Roles, as Alleged in the Complaint</u>**

Although Plaintiffs' Complaint presents a convoluted and disjointed summary of the events surrounding their arrests, Norton's supposed actions and the role of various Defendants, including the Officers bringing this motion, the following timeline – gleaned from the Complaint[2] – summarizes the critical dates pertaining to each of those Officers:

- 2009:  Cpt. Blackwell oversees confidential informant program (Compl. ¶ 19);

- July 7, 2009:  **Williams is arrested** (Compl. ¶ 86);

- March 11, 2010:  **Johnson is arrested** (Compl. ¶ 70);

- In or around 2011 through around March 2013:  Cpt. Harrison serves as Head of the RPD's Special Investigations Division (Compl. ¶ 18);

---

[2]     Defendants do not concede the veracity of Plaintiffs' timeline, but instead offer this as a summary of the critical dates presented in Plaintiffs' Complaint.

- March 25, 2011: RPD reprimands Norton for seizing contraband without making an arrest and for his work with confidential informants (Compl. ¶¶ 32, 34, 110-15);

- By the end of 2011: Cpt. Blackwell leaves confidential informant program (Compl. ¶ 19);

- June 2012: Gleason is no longer Norton's "Direct Supervisor" (Compl. ¶ 13);

- June 2012 (or shortly thereafter): Lt. Alston replaces Gleason (according to the Complaint) as Norton's "Direct Supervisor" (Compl. ¶¶ 13, 16);

- August 2012: Lt. Corrigan is named head of confidential informant program and (according to the Complaint) becomes Norton's "Intermediate Supervisor." (Compl. ¶¶ 17, 121.)

### Alleged Misconduct after Plaintiffs' Arrests

Plaintiffs' Complaint also contains a number of other allegations of misconduct involving Norton, such as his alleged dishonesty about missing court in July 2012 (Compl. ¶ 35), exaggerations about field work in November 2012 (Compl. ¶ 36), missing a training exercise in December 2012 (Compl. ¶ 37), missing court in February 2013 (Compl. ¶ 38), and alcohol consumption in March 2013 (Compl. ¶ 39). However, all of these incidents occurred long *after* July 2009 and March 2010, when Williams and Johnson, respectively, were arrested.

Further, the Complaint also alleges that an RPD officer interviewed "R.A.," a confidential informant who allegedly provided Norton with information used to support search warrants. (Compl. ¶¶ 106-8.) But Plaintiffs fail to explain why the interview occurred or what precipitated the interview. And, by their own admission, Plaintiffs do not know when this interview occurred. (Compl. ¶ 108.) They simply offer that it probably occurred "before July 2012." *Id.* According to Plaintiffs, though, the fact that the interview happened and was recorded and given to the Internal Affairs Department is sufficient to demonstrate that "RPD officials understood the interview to raise serious concerns about Norton." (Compl. ¶ 106.) Plaintiffs do not offer any information, however, about what "R.A." said in the interview,

whether it inculpated or exculpated Norton or whether it identified any conduct that would have raised a red flag. Nor do Plaintiffs offer any evidence linking information offered by "R.A." to their own search warrants.

**Plaintiffs File Suit under Section 1983**

On August 8, 2017, Plaintiffs brought this action under Section 1983, arguing that their constitutional rights were violated by Norton, other RPD officers (including the Officers bringing this motion), and the City. Plaintiffs contend that the Defendants knew or should have known that Norton's allegedly shoddy paperwork and supposed reputation for close relationships with informants indicated that he posed an unreasonable risk of constitutional injury to individuals like Plaintiffs. (Compl. ¶ 143.)

The Complaint names the moving Officers, Lt. Corrigan, Lt. Alston, Cpt. Blackwell and Cpt. Harrison, in two counts: one count of supervisory liability (Count IV) and one count of deprivation of liberty or cruel and unusual punishment in the Officers' individual capacities (Count VI). As will be explained, both of these counts against the Officers must be dismissed.

**ARGUMENT**

## I. Legal Standard.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss an action if a plaintiff fails to state a claim upon which relief can be granted. The Court must ascertain whether the Complaint contains sufficient factual matters, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is met when the Court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,

8

591 F.3d 250, 255-56 (4th Cir. 2009) (same). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557). Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a Complaint must be dismissed. *Id.* at 679.

The Court need not accept as true "conclusory allegations regarding the legal effect of the facts alleged." *Westmoreland v. Brown*, 883 F. Supp. 67, 70 (E.D. Va. 1995) (citing *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995)). *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") Moreover, the Court cannot assume that the plaintiffs can prove facts they have not alleged or that a defendant has violated the law in ways the plaintiffs have not alleged. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (quoting *Associated Gen. Contractors v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983)). The notice pleading allowed by the Federal Rules requires a Complaint to include sufficient operative facts upon which to base an actionable claim. *Iqbal*, 556 U.S. at 667-78. A Complaint that contains bare bones allegations that a wrong occurred does not provide adequate notice. *Id.* at 678. "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Rossmann v. Lazarus*, No. 1:08cv316, 2008 U.S. Dist. LEXIS 81701, at *8 (E.D. Va. Oct. 15, 2008) (citing *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996)).

II.     **The Two-Year Statute of Limitations Bars Plaintiffs' Claims.**

The claims brought by Plaintiffs against these Officers are barred by the relevant statute of limitations.[3] When analyzing Section 1983 claims, federal courts use the forum state's statute of limitations period for personal injury torts. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). The applicable Virginia statute of limitations is two years for personal injury actions. Va. Code § 8.01-243.

A Section 1983 plaintiff's claim accrues when he or she "becomes aware of his or her injury, or when he or she is put on notice . . . to make a reasonable inquiry as to whether a claim exists." *Keck v. Commonwealth*, Civil Action No. 3:13cv555-MHL, 2011 U.S. Dist. LEXIS 115795, at *32 (E.D. Va. Sept. 9, 2011) (quoting *United States v. Kubrick*, 444 U.S. 111, 123 (1979); *Almond v. Sisk*, No. 3:08cv138, 2009 U.S. Dist. LEXIS 686688, at *4 (E.D. Va. Aug. 6, 2009) (internal quotation marks omitted)). Thus, Plaintiffs must have brought their Section 1983 claims within two years of their claims' accrual. Using these standards, Plaintiffs' Complaint, either in whole or in part, is barred by the statute of limitations.

A.      **Plaintiffs Were on Notice of Their Section 1983 Claims at the Time of the Allegedly Illegal Search and Seizure.**

Both the Fourth Circuit and this Court have long held that a plaintiff has notice of a potential Section 1983 claim at the time of the search and seizure. *See, e.g., Smith v. McCarthy,* 349 F. App'x 851, 857 (4th Cir. 2009); *Irving v. Hall,* Civil Action No. 3:16CV308, 2016 U.S. Dist. LEXIS 158177, at *11 (E.D. Va. Nov. 15, 2016); *Craddock v. Fisher,* Civil Action No. 3:12CV430, 2015 U.S. Dist. LEXIS 52412, at *11 (E.D. Va. Apr. 21, 2015); *Keck,* Civil Action No. 3:10cv555, 2011 U.S. Dist. LEXIS 112695, at *32; *Horne v. Bailey,* Civil Action No.

---

[3]     The claims against the moving Officers are for deprivation of liberty and/or cruel and unusual punishment (Count VI) and supervisory injury (Count IV).

1:10cv641 (CMH/IDD), 2010 U.S. Dist. LEXIS 145096, at *5 (E.D. Va. June 25, 2010); *Blackmon v. Perez,* 791 F. Supp. 1086, 1091 (E.D. Va. 1992).

The Fourth Circuit faced a similar set of facts in *Cramer v. Crutchfield*, 648 F.2d 943 (4th Cir. 1981), where a plaintiff alleged a Section 1983 claim related to a search and seizure. A Virginia state trooper conducted a roadside stop of the plaintiff and accused the plaintiff of possessing a radar detection device. *Id.* at 944. The trooper asked the plaintiff to open his truck's locked cab to inspect it. *Id.* When the plaintiff refused, the trooper, without a search warrant, used a screw driver to open the locked cab. *Id.* The trooper found a radar detector and immediately arrested the plaintiff. *Id.* The plaintiff was later convicted. *Id.*

Even though the plaintiff never alleged a violation of his Fourth Amendment rights during the underlying trial, he brought a Section 1983 claim against the trooper two years and two weeks after the roadside search and seizure. *Id.* at 945. This Court granted the trooper's motion for summary judgment, finding that the complaint was barred by the statute of limitations, as it was filed more than two years after the search occurred. *Id.*

The Fourth Circuit affirmed. *Id.* Of particular import to the court was the fact that the plaintiff never raised any claim that the evidence was obtained illegally, nor did he move to suppress the evidence prior to his conviction. *Id.* "He therefore waived any challenge to the constitutionality of the search." *Id.*

A similar result follows in this case. Plaintiffs had an opportunity to challenge the validity of the search warrants at the time of their arrests, before they pled guilty. Plaintiffs' failure to raise any challenge at the time of their arrests does not permit them to turn back the clock to raise objections after seven or eight years have passed.

Fourth Circuit precedent acknowledges the important public policy of requiring criminal defendants to raise their objections *at the time* of an alleged injury. This Court should not have to revisit allegedly improper search warrants and recreate the circumstances surrounding them. Plaintiffs knew of their rights at the time they pled guilty, but chose to do so anyway. They made the affirmative decisions to accept plea deals and waive their constitutional challenges. Their Section 1983 claims accrued at the time of their respective searches in 2009 and 2010 and, as a result, they are time barred.

**B.      Alternatively, Plaintiffs' Claims Accrued No Later than the Filing of Their Motions to Vacate.**

As noted above, a Section 1983 plaintiff's claim accrues when he or she "becomes aware of his or her injury, or when he or she is put on notice . . . to make a reasonable inquiry as to whether a claim exists." *Keck*, Civil Action No. 3:13cv555-MHL, 2011 U.S. Dist. LEXIS 115795, at *32. Should the Court decline to adopt as the date of accrual the time of the search and seizure, then the latest possible date that each Plaintiff could claim that he had reason to know of his injury was the date the petition to vacate was filed. Plaintiffs' petitions were based on the same facts they allege in the Complaint, so it cannot be disputed that they knew at least at the time of these filings of their complete causes of action.

The Commonwealth moved to vacate Johnson's conviction on July 6, 2015. (Compl. ¶ 84.) In addition, the Complaint references a letter written to Richmond Commonwealth's Attorney Michael Herring, sometime before the Commonwealth moved to vacate Johnson's conviction. *Id.* As a result, Johnson cannot make a colorable argument that he did not know of his potential causes of action on or before August 8, 2015, two years before the filing of this

Complaint. Johnson's claims are time-barred on the face of the Complaint and dismissal is appropriate.[4]

## III. Plaintiffs Seek to Hold Liable Defendants Who Were Not Norton's Supervisors at or Around the Time Plaintiffs Were Arrested.

Plaintiffs raise a number of contentions in their Complaint related to the conduct of Norton, spanning approximately four and a half years. As in most modern workplaces, however, supervisors and responsibilities changed in the Richmond Police Department over this time period. As the allegations in the Complaint make clear, Norton did not have the same supervisor during the four-and-a-half-year time span covered by the Complaint. It is black letter law that a plaintiff cannot bring a Section 1983 claim for supervisory liability where the named defendant was not a supervisor at the time of the events on which the claim is based. *See, e.g., Brown v. Poplin*, 3:10cv565, 2011 U.S. Dist. LEXIS 124912, at *22 (W.D.N.C. Oct. 27, 2011) (dismissing Section 1983 case for failure to state a claim where plaintiff asserted supervisory liability against a defendant who was not a supervisor at the time of the alleged incident).

Plaintiffs' disjointed presentation of the timeline of events in this case (perhaps intentionally) only serves to confuse the facts. However, a careful review of the dates of Plaintiffs' arrests and the corresponding dates of the Officers' responsibilities alleged in the Complaint, *see supra* at 7, shows that the Complaint names as Defendants Officers who were not responsible for Norton at or around the time of Plaintiffs' respective arrests. Simply because of

---

[4]     If the accrual date is pegged to the filing of the motions to vacate, it is unclear from the face of the Complaint whether the statute of limitations bars Williams' claims. The Complaint notes that the Commonwealth moved to vacate his 2009 conviction on September 15, 2015. (Compl. ¶ 97.) As a result, if the dates of the motions to vacate are used, further discovery may be necessary to determine the date that Williams' causes of action accrued for Section 1983 purposes. Of course, Williams' claims must be dismissed for the other reasons discussed in this brief. If the Court adopts the later accrual date, however, and does not dismiss Williams' claims on other grounds, the moving Officers reserve the right to raise a statute of limitations defense against Williams at a later stage.

this timing, Plaintiffs cannot state a claim for relief against these Officers and, as a result, the claims against them must be dismissed.[5]

**A.    Lieutenant Corrigan Was Not Norton's Supervisor at the Time of Either Plaintiff's Arrest.**

The Complaint fails to state a claim against Lt. Corrigan because Plaintiffs do not allege that Lt. Corrigan was Norton's supervisor at the time of any of Plaintiffs' arrests.  The Complaint describes Lt. Corrigan as Norton's "Intermediate Supervisor" in 2012 and 2013.  (Compl. ¶ 17.) Plaintiffs later pinpoint the date that Lt. Corrigan was placed in this role, when they state that he was "placed in charge of the [RPD's confidential informant] program in August 2012."  (Compl. ¶¶ 121, 122.)  Plaintiffs do not allege that Lt. Corrigan had any role in Plaintiffs' arrests or any supervisory role with respect to Norton (or the confidential informant program) before August 2012.

Because the Complaint reveals that Lt. Corrigan had no responsibility for Norton (or the confidential informant program) prior to August 2012, *see supra* at 7*,* and all of Plaintiffs' arrests occurred on or before March 11, 2010 (Compl. ¶¶ 70, 92), Count IV fails to state a claim against Lt. Corrigan and must be dismissed.

**B.    Lieutenant Alston Was Not Norton's Supervisor at the Time of Either Plaintiff's Arrest.**

In the same way, Lt. Alston's history with Norton, as detailed in the Complaint, demonstrates that Plaintiffs cannot state a claim for relief against him.  Plaintiffs do not allege that Alston was Norton's supervisor at the time of any of Plaintiffs' arrests.  Plaintiffs say instead that "[f]rom 2009 through approximately June 2012, Defendant *Gleason* served as Norton's

---

[5]    Plaintiffs' Complaint purports to state a claim against the Officers individually for failure to personally intervene in their cases and secure their releases from prison.  As discussed in Section VI, Plaintiffs' Complaint fails to state a claim on this point, too.

Direct Supervisor." (Compl. ¶ 13 (emphasis added).) Then, they say that Lt. "Alston served as Norton's Direct Supervisor" "[i]n 2012 and 2013." (Compl. ¶ 19.) Using this timeline, Lt. Alston could not have been Norton's Direct Supervisor before sometime in June 2012, the month that Gleason left that role. By June 2012, both Plaintiffs already had been arrested and pled guilty. Just as with Lt. Corrigan, because Lt. Alston played no supervisory role with respect to Norton at the time of the events underlying Plaintiffs' Section 1983 claims, so Count IV fails to state a claim against Lt. Alston and should be dismissed. *Brown*, 2011 U.S. Dist. LEXIS 124912, at *22.

C.   **Captain Harrison Was Not Norton's Supervisor at the Time of Either Plaintiff's Arrest.**

Cpt. Harrison was not Norton's supervisor when Plaintiffs were arrested. The Complaint alleges Cpt. Harrison was head of the Richmond Police Department's Special Investigations Division "[i]n or about 2011 through at least March 2013." (Compl. ¶ 18.) The Complaint does not allege that Cpt. Harrison had any supervisory role with respect to Norton before this date. The Complaint further states that Plaintiffs were arrested in July 2009 and March 2010, respectively. (Compl. ¶¶ 70, 92.) Plaintiffs cannot state a claim for relief against Cpt. Harrison, who had no supervisory responsibility of Norton and had no connection whatsoever to their 2009 and 2010 arrests. As a result, Count IV should be dismissed as to Cpt. Harrison.

IV.   **The Complaint Fails to State a Claim Against the Officers in Their Individual Capacities Because Plaintiffs Do Not Allege that these Officers Acted Personally to Deprive Them of Any Constitutional Rights.**

Plaintiffs bring all of their claims against the individual defendants in their *individual*, rather than official capacities. However, Plaintiffs have not, and cannot, allege that Lt. Corrigan, Lt. Alston, Cpt. Blackwell or Cpt. Harrison acted *personally* in any alleged deprivation of rights.

To the extent Plaintiffs seek to hold these Officers liable for personal actions, the failure to include such allegations is fatal to their Complaint.

"Generally, to establish section 1983 liability against an officer in his or her personal capacity, a plaintiff must affirmatively show that the official charged *acted personally* in the deprivation of the plaintiff's rights." *Alfaro-Garcia v. Henrico Cnty.*, Civil Action No. 3:15cv349-MHL, 2016 U.S. Dist. LEXIS 132274, at *36 (E.D. Va. Sept. 26, 2016) (quoting *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)) (emphasis added). And, a plaintiff who raises a Section 1983 claim cannot employ the doctrine of *respondeat superior*. *Id.* "Phrased differently, section 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort." *Oliver*, 250 F. Supp. 2d at 598 (citing *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 691 (1978)). Instead, a plaintiff alleging a Section 1983 violation must allege that a defendant "had personal knowledge of and involvement in the alleged violations of constitutional rights." *Id.*

The Complaint is devoid of any allegation that Lt. Corrigan, Lt. Alston, Cpt. Blackwell or Cpt. Harrison had any personal involvement Plaintiffs' arrests. Indeed, the Complaint barely mentions these Officers, except in the initial description of the parties, and in the individual Counts alleging constitutional violations. (Compl. ¶¶ 16-19, 21, 143, 153.) (Lt. Corrigan is also mentioned as having been "brought in to clean up the informant program" (Compl. ¶¶ 121-24) – an allegation that *exonerates* rather than *implicates* him.) Plaintiffs do not allege any personal knowledge or personal action by any of these Officers with regard to Plaintiffs' arrests. They do not allege that the Officers knew of the search warrants, signed off on the search warrants, participated in the searches, knew that the searches took place or even that they knew that any of

the Plaintiffs had been arrested. It is axiomatic that Plaintiffs cannot state a claim against these Officers if their pleading is devoid of any facts showing the Officers were involved in any alleged constitutional violation.

The Complaint falls far short of the requirement that Plaintiffs must at least allege that these Officers had personal knowledge of and involvement in any alleged deprivation of liberty. Thus, to the extent the Complaint seeks to hold the Officers personally liable for Plaintiffs' arrests and incarcerations, it must be dismissed.

## V. The Complaint Fails to State a Claim for Supervisory Liability because Intervening Causes Separate Any Alleged Inaction by the Officers from Plaintiffs' Alleged Injury.

Plaintiffs' claims for supervisory liability also fail as a matter of law because Plaintiffs have not alleged pervasive conduct ignored by these Officers that directly resulted in any constitutional injury. The Fourth Circuit recognizes supervisory liability in a Section 1983 context where:

> (1) the supervisor had actual or constructive knowledge that his or her subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injuries to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and, (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Patrick v. City of Petersburg, et al.*, Civil Action No. 3:15cv565-MHL, 2016 U.S. Dist. LEXIS 136380, at *17-18 n.19 (E.D. Va. Sept. 30, 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).[6] To allege conduct that poses "a pervasive and unreasonable risk" of constitutional injury, a plaintiff "must show that the conduct is widespread, or at least has been used on several

---

[6] Supervisory liability may no longer constitute a viable Section 1983 claim. *See Iqbal*, 556 U.S. at 677. However, Plaintiffs' pleading so clearly fails to state a claim that the Court need not make a determination on this point.

different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Jenkins v. Woody*, Civil Action No. 3:15cv355-MHL, 2017 U.S. Dist. LEXIS 8876, at *44 (E.D. Va. Jan. 21, 2017) (quoting *Shaw*, 13 F.3d at 799). Furthermore, a plaintiff must allege "a plausible nexus . . . between the supervisor's actions and the constitutional deprivation." *Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011) (internal citations and quotation marks omitted). Plaintiffs fail to make the allegations necessary to meet these standards.

A. **Plaintiffs' Allegations of Conduct that Took Place A*fter* Their Arrests, as Well as Allegations of Isolated Events, Separated by Months or Years, Does Not Demonstrate Widespread Conduct.**

First, Plaintiffs here have not alleged any conduct that was so widespread that it would pose an unreasonable risk of harm of constitutional injury. Rather, Plaintiffs have merely alleged isolated occurrences, separated by months and, in many cases, years, with few having any bearing on constitutional rights. Furthermore, the bulk of Plaintiffs' allegations detail conduct that occurred *after* Plaintiffs' arrests, not before. Plaintiffs cannot support a claim for supervisory liability by citing incidents that occurred *after* the alleged constitutional violation. *See, e.g., Cordova v. Aragaon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("[B]asic principl[e]s of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation.") (emphasis in original).

The Complaint details a number of rumors that circulated about Norton, and notes that he had a reputation for incomplete paperwork and a messy desk. But, rumors and allegations of sloppy paperwork do not indicate that constitutional injury is imminent. And, none of the allegations made in the Complaint tie directly to any alleged constitutional injury that Plaintiffs

experienced nor would they have provided RPD officers with reason to suspect an unreasonable risk of constitutional injury.

Further, Plaintiffs' argument that Norton's alleged mistakes in confidential informant resumes demonstrate pervasive, widely-acknowledged conduct fails to recognize that Norton's supervisors would have looked at these resumes when they were submitted months apart. Each time RPD officers reviewed the resumes, they would have had only the single resume in front of them, without the benefit of comparison to others submitted in other cases at different time periods. Under these circumstances, nothing would have indicated an unreasonable risk of constitutional injury.

Plaintiffs' additional accusation about an undated interview of the confidential informant "R.A." does not evidence widespread conduct. The Complaint offers no information about what "R.A." said. Indeed, Plaintiffs fail to even provide the date that this interview occurred. Without including the content and date of the interview, the interview does not constitute evidence supporting Plaintiffs' allegations. Moreover, even if the contents and timing of the interview were included in the Complaint, a single interview of a single subject is not evidence of widespread conduct or pervasive behavior.

Plaintiffs also devote a considerable portion of their Complaint to alleged problems with signatures on the N-10 forms. (Compl. ¶¶ 52-63.) But the N-10 forms have nothing to do with any alleged injury Plaintiffs experienced. The signature of another RPD officer on a receipt does not indicate that the information relating to a confidential informant has somehow been falsified, and certainly does not indicate that fellow officers should suspect inconsistencies in the *resume* of a confidential informant.

**B.** **The Complaint Acknowledges that the Richmond Police Department Responded to Concerns About Norton, Evidencing Deliberate Remediating *Action*, Not Deliberate *Indifference*.**

Second, the Complaint *acknowledges* that the Richmond Police Department responded to concerns about Norton's work with confidential informants. Responding to a problem, even negligently, still demonstrates engagement and a lack of deliberate indifference. The Fourth Circuit wrote in *Jones v. Wellham*,

> With the benefit of hindsight, [certain decisions] were clearly unfortunate, might perhaps be thought imprudent, or even been found legally negligent, *but that does not suffice*; only decisions taken with deliberate indifference to the potential consequences of known risks suffices to impose . . . liability.[7]

104 F.3d 620, 627 (4th Cir. 1997) (emphasis added). "Indeed, a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted." *Pistore v. Roper*, No. 3:05-cv-123, 2007 U.S. Dist. LEXIS 75525, at *4 (N.D.W. Va. Sept. 28, 2007).

As the Complaint states: "Norton was formally reprimanded on March 25, 2011 for his work with confidential informants in July 2010." (Compl. ¶ 34.) Plaintiffs thus acknowledge affirmative steps that the Richmond Police Department took to address concerns about Norton's work with confidential informants. This demonstrates that the Police Department and those supervising Norton were not indifferent to his conduct, nor did they provide tacit authorization for it. While Plaintiffs may argue that the reprimands did not go far enough, the decision to

---

[7] This quotation is taken from the Fourth Circuit's reasoning on municipal liability. However, the court also noted the similarity between the standard for municipal liability and supervisory liability based upon the same claim. *Jones*, 104 F.3d at 628 ("While a municipal liability claim based upon a particular official's attributed conduct and a supervisory liability claim against that official based upon the same conduct are not perfectly congruent, each requires proof of both the official's deliberate indifference and of a close affirmative link between his conduct and a resulting constitutional violation by a subordinate.").

reprimand Norton was quite the opposite of indifference – it showed engagement and consideration of Norton's work.

Additionally, Plaintiffs do not point to any indication prior to the allegations in their Complaint, or the similar allegations made in *Ensley, et al. v. City of Richmond, et al.*, Civil Action No. 3:17-cv-00024-MHL, currently pending before this Court, to indicate that RPD officers should have suspected problems with search warrant affidavits offered by Norton. The U.S. District Court for the Western District of Virginia faced a similar issue in *Jackson v. Brickey*, 771 F. Supp. 2d 593 (W.D. Va. 2011), where a plaintiff alleged supervisory liability against a police chief after the plaintiff's arrest without probable cause. Because the plaintiff failed to allege that the chief was both aware of and ignored similar instances of arrests without probable cause, the court concluded that the plaintiff did not state a claim against the chief. *Id.* at 603. The same result should follow in this case, where Plaintiffs have not alleged any instance of falsified confidential informant resumes prior to their own cases, nor have they alleged that any officer was aware of and ignored such instances.

> **C.** **Plaintiffs Cannot Establish Any Link Between Their Alleged Injuries and These Officers because the Fruit of the Poisonous Tree Does Not Apply in the Context of a Section 1983 Action.**

Finally, the Complaint recites many facts that break the causal chain between any alleged inaction by Norton's supervisors and the alleged constitutional injuries suffered by Plaintiffs. The many intervening causes of Plaintiffs' respective detentions detailed in the Complaint include the following:

- Plaintiffs' arrests (Compl. ¶¶ 70, 92);

- Criminal charges brought against Plaintiffs (Compl. ¶¶ 79, 93); and

- ***Each Plaintiff's guilty plea*** (Compl. ¶¶ 80, 94).

Plaintiffs argue that their searches, arrests, and detentions can all be traced back to Norton, with the misstatements in his warrant affidavits serving as the root of the alleged constitutional violation. But, the fruit of the poisonous tree doctrine does not apply to civil proceedings, and Plaintiffs cannot restore the causal chain by linking Norton's acts through any alleged inactivity by the officers and ultimately to their own detentions. *Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) ("[T]he fruit of the poisonous tree doctrine is not available to assist a section 1983 claimant.") (quoting *Townes v. City of New York*, 176 F.3d 138, 148-49 (2d Cir. 1999)). Without this doctrine, an unlawful search imposes no liability on an investigating officer for a subsequent arrest. *Id.*

This problem is fatal and merits further explanation. Plaintiffs' entire theory of liability hinges on the fruit of the poisonous tree doctrine, which was never intended to apply in the civil context. The doctrine exists to prevent officers from taking "dubious shortcuts" to obtain necessary evidence in a criminal proceeding. *Nix v. Williams*, 467 U.S. 431, 446 (1984). It has no application to a civil proceeding under Section 1983 meant to vindicate supposed constitutional violations. Any alleged links do not, and as a legal matter cannot, bind these Officers to the acts of Norton.

In sum, Plaintiffs cannot state a claim for supervisory liability against these officers because, as they acknowledge, a number of factors came between any alleged supervisory inaction and any constitutional injury they supposedly suffered. Each Plaintiff in this action, after being advised of his rights, pled guilty. Neither of the Plaintiffs contends he was actually innocent of the charges to which he pled guilty. Plaintiffs cannot argue around this reality to impose liability on Norton's supervisors, who were at least three links removed from the cause of their respective incarcerations.

Furthermore, Plaintiffs' theory of liability is even more attenuated, as they attempt to argue that the Officers should be held liable for their *subsequent prison sentences* – sentences resulting from arrests in which neither Norton nor any of the Officers had any involvement. This attenuated chain impermissibly seeks to use the fruit of the poisonous tree to look back in time and affix liability to someone other than Plaintiffs themselves. Neither Norton nor the Officers were responsible for, or even had any involvement in, Plaintiffs' subsequent detentions, nor can they be held liable for Plaintiffs' criminal conduct and resulting sentences. Plaintiffs have no one other than themselves to blame for their inability to stay out of trouble.

Plaintiffs' claims further demonstrate why extending the fruit of the poisonous tree doctrine to the civil context would be ill-advised. Plaintiffs' claims, taken to their logical extension, would connect every act in both Plaintiffs' lives after their 2009 or 2010 narcotics arrests to the alleged acts of Defendant Norton. As described above, courts have recognized that there is no meaningful way to limit this liability and, therefore, the doctrine has no place in the civil context.

There is more. Plaintiffs fail to acknowledge that they already have received their remedy – vacatur of their convictions. "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Townes*, 176 F.3d at 148; *see also Ware*, 652 F. Supp. 2d at 706 ("Ware has already reaped an enormous benefit by reason of the alleged illegal seizure to which he was subjected: his freedom, achieved by the decision of the Commonwealth's Attorney not to pursue prosecution.") (internal citations and quotation marks omitted). Plaintiffs have achieved vacatur of their convictions, despite repeatedly acknowledging that they were guilty of state criminal charges. Their Complaint now overreaches and seeks to impose civil damages for their arrests, convictions, and incarcerations,

not just on Norton, but also on his superiors, without admitting that *Plaintiffs' own conduct* led to their arrests, convictions, and incarcerations. Individuals have a right to Fourth and Fourteenth Amendment protection, not a right to possess narcotics and other contraband. Plaintiffs have not stated a claim for supervisory liability and dismissal of the Complaint, in its entirety, is required.

**VI.** **Plaintiffs' Complaint Fails to State a Claim for Deprivation of Liberty or Cruel and Unusual Punishment Because the Complaint Does Not Allege that Any of the Officers Knew of Their Incarcerations.**

In their Complaint, Plaintiffs allege that the Officers and their RPD colleagues failed to act *personally* to intervene in their criminal cases and secure their respective releases from prison. However, a duty to intervene exists only in the context of bystander liability. To state a claim for bystander liability, a plaintiff must allege that an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). In *Randall*, the police officers against whom the plaintiffs sought to impose bystander liability knew there was a lack of probable cause, reviewed witness statements, were present at the station when the plaintiffs were arrested and may have seen them being transported in handcuffs. *Id.* at 204-05. Nonetheless, the Court found these facts inadequate to sustain a verdict against the officers based on bystander liability. *Id.* at 205.

In this case, Plaintiffs have not alleged that any Officer knew about Norton's alleged constitutional violations, had a reasonable opportunity to prevent the violations and chose not to act. As discussed in Section IV, *supra* at 15-17, the Complaint is completely devoid of any allegation that *any* of the named Officers participated personally in Plaintiffs' searches, arrests, prosecutions, guilty pleas or incarcerations. Indeed, Plaintiffs have not alleged that these Officers even knew about the search warrants at issue or were aware of Plaintiffs' arrests. The

absence of any allegation that the Officers observed or had reason to know that a constitutional violation was being or had been committed, coupled with Plaintiffs' own guilty pleas, would establish neither a reason nor a duty to advocate personally for the Plaintiffs' releases from prison. As *Randall* makes clear, no bystander liability can attach to the Officers under these circumstances.

Plaintiffs also have not alleged facts that would demonstrate constructive knowledge. In the context of a Section 1983 action, constructive knowledge "can be alleged in multiple ways, including the existence of written reports . . . or the supervisor's high level of responsibility coupled with the violations alleged to have occurred on her or his watch." *Woodson v. City of Richmond*, 88 F. Supp. 551, 553 (E.D. Va. 2015) (quoting *Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007)). As discussed previously in this brief, Plaintiffs included in their Complaint allegations that an RPD officer interviewed a confidential informant, R.A., about his relationship with Norton. (Compl. ¶¶ 106-09.) But, Plaintiffs provide no information about the interview. They do not include any statements made in the interview and do not say whether the information R.A. provided impugned or exonerated Norton. Indeed, Plaintiffs do not even allege *when* the interview occurred, stating only that "[t]he exact date of this hospital interview is not yet certain. . . ." (Compl. ¶ 108.) The fact that an interview discussing unspecified topics happened at some time in the past is insufficient to demonstrate that RPD officials had actual or constructive knowledge that either Plaintiff was allegedly deprived of his liberty or subject to cruel and unusual punishment.

Also fatal to their claims for individual liability is the fact that the Complaint affirmatively demonstrates that the violations alleged *did not occur on the Officers' watches*. As noted in Section III, *supra* at 13-15, Plaintiffs' allegations show that Lt. Corrigan, Lt. Alston and

Cpt. Harrison did not have any supervisory responsibility over Norton at the time of their arrests or incarcerations. And Plaintiffs' Complaint does not name Cpt. Blackwell in any portion of the Complaint, save for the introductory paragraph and causes of action. In sum, Plaintiffs cannot state a claim against the Officers for deprivation of liberty or cruel and unusual punishment because Plaintiffs do not allege that any of the Officers had any personal involvement in, actual knowledge, or constructive knowledge of Plaintiffs' arrests or incarcerations.

## VII. Plaintiffs Cannot State a Claim for "Malicious Prosecution" Against the Officers Because Their Pleading Fails to Assert Three of the Four Elements of the Cause of Action.

To the extent Plaintiffs attempt to state a claim for "malicious prosecution" under federal law, such a claim also would fail. The Complaint fails to plead facts supporting a malicious prosecution claim against the Officers because probable cause existed at each stage following Plaintiffs' searches. In addition, Plaintiffs do not offer any facts indicating that the Officers had any personal involvement whatsoever in their arrests, detentions, convictions, or incarcerations. As a result, any purported "malicious prosecution" count fails to state a claim.

Malicious prosecution is not an independent cause of action under Section 1983; instead, a claim for malicious prosecution under federal law "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)).[8] "To succeed," in such a claim, "a plaintiff must show that

---

[8]     It is unclear whether the Fourth Circuit recognizes malicious prosecution as a distinct claim under Section 1983. *See Davis v. Beck,* Civil Action No. 3:09cv557, 2010 U.S. Dist. LEXIS 42030, at *37-38 (E.D. Va. Apr. 29, 2010) ("The Fourth Circuit acknowledges that it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution.") (quoting *Snider v. Lee*, 584 F.3d 193, 199 (4th Cir. 2009)) (internal quotation marks omitted); *see also Albright v. Oliver*, 510 U.S. 266, 279-80 n.5 (1994)

'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor.'" *Humbert v. Mayor & City Council of Balt. City*, Nos. 15-1768, 15-2461, 2017 U.S. App. LEXIS 16104, *13 (4th Cir. Aug. 7, 2017) (quoting *Evans*, 703 F.3d at 647). The Complaint fails to allege the necessary elements of a "malicious prosecution" claim against the Officers.[9]

The first element of a malicious prosecution claim requires the initiation or maintenance of a proceeding against the plaintiff *by the defendant*. *See Lambert*, 223 F.3d at 260; *see also Evans*, 703 F.3d at 647-49 (to be held liable, officers must have caused the seizures). As the Complaint makes clear, however, none of the Officers himself initiated or maintained a proceeding against either Plaintiff. Indeed, the Complaint is devoid of any allegation directly connecting either Plaintiff to any Officer. The absence of any such allegation demonstrates conclusively that Plaintiffs have not satisfied the first element of a malicious prosecution claim.

The U.S. District Court for the Western District of Virginia recently considered a similar set of allegations in *Krumtum v. Crawford*, No. 1:16CV00007, 2016 U.S. Dist. LEXIS 112936, (W.D. Va. Aug. 24, 2016). In that case, the plaintiff sought to include a police chief in a federal "malicious prosecution" claim against an officer under his supervision (among other individuals). Apart from his supervisory status, there were "no specific facts . . . alleged that would connect [the chief] to the alleged misconduct." The court held that although "the plaintiff's Complaint repeatedly makes allegations against the defendants as a whole[,] these general allegations against the entire group of defendants are not enough to save the plaintiff's

---

(Ginsburg, J., concurring) ("Albright's reliance on a 'malicious prosecution' theory, rather than a Fourth Amendment theory, is anomalous.").

[9] To the extent the Plaintiffs argue that they incorporate a malicious prosecution claim against the Officers in a supervisory role, this argument fails also. (*See* Sections II, III, and IV, *supra*.)

Complaint as it relates to [the chief] or any other defendant who is not *specifically identified as having engaged in some tortious conduct*." *Id.* at *9 (emphasis added). Accordingly, the court granted the chief's Rule 12(b)(6) motion. *Id.*[10] The same analysis applies here where the Complaint is devoid of any allegations specifically identifying any tortious conduct by the Officers against either of the Plaintiffs. Just as in *Krumtum*, the malicious prosecution claim against the Officers should be dismissed.

Second, the Complaint does not establish that Plaintiffs' criminal proceedings were unsupported by probable cause, and thus Plaintiffs fail to satisfy the second element of a federal "malicious prosecution" claim. Plaintiffs were subject to warrantless arrests based on evidence found in warrants *supported* by probable cause, as demonstrated by the contraband discovered in the searches. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) (detention was "without legal process" because police "did not have a warrant for his arrest"); *Evans*, 703 F.3d at 647 (a warrantless arrest is not "a seizure . . . pursuant to legal process"). Moreover, the law is clear that even if a warrant is deficient, a plaintiff cannot state a claim for Fourth Amendment "malicious prosecution" if officers had sufficient knowledge independent of the warrant to provide probable cause to initiate legal action against him. *Humbert*, 2017 U.S. App. LEXIS 16104, at *23-24.

In this case, both Plaintiffs were indicted and pled guilty. And, each indictment was supported by the presence of drugs or weapons. The question whether evidence was obtained lawfully addresses only the lawfulness of the search and initial seizure, *not* whether the indictments were supported by probable cause. Unlawfully obtained evidence can still support

---

[10] The court also found that the plaintiff had not satisfied the elements necessary to establish supervisory liability. *Id.* The same holds true in this case with respect to the Officers. *See* Sect. V, *supra*.

probable cause in actions such as this one.  *See* discussion *supra* at 21-24.  Because the criminal proceedings against Plaintiffs were supported by probable cause, Plaintiffs cannot satisfy the second element of a "malicious prosecution" claim under federal law, and their claim must be dismissed.

## VIII.  The Officers Are Entitled to Qualified Immunity Because They Had No Reason to Know of Any Alleged Constitutional Violation.

Finally, Lt. Corrigan, Lt. Alston, Cpt. Blackwell and Cpt. Harrison are entitled to qualified immunity as a matter of law.[11]  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Alfaro-Garcia*, Civil Action No. 3:15cv349-MHL, 2016 U.S. Dist. LEXIS 132274, at *38 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). "To survive a motion to dismiss that raises qualified immunity, [the plaintiff] must (1) allege sufficient facts to make out a violation of a constitutional right, (2) that was clearly established at the time of the alleged violation.  *Id.* at *39 (internal citations and quotation marks omitted). And, the constitutional right at issue "must be defined at a high level of particularity."  *Id.*

In their Complaint, Plaintiffs have not alleged facts that would demonstrate the violation of a constitutional right and certainly not one that was clearly established at the time of the violation.  An officer's conduct is viewed objectively in light of the relevant facts and circumstances existing at the time of the alleged violation. *See Henry v. Prunell*, 652 F.3d 524,

---

[11]    Even though qualified immunity is an affirmative defense, a party may nonetheless raise the defense in a motion to dismiss pursuant to Rule 12(b)(6).  *See Alfaro-Garcia*, No. 3:15cv349-MHL, 2016 U.S. Dist. LEXIS 132274, at *38 n.19 ("Alfaro-Garcia argues that, because qualified immunity constitutes an affirmative defense, it cannot be raised on a Rule 12(b)(6) motion.  The Fourth Circuit has squarely rejected this position.") (citing *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997)).

535 (4th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)) ("[O]bjectivity has been the touchstone of qualified immunity law for nearly thirty years.  The Supreme Court has made clear that the Fourth Amendment inquiry is one of objective reasonableness under the circumstances.").  As the Complaint demonstrates, the Officers had little evidence that would indicate that Norton was falsifying or altering confidential informant resumes.  On the two occasions when Norton's missteps came to his supervisors' attention he was reprimanded.  And, when issues with informant paperwork were discovered, Lt. Corrigan was tasked with implementing changes.  Under an objective standard, the conduct of these Officers was reasonable.

But, most importantly, the Complaint offers no indication how any reasonable officer, including Lt. Corrigan, Lt. Alston, Cpt. Blackwell and Cpt. Harrison, would have known that any of Plaintiffs' constitutional rights were violated.  Plaintiffs do not allege that *any* of the Officers were present during their arrests or signed off on the paperwork that Norton prepared for the search warrants.  As a result, all of the Officers are entitled to qualified immunity and Plaintiffs' Complaint against them should be dismissed.

## CONCLUSION

For the reasons stated above, Defendants Lieutenant Michael Alston, Lieutenant Brian Corrigan, Captain Martin Harrison, and Captain William Blackwell, by counsel, respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, enter judgment in favor of these Defendants, award costs and attorneys' fees expended herein, and grant such other and further relief as the Court deems just and appropriate.

Dated: October 6, 2017

**MICHAEL ALSTON,**
**BRIAN CORRIGAN,**
**MARTIN HARRISON, and**
**WILLIAM BLACKWELL**

By: /s/ Stephen C. Piepgrass
Ashley L. Taylor, Jr. (Va. Bar No. 36521)
Stephen C. Piepgrass (Va. Bar No. 71361)
Brooke K. Conkle (Va. Bar No. 87413)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1286
Facsimile: (804) 697-1339
E-mail: ashley.taylor@troutman.com
E-mail: stephen.piepgrass@troutman.com
E-mail: brooke.conkle@troutman.com


*Counsel for Michael Alston, Brian Corrigan,*
*Martin Harrison, and William Blackwell*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

**Counsel for Plaintiffs Bravette Johnson and Curtis Williams**
Mark J. Krudys
The Krudys Law Firm, PLC
SunTrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
Email: mkrudys@krudys.com

John Frederick Preis
7719 Rock Creek Road
Henrico, VA 23229
Phone: (804) 289-8682
Email: jpreis@richmond.edu

Amy L. Austin
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite M
Richmond, VA 23219
Phone: (804) 343-1900
Fax: (804) 343-1901
Email: amyaustinlawyer@gmail.com

**Counsel for Defendant City of Richmond**
Stephen Hall
Richard E. Hill, Jr.
Office of the City Attorney
900 E. Broad St.
Richmond, VA 23219
Phone: (804) 646-7946
Email: Stephen.Hall@richmondgov.com
Email: Richard.HillJr@richmondgov.com

**Counsel for Defendant Jason Norton**
David P. Corrigan
M. Scott Fisher, Jr.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Drive, Suite 100
Glen Allen, VA 23060-9272
Phone: (804) 762-8017
Email: dcorrigan@hccw.com
Email: sfisher@hccwcom

**Counsel for Defendant Bryan T. Norwood**
Jonathan P. Harmon
Brian D. Schmalzbach
McGuireWoods
Gateway Plaza
800 E. Canal St.
Richmond, VA 23219-3916
Phone: (804) 775-4712
Email: jharmon@mcguirewoods.com
Email: bschmalzbach@mcguirewoods.com

**Counsel for Defendants Christopher Gleason, Charles Sipple, and Roger Russell**
D. Cameron Beck, Jr.
C. Walker Terry
McCandlish Holton Morris
1111 E. Main Street, Suite 2100
P.O. Box 796
Richmond, VA 23218-0796
Phone: (804) 344-6322
Email: cbeck@lawmh.com
Email: wterry@lawmh.com

/s/ Stephen C. Piepgrass
Stephen C. Piepgrass (Va. Bar No. 71361)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1286
Facsimile: (804) 697-1339
E-mail: stephen.piepgrass@troutman.com