**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **BRAVETTE JOHNSON and** | ) | |
| **CURTIS WILLIAMS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17CV00553** |
| | ) | |
| **CITY OF RICHMOND, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT**
**OF CITY OF RICHMOND'S MOTION TO DISMISS**

In this action, two Richmond area drug dealers sue the City of Richmond ("City") and nine current or former members of the Richmond Police Department ("RPD"), seeking millions of dollars from Richmond taxpayers for time they spent in prison, for crimes they admitted committing. Plaintiffs Bravette Johnson and Curtis Williams both served approximately two years in jail after pleading guilty to drug distribution and weapons charges. Plaintiff Johnson was also indicted not just for selling heroin, but doing so within 1,000 feet of a school. He and Williams blame their jail time not on the crimes they committed, but on the Defendants' failure to catch careless mistakes Defendant Norton allegedly made on warrants that led to the Plaintiffs' arrests.

It is one thing for justice to be blind to a man's color. It's quite another for justice to be blind to his crimes. The holding in *Townes v. City of New York*, 176 F.3d 138 (2nd Cir. 1999), followed widely by courts across the country, including the Fourth Circuit, applies here and bars all these claims, since civil rights laws are not meant to reward people for prison time they serve for crimes they committed. As noted previously from a

case with nearly identical circumstances, "this is not a case of actual innocence or wrongful imprisonment," so there is "no reason to compensate" these Plaintiffs for the time they served for offenses they committed. *Williams v. City of Tulsa*, 2016 U.S. Dist. LEXIS 52066, at *24 (N.D. Okla. Apr. 19, 2016).

The same legal flaws that undermine *Ensley et al. v. City of Richmond*, Case 3:17-CV-0024-MHL, plague this case as well. The facts alleged here are largely the same as those in *Ensley* with one exception: far more of the alleged conduct in this Complaint occurred after these two arrests. As a matter of law that conduct cannot establish liability.

The Complaint in this action, as in the companion suit, is based on a flawed malicious prosecution theory. Compl. ¶¶ 129-130. That theory still fails because the intervening actions of grand juries and prosecutors, and the Plaintiffs' own guilty pleas, break the causal chain between their arrests and prison sentences. Any Fourth Amendment claims are still time barred because such claims accrued, if at all, on the date of these arrests—July 7, 2009 (Williams) and March 11, 2010 (Johnson).

These Plaintiffs' allege two claims against the City. First, under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), they attempt to establish municipal liability through former RPD Police Chief Norwood's treatment of Norton and the confidential informant program. But the Complaint fails to establish municipal liability, whether based on deliberate indifference or upon the affirmative actions of former Chief Norwood under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

The second claim against the City is brought under the Eighth and Fourteenth Amendments for "cruel and unusual punishment" and deprivation of liberty, respectively. Both theories fail as explained below.

At its core, the Plaintiffs ask the Court to recognize a heretofore unknown Constitutional right to a speedy resolution of their grievances and impose liability because, in their opinion, the system moved too slowly. No such right exists. The court should dismiss the claims against the City with prejudice, and dismiss all the other federal claims.

## I.   FACTUAL BACKGROUND

The Complaint repeats the errors in the *Ensley* case by alleging various incidents about Norton unrelated to his filling out of warrants, or which occurred after the 2009 and 2010 arrests here. Scattered accusations, not directly related to Plaintiffs alleged injuries, cannot form the basis for liability under *Monell*.[1] "[C]ontemporaneous or subsequent conduct" cannot provide notice for a constitutional violation.[2] *Consequently, only warrant-related wrongs known to the City's policymaker, prior to the last arrest here in March 2010, matter under* Monell.

The Complaint begins by alleging that Norton took money from informants, but the source for these allegations is the FBI investigation that began in mid-2012, after the arrests here. Compl. ¶¶ 24-32. Those allegations also lack the "close fit" required under *Monell* for warrant-related injuries. The Complaint then discusses Norton's two formal reprimands from March 25, 2011, which came *after* both arrests here. The first reprimand concerned Norton's failure to follow proper arrest procedures, not involving a warrant, back in 2009. *Id.* ¶ 32. Only the second one concerned a warrant from July 2010, where

---

[1] *Connick v. Thompson*, 563 U.S. 51, 62-63 (2011)(four prior *Brady* violations by prosecutors did not provide adequate notice about the specific *Brady* violation at issue there, involving blood sample lab evidence); *Carter v. Morris*, 164 F.3d 215, 218-219 (4th Cir. 1999)("splatter-paint" violations lacked "close fit" to plaintiff's injuries).

[2] *Connick* , 563 U.S. at 63 n.7 (citation omitted); *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009)(conduct after alleged violation cannot cause violation).

there were N-10 signatures (for informant payments) that did not match, and where one of the persons listed as an informant was not properly registered. *Id.* ¶ 34. *Very importantly, this is the only warrant-related allegation regarding Norton clearly known to policymaker Norwood, and it occurred after both arrests here.*

The Complaint continues on for three pages about post-arrest incidents that cannot form the basis for liability. *Id.* ¶¶ 35-40; *Connick,* 563 U.S. at 63 n.7. It then accuses Norton of tipping off an informant, being too close to one or more of them, and not executing a warrant, none of which are closely tied to the Plaintiffs' injuries. Compl. ¶¶ 41-50. It then details patterns in Norton's warrants discovered in mid-to-late 2012, *after* the last arrests here in March 2010. *Id.* ¶¶ 64-69. The Complaint then details the arrest, indictment, and guilty pleas of Johnson (*id.* ¶¶ 70-85) and Williams (*id.* ¶¶ 86-97).

Next come mostly undated allegations describing "rumors" about Norton. *Id.* ¶¶ 99-109. His two formal reprimands come next, only one of which involved a warrant. More specifically, in March 25, 2011, RPD's policymaker, former Police Chief Norwood, reprimanded Norton because informant signatures on two N-10 payment forms "did not match" other signatures from that informant, and because the name on one form "did not match up" with the informant on that form. *Id.* ¶ 112.

The Plaintiffs then make the following leap in logic: "Thus, as of March 2011, the RPD knew of Norton's involvement in forged signatures on N-10 forms, and thus, also knew that Norton had likely lied about his sources in applying for warrants." *Id.* But the last arrest here came a year earlier, so this allegation likewise establishes no liability. There are also at least two problems with these conclusions: first, just because a signature does not appear to match another does not mean, *ipso facto*, that it was "fraudulent."

4

Second, just because Norton may have taken shortcuts on N-10 signatures, or improperly listed an informant who was not registered, does not mean that he was "likely" lying about sources for his warrants.

As noted in the *Ensley* case, court documents in three related federal criminal cases[3] show that Norton had reliable informants in each of those cases, but ones who were apparently misidentified. Perhaps this explains why Norton was not prosecuted, and shows why these and the other Plaintiffs deserve no recovery.

The allegations in this case then shift to the RPD's confidential informant program. In mid-to-late 2012, the FBI discovered disturbing patterns within Norton's warrants, leading to FBI interviews of RPD personnel that year. *Id.* ¶ 115. The Plaintiffs focus a great deal of attention on problems with RPD officers not properly witnessing informant payments on N-10 forms. *See, e.g., id* ¶¶ 117-119. This problem needed to be corrected, but it does not have the close fit required under *Monell*.

Once the RPD began understanding the problems with Norton's warrants in mid-to-late 2012, the Department acted. Former Chief Norwood asked Defendant Brian Corrigan to "clean up" the informant program in August 2012. Compl. ¶ 121. The FBI began its formal investigation that fall. *Id.* ¶ 115. Following that investigation courts vacated the Plaintiffs' sentences.

---

[3] These documents state that the FBI investigation "has made clear . . . *that the probable cause information in the affidavit in this case is accurate, and was provided by a reliable informant*" (emphasis added). ECF 3:09-CR-00032-HEH-DJN, Doc. 29, p.2. (Ensley); ECF 3:09-CR-00368-HEH-DJN, Doc. 47, p.2 (Andrews); ECF 3:09-CR-00436-HEH-DJN, Doc. 35, p.2 (Archer).

5

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court accepts all the properly pled allegations as true and construes all facts in the light most favorable to the plaintiff. *See* Fed. R. Civ. P. 12(b)(6); *Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502, 504 (4th Cir. 1999). But a court "need not accept as true mere legal conclusions couched as factual allegations." *Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989)(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations omitted). A court may consider matters on the public record without converting the motion to one for summary judgment. *Papasan*, 478 U.S. at 286 n.1. "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint…not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

## II.  ARGUMENT

### A.  The Plaintiffs' Statute of Limitation Problem.

It is first important to determine what causes of action the Plaintiffs are alleging. As the Court knows, federal courts borrow the state's limitation period for personal injury torts for Section 1983 claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007)(citations omitted). In Virginia, that is two years. Va. Code § 8.01-243(A). But the question of

6

when a Section 1983 claim *accrues* is a question of federal law. *Wallace*, 549 U.S. at 388. These claims accrue when a plaintiff has "a complete and present cause of action." *Id*. (citations omitted).

Claims involving allegedly falsified search warrant affidavits are analyzed under the Fourth Amendment. *Miller v. Prince George's County*, 475 F.3d 621, 627 (2007). For such claims, the Fourth Circuit takes the position established by Justice Scalia in a footnote in *Heck v. Humphrey*, 512 U.S. 477, 487 n. 7 (1994), that claims challenging an unlawful search "do not *necessarily* imply the invalidity of [a] conviction and thus are not barred by" the accrual rule of *Heck*. *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015)(emphasis in original). Consequently, the cause of action accrues when the Plaintiff "knows or has reason to know of his injury." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 389 (4th Cir. 2014)(citing *Wallace,* 549 U.S. at 388).

Both this Court and the Fourth Circuit hold that a plaintiff has notice of a potential Section 1983 claim at the time of a search and seizure. *See Smith v. McCarthy,* 349 F. App'x 851, 857 (4th Cir. 2009); *Craddock v. Fisher,* Civil Action No. 3:12CV430, 2015 U.S. Dist. LEXIS 52412, at *11 (E.D. Va. Apr. 21, 2015). In the Fourth Circuit, such claims accrue at the time of the search, arrest, or seizure.

All these claims are time-barred since the arrests occurred in 2009 and 2010. Compl. ¶¶ 70, 86. That is when the Plaintiffs, either questioning their arrests or concerned about Norton himself, could have challenged the warrants to test the information in them.[4] They did not. Consequently, any search and seizure claim is time-

---

[4] Alternatively, the very latest date Plaintiff Johnson knew or had reason to know of their injuries was when he"heard about Norton's misconduct." Compl. ¶ 84. It would take discovery to determine that exact time, though it was no later than July 6, 2015, when

barred. *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981)(dismissing Section 1983 suit filed more than two years after search).

The Complaint is less clear as to whether the Plaintiffs are pursuing claims under theories alleging unlawful arrest or malicious prosecution against the City. Instead, it simply alleges a "supervisory" claim and "constitutional violations" under the Eighth and Fourteenth Amendments against the City. Compl. ¶¶ 146-150, 157-163. Any Plaintiff alleging malicious prosecution  (presumably to avoid the time-bar above) must allege "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)(citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). The key inquiry is to determine at what point each plaintiff was seized "pursuant to legal process," and whether or not criminal proceedings were "terminated" in the Plaintiffs favor.

As a preliminary matter, and as explained further in Defendant Norwood's Rule 12 Memorandum, the Plaintiffs were *not* seized pursuant to legal process without probable cause. They were subject to warrantless arrests based on evidence found in warrants *supported* by probable cause, as shown by the contraband found. *See Wallace,* , 549 U.S. at 389 (a detention was "without legal process" because the police "did not have a warrant for his arrest"); *Evans*, 703 F.3d at 647 (a warrantless arrest is not "a seizure . . . pursuant to legal process").

---

prosecutors moved to vacate Johnson's conviction related to Norton. *Id.* ¶ 85. Johnson's claims are time barred even under this alternate theory. For Williams, this was no later than September 15, 2015, when prosecutors moved to vacate his Norton-related conviction. *Id.* ¶ 97. Discovery would be needed to know when Williams had actual knowledge of his potential Norton-related claims.

The Complaint and criminal documents referenced in it yield the following:

Bravette Johnson: He was arrested on March 11, 2010 and later sentenced for possessing drugs (heroin) with the intent to distribute, and for possessing ammunition as a felon. Compl. ¶ 70, 78; Ex. A. He was a social guest at the house where he was arrested and claims to have an expectation of privacy there. *Id.* ¶ 78. He pled guilty on August 17, 2010, and was sentenced to 15 years in prison with 13 years suspended. *Id.*

Johnson served his sentence and was released on November 2011, only to be rearrested and charged again for drug dealing in 2012 within a year of his release, including for selling heroin within 1,000 feet of a school (a detail left out of the Complaint). *Id.* ¶¶ 81-82; Ex. B. He bemoans the fact that he was faced with a mandatory 10-year sentence. *Id.* ¶ 82. In August 2014 he pled guilty to a four-year sentence, during which time he heard about Norton's mistakes, which led ultimately to his early release for "time served" on those later offenses. *Id.* ¶¶ 84-85. Not content with that, he seeks millions of dollars from Richmond taxpayers here.

Curtis Williams: He was arrested on July 7, 2009 for possession of cocaine with intent to distribute in violation of Virginia Code § 18.2-248. *Id.* ¶ 86; Ex. C. He was sentenced to ten years in prison with eight years suspended. *Id.* ¶ 94; Ex. C. After being released, he blames Norton—not Williams' own actions—for his own probation violations that led to another brief detention. *Id.* ¶ 95. Prosecutors moved to vacate his sentence on September 15, 2015, and his sentence was vacated by a state court on April 12, 2016, according to the Complaint. *Id.* ¶ 97.

As to each Plaintiff, there are three possible accrual dates for their cause of action: (1) the date of the search and arrest, (2) the date of their indictments, or (3) the date when

their criminal proceedings terminated in their favor. For the first two (whether couched as an unlawful search, arrest, or seizure), the two year statute of limitations has expired.

Because the Complaint focuses on whether the warrants (and not the subsequent indictments) were supported by probable cause, all of the Plaintiff's claims, no matter how couched, are really just Section 1983 claims alleging unlawful search and seizure. To the extent the court rules that any such claims based upon illegal search are now time-barred, the Plaintiffs' claims survive only under a malicious prosecution theory, which also fails for the reasons stated below.

**B. Intervening Causes Undercut These Claims, Including for Malicious Prosecution.**

Even if this court finds that one or more of the Plaintiffs can meet the favorable termination prong, no Plaintiff has pled or can plausibly plead any facts establishing a malicious prosecution claim because each of those indictments was supported by probable cause as a matter of law. Even if the indictments were not supported by probable cause, the actions of prosecutors, and the Plaintiffs through guilty pleas, broke the causal chain between the Defendants and any harm to the Plaintiffs. They allege that their pleas were not voluntary and intelligent because they were not aware of the alleged Fourth Amendment violations. The Fourth Circuit rejected that argument in *United States v. Murphy*, 380 F. App'x 344, 345 (4th Cir. 2010), but may have changed its position in *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013).  As noted in Defendant Norwood's Rule 12 Memorandum, *Fisher* arguably alters the categorical holding in *Murphy*, though without addressing the persuasive logic of *Murphy*, a case which is consistent with Supreme Court precedent and decisions from other circuits.

The Fourth Circuit has stated that "a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution.'" *Evans v. Chalmers*, 703 F.3d at 648 (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). Because Section 1983 constitutional torts "require a demonstration of both but-for and proximate causation" *id.* at 647 (citing *Murray v. Earle*, 405 F.3d 278, 289-90 (5th Cir. 2005) and *Townes,* , 176 F.3d at 146), "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure" *id.* (citation omitted).

Such intervening acts "'of other participants in the criminal justice system' insulate a police officer from liability," except in certain circumstances not present here.[5] *Id.* (citation omitted). The Fourth Circuit recognizes that "[it] has long since been settled by the Supreme Court that 'an indictment "fair upon its face," returned by a "properly constituted grand jury," conclusively determines the existence of probable cause.'" *Durham v. Horner*, 690 F. 3d 183, 189 (4th Cir. 2012)(citation omitted).

The *Durham* court noted that "notwithstanding the conclusive effect of the indictments, our precedents instruct that 'a grand jury's decision to indict….will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.'" *Id.* (citation omitted). Unlike the *Ensley* case, where Norton was never accused of testifying before grand juries, this Complaint alleges that he was subpoenaed

---

[5] The three "circumstances" that override the superseding cause by "other participants" are: "when [an officer] lied to or misled the prosecutor…failed to disclose exculpatory evidence to the prosecutor….or unduly pressured the prosecutor to seek the indictment." *Evans* at 647-48 (internal citations omitted). There is no such evidence alleged here.

in Williams' criminal case. Compl. ¶ 94. But Norton is not accused of actually testifying at any of the hearings, let alone testifying falsely, nor is he accused of misleading a grand jury about Williams. No Defendant is accused of influencing either of the grand juries that indicted Williams and Johnson. Therefore, as in *Durham*, "the grand jury's probable cause determination and its [ ] indictments were the proximate cause of [the Plaintiff's] arrest and detention." *Id.*

In addition, each indictment was supported by the presence of drugs or weapons. Whether or not evidence was obtained lawfully goes to whether the search was lawful, and whether the initial seizure was lawful, *not* whether the indictments were supported by probable cause. Unlawfully obtained evidence can still support probable cause in actions such as this one. *Ware v. James City County*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009)("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.")(quoting *Townes*, 176 F.3d at 148-49); *Sommerville v. Dobson*, 2011 U.S. Dist. LEXIS 156380, *36 (E.D. Va. 2011)(same).[6]

### C. The Rationale of *Townes* Applies and Supports Dismissal of All Claims.

As in the *Ensley* case, the Plaintiffs' demand for relief runs counter to the principles of tort law and public policy. "The evil of an unreasonable search and seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Townes,* 176

---

[6] Again, any claim for knowingly obtaining a tainted search or arrest warrant is time-barred. *See Miller v. Prince George's County*, 475 F.3d 621 (4th Cir. 2007)(plaintiff's unfavorable situation remedied before formal prosecution began). Here, not only were the charges pursued under indictments, but there were intervening actions by the Plaintiffs themselves through guilty pleas. Neither Plaintiff here contested the presence of drugs, weapons, or both. If they were innocent, they would have known at the outset that there were deficiencies in the warrant applications. Both Plaintiffs have already benefitted from a *de facto* application of the exclusionary rule to the extent their criminal records were altered in their favor because of Norton's alleged errors.

F.3d at 148. "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Id.*

Numerous courts across the country, including the Third Circuit in *Hector v. Watt,* 235 F.3d 154, 157 (3rd Cir. 2000), and district courts, including in the Fourth Circuit, have followed *Townes* on this and related issues (such as the inapplicability of the fruit of the poisonous tree doctrine in Section 1983 actions).[7] Given the overwhelming consensus of opinion on this point, it is very likely that the Fourth Circuit would adopt the holdings in *Townes* and *Hector*. The City urges this Court to do the same and dismiss this action with prejudice.

A federal court considering a case with nearly identical circumstances dismissed those claims because that case, like this one, "[was] not a case of actual innocence or wrongful imprisonment," so there is "no reason to compensate" the plaintiffs for the time they served for offenses they committed. *Williams v. City of Tulsa*, 2016 U.S. Dist.

---

[7] *See Washington v. Hanshaw,* 552 Fed. Appx. 169, 172-173 (3rd Cir. 2014)(following *Townes* and *Hector,* and rebutting Fourteenth Amendment argument related to an illegal search); *Martin v. City of Chicago,* No. 15-cv-04576, 2017 U.S. Dist. LEXIS 1157, at *9-13 (N.D. Ill. Jan. 5, 2017); *Willis v. Mullins*, Case No. 1:04-CV-6542 AWI BAM, 2014 U.S. Dist. LEXIS 37762, at *16-17 (E.D. Cal. Mar. 20, 2014); *Koven v. Lewis*, 8:10CV373, 2014 U.S. Dist. LEXIS 2458, at *15 (D. Neb. Jan. 9, 2014); *Silver v. D.C. Metro. Police Dept.*, 939 F. Supp. 2d 20, 22-23 (D.D.C. 2013)(citing *Townes* and *Hector*); *Smith v. Kelly*, Case No. C11-623RAJ, 2013 U.S. Dist. LEXIS 153172, at *41 (W.D. Wash. Oct. 24, 2013); *Ruth v. Ford*, Case No. 09-11278, 2010 U.S. Dist. LEXIS 83825, at *18-20 (E.D. Mich. Aug. 17, 2010); *Vaughn v. Davis,* Civil Action No. 8:07-1173-TLW-BHH, 2008 U.S. Dist. LEXIS 29867, at *13-14 (D.S.C. Jan. 31, 2008); *see also Williams v. Carroll*, No. 08 C 4169, 1010 U.S. Dist. LEXIS 137868, at *11, 14-15 (N.D. Ill. Dec. 29, 2010)(citing several Seventh Circuit district court decisions following *Townes* on the exclusionary rule and there agreeing that no damages were owed for an improper arrest once contraband was found).

LEXIS 52066, at *24 (N.D. Okla. Apr. 19, 2016). For this reason and others discussed in Defendant Norwood's Rule 12 Memorandum, this Court should follow that same sound reasoning and dismiss this action with prejudice.

### D. There Is Neither Proximate Cause Nor Damages Under Any Theory.

As noted, the fruit of the poisonous tree doctrine does not apply to civil proceedings like this one. *Ware*, 652 F. Supp. 2d at 705. Without this doctrine, § 1983 imposes no liability on an investigating police officer for the subsequent arrest of a person that was based upon unlawfully seized contraband that was indisputably present. *Id.* Given that, there can be no liability for any of the Defendants. The Plaintiffs cannot use this theory to show causation or claim damages due to careless mistakes in Norton's warrants. The intervening indictments or waiver of indictments and the Plaintiffs' own guilty pleas further sever the causal chain between the warrants and their sentences. Given these facts and law, all the claims should be dismissed with prejudice.

### E. The Plaintiffs Fail To State A Claim Against The City Under *Monell.*

Because there is no actionable constitutional violation here, there is no basis for municipal liability. *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999)(no underlying constitutional violation, no municipal liability). However, if the court finds sufficient allegations to form the basis for a constitutional violation, there are insufficient facts alleged to support a claim under *Monell.*

To establish a *Monell* claim, a plaintiff must show a custom or practice either through (1) an express policy, such as an ordinance or regulation, (2) the affirmative decisions of policy makers, (3) omissions by such policy makers showing "manifest deliberate indifference to the rights of citizens," or (4) a custom that is "'so 'persistent

14

and widespread' and 'so permanent and well settled as to constitute "custom or usage" with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)(internal citations omitted). If there are no allegations of a formal policy or affirmative act by former Police Chief Norwood, the City's policymaker, leading to the Plaintiffs' injuries, the Plaintiffs must allege facts showing either an omission that rises to the level of deliberate indifference, or a widespread and permanent custom with the "force of law" related directly to their injuries.

A plaintiff must also plead that a municipality's policy or custom actually caused the constitutional violation. *Monell*, 436 U.S. at 658. Merely pleading "the magic words of causation" is not enough. *Brown v. Mitchell*, 308 F. Supp.2d 682, 694 (E.D. Va. 2004). A court need not accept conclusory statements about the legal effect of alleged facts. *Id.* Listing a myriad of wrongs with a person or department is insufficient: there must be a precise causal-link between them and a plaintiff's injury. *Carter*, 164 F.3d at 216, 218.

### 1. There Is No Claim Here Under *Pembaur*.

The Plaintiffs' anticipated appeal to *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), to insist that a "single incident" can establish municipal liability under Section 1983, is incorrect, both given the very different facts in that case and other cases interpreting it. *Pembaur* involved the express decision of a prosecutor who told deputy sheriffs to break down the door of a medical practice in order to execute a warrant. *Id.* at 473. Here the Plaintiffs accuse the City, through Norwood, of an act of *omission*, not commission, which is why this is really about deliberate indifference, not an express action that formed a City policy.

The Supreme Court even stated in *Pembaur* that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id.* at 481. The Court cautioned further that "municipal liability under § 1983 attaches where— and *only* where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483 (emphasis added); *see also Tobey v. Napolitano*, 808 F. Supp. 2d 830, 840 (E.D. Va. 2011).

Furthermore, the Supreme Court went further in *City of Canton v. Harris*, 489 U.S. 378, 392 (1989) and stated that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." Under the Plaintiffs' theory, virtually no city could ever escape liability. As Judge Hudson pointed out in *Tobey v. Napolitano*, 808 F. Supp. at 844: "this is precisely why municipal liability requires a showing of deliberate indifference: 'To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.'" (Citing *City of Canton* at 391).

Squaring *Pembauer* with *City of Canton* and *Connick v. Thompson*, 563 U.S. 51, 62-63 (2011), Judge Hudson noted that the plaintiff in *Tobey* did not "alleg[e] any specific directive on the part of Trice or any other policymaker." 808 F. Supp. at 841. The same is true here: the Plaintiffs do not point to any specific action by Defendant Norwood that constitutes a municipal policy. *See also Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000). If they allege anything, it is that Norwood violated their rights by not adequately disciplining Detective Norton. For the reasons explained in Defendant Norwood's Brief,

the facts alleged do not establish any supervisory or bystander liability for Norwood, and as Norwood and the City have shown, Norwood did not show deliberate indifference or establish a policy by affirmative action.

**2.  There Was No Omission Rising To Deliberate Indifference.**

The Fourth Circuit has also warned that a plaintiff's theory is most likely to fall within the forbidden realm of *respondeat superior* liability when alleging "municipal omission—either a policy of deliberate indifference or the condonation of an unconstitutional custom."  *Carter*, 164 F.3d. at 218 (citation omitted). In such cases, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Id.*

"Deliberate indifference is a very high standard," and "a showing of mere negligence will not meet it." *Harrison v. Prince William County Police Dep't,* 640 F. Supp. 2d 688, 704 (E.D. Va. 2009)(citation omitted)(dismissing *Monell* claim). Actions seen with the benefit of hindsight that were imprudent, unfortunate, and even legally negligent do not suffice. *Jones v. Wellham,* 104 F.3d 620, 627 (4th Cir. 1997). Under this standard the Plaintiffs' allegations fail to show deliberate indifference, either regarding Norton or informant practices more broadly. As for Norton, Chief Norwood showed the opposite of deliberate indifference: he approved two disciplinary actions against Norton after internal investigations, though only one of which concerned his work with warrants. In *Carter*, a police department's investigation of a prior incident showed the opposite of deliberate indifference. 164 F.3d  at 219-220. The same is true here.

As for informant polices, Norwood again showed the opposite of deliberate indifference by having Brian Corrigan examine and improve the confidential informant

program. Compl. ¶ 121. The Plaintiffs characterize that effort as one designed to "clean up" and "fix" the informant program. *Id.* ¶¶ 121, 124. The City should not be found liable for errors and omissions that, when realized by federal authorities and the RPD, were acted upon. Allegations about administrative problems are not enough to establish liability. *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981)(citing *Rizzo v. Goode*, 423 U.S. 362, 370-377 (1976) for the proposition that "general allegations of administrative negligence" fail to state a claim under Section 1983).

The Plaintiffs' attempts to point to several problems Norton had, and of insufficient responses (the Plaintiffs claim) by RPD supervisors, are unavailing under Fourth Circuit precedent. As nearly all the conduct alleged in this suit came after the arrests. Most of pre-arrest allegations about Norton include rumors and hearsay, nearly all of it unrelated to filling out warrants, and come from statements obtained *after* these arrests during the federal investigation.

Norwood's decision to reprimand, rather than fire Norton, is not actionable under Fourth Circuit precedent. One case that is illustrative is *Riddick v. School Bd.*, 238 F.3d 518, 524 (4th Cir. 2000), where the plaintiffs sued a school board when they discovered that a teacher was secretly videotaping young girls in a locker room. The teacher had been accused of inappropriately videotaping girls before but the defendant school board did not find the earlier incident inappropriate. *Id.* at 520-522. The Fourth Circuit found that the earlier incident, and the school board's failure to discipline or terminate, even if negligent, was not enough to establish deliberate indifference. *Id.*at 524-526.

The Fourth Circuit in *Riddick* looked at similar cases where police officers or teachers were accused of wrong doing and were later sued for similar wrong doing. In

18

*Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997), a county was sued over a police officer's sexual assault when it was discovered that the officer was disciplined, but not fired, for an earlier alleged assault. The court in *Wellhem* stated:

> With the benefit of hindsight, [the decisions of the County] were clearly unfortunate, might perhaps be thought imprudent, or even be found legally negligent, but that does not suffice; only decisions taken with deliberate indifference to the potential consequences of known risks suffices to impose municipal liability on the basis that such decisions constituted official County "policy."

104 F.3d at 627. This holding is relevant here, since Norton was reprimanded twice by the City's policymaker but not fired before these arrests took place.

The *Riddick* court also cited *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745 (5th Cir. 1993), where a school teacher, sued for child molestation, was earlier accused of improperly touching children and was reprimanded, but not fired. The court found that the earlier action by the school district may have been negligent, but did not show deliberate indifference: "To hold that these facts support a finding that the Board was 'deliberately indifferent' would drain the term of its meaning." *Id*. at 762.

The *Riddick* court also relied upon *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir, 1998), which involved allegations of child molestation by a teacher. There, the Fifth Circuit observed that "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference…" *Id.* The Fifth Circuit found no deliberate indifference in that case where a school principal made a "tragic error in judgment" about earlier alleged child molestation by that teacher, who later molested the plaintiffs. *Id.* In this case, former Chief Norwood was disciplining Norton as allegations about him were investigated. Under the above cited decisions, this was the opposite of deliberate indifference.

### 3.   There Was No Actionable Municipal Custom.

As the Fourth Circuit has stated, "a municipality is not subject to Section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality. Rather, 'the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.'" *Riddick*, 238 F.3d at 524 (citation omitted)(emphasis in original).

The facts above show that there was no deliberate, "widespread and permanent" practice forming an actionable municipal custom. *Carter,* 164 F.3d at 220. The allegations show that the N-10, informant resume, and record keeping issues were addressed by policymaker Norwood by assigning Brian Corrigan to address those and other issues within the confidential informant program. Compl. ¶¶ 121-124. Those record keeping issues might show negligence at some level, but not a deliberate, permanent practice under *Monell*.

The one warrant practice that was allegedly "deliberate" (by subordinates, not Norwood) was the alleged failure of some RPD officers to properly witness payments on N-10 forms. Although this features prominently in the Complaint, there is also no clear nexus between that and the Plaintiffs' convictions. Signing an N-10 form after an informant is paid, rather than at the same time, is improper (though not unconstitutional). But that error does not mean that the contraband identified in a warrant is not real and in the possession of an arrestee, or that the informant did not see what he stated he saw. Without a nexus between an act and injury, even constitutional violations, let alone procedural ones, cannot support a claim. And nowhere does the Complaint allege (nor could it) that the City drove this N-10 practice.

In *Connick*, the Supreme Court held that four prior *Brady* violations by prosecutors did not provide adequate notice to a district attorney about the specific *Brady* violation at issue there, which concerned blood sample lab evidence. 563 U.S. at 62-63. That decision shows how close a prior alleged wrong must be to an alleged injury.

In *Carter v. Morris*, the plaintiff pointed to a number of incidents involving a police department to show an unconstitutional policy or custom under *Monell*. The plaintiff pointed to "prior instances of excessive force and the discouragement of citizen complaints," which lacked the clear, direct connection to her own alleged injuries. 164 F.3d at 219. The Fourth Circuit affirmed the dismissal of that case, noting that "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury, or that it was the moving force behind her deprivation." *Id.* at 218. Applying that holding here also supports dismissal of the *Monell* claim.

In *Jenkins v. Woody*, Case No. 3:15cv355, 2015 U.S. Dist. LEXIS 166569 (E.D. Va. Dec. 11, 2015), this court dismissed claims where a plaintiff sued a medical services provider, claiming that its policies led to the death of a jail inmate. The plaintiff claimed that the care provider failed to improve its care policies, do adequate case investigations, do root cause analyses and, under *Monell*, failed to adequately investigate "prior negative patient outcomes." *Id.,* at *11-12, 17. But the plaintiff failed to connect that allegation, regarding "negative patient outcomes," and her own treatment. *Id.,* at *20 ("Plaintiff neglects to link the two events and, in turn, fails to allege the level of causation that exists between them."). The same is true of the many conclusory allegations here that are unconnected to Norton's work with warrants.

With regard to the informant program, the Plaintiffs' allegations about N-10 forms and poor record keeping hit the barrier noted in *Jenkins*, namely that "'municipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be means by which [a] particular [constitutional deprivation] . . . might have been averted.'" *Id.,* at *16 (citation omitted). That is precisely what the Plaintiffs try to do here, using 20-20 hindsight to impose liability on the City. As noted above, allegations about administrative problems are not enough to establish liability. *Rizzo*, 423 U.S. at 370-377.

**A. There Are No Proper Claims Here under the Eighth or Fourteenth Amendments.**

As in the *Ensley* case, these Plaintiffs may try to relay on *Golson v. Department of Corrections*, 914 F.2d 1491, 1990 U.S. App. LEXIS 17452 (4th Cir. 1990)(unpublished opinion), to support their Eighth and Fourteenth Amendment claims. But *Golson* simply does not say what they claimed in the other action. Golson was a *pro se* plaintiff who filed a Section 1983 lawsuit against the Department of Corrections and various corrections officials alleging that he was not given the proper credit for previous time spent in jail, and was therefore incarcerated for a longer period of time than he should have been. 1990 U.S. App. LEXIS 17452 at *1-2.

While the Court recognized Golson's claim, it was hardly a novel development because the Eighth Amendment claim in that case was brought against those who managed and maintained the jail – those who were directly responsible for the conditions and manner in which Golson was confined. Other courts considering Section 1983 actions that arise under the Eighth Amendment (because an individual is held longer than he should have been held) analyze the claims in the same manner. *See, e.g., Wells v.*

22

*Artrip,* 2017 U.S. Dist. LEXIS 67153, at *11 (W.D. Va. May 3, 2017); *Owens v. Butler,* 2016 U.S. Dist. LEXIS 15673, at *13 (W.D. N.C. Feb. 9, 2016)("Specifically, [the Plaintiff] must establish that a *jail official* knew of and disregarded a serious risk that he was being improperly detained." (Emphasis added)); *Cheatham v. Johnson*, 2010 U.S. Dist. LEXIS 14346, at *13-15 (E.D. Va. Feb. 18, 2010)(also rejecting due process claim). The common thread is that these types of claims are brought against those responsible for holding the individual–for the conditions or manner of confinement–not those responsible for providing the legal basis for the incarceration.

In *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996), the Fourth Circuit rejected a deprivation of liberty claim under Section 1983 and held that "the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." As noted above, the claims alleging "deprivation of liberty" are barred by the statute of limitations.

Even assuming the Plaintiffs can make such a claim here, it would have to be a claim grounded in the "fabrication of evidence" recognized in *Washington v. Wilmore*, 407 F.3d 274 (2005). But that claim would also be time-barred because any fabrication is wrapped into the warrant application, which produced incriminating evidence establishing probable cause. The only "deprivation of liberty" claim here that is not time barred is one alleging malicious prosecution, as defined in the Fourth Circuit. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000). That theory fails as explained above. There is no proper Fourteenth Amendment claim under this theory. *See, e.g., Cooper v. Lippa*, 2012 U.S. Dist. LEXIS 56822, at *13 (E.D. Va. Apr. 23, 2012)(concerning state criminal charges).

As for the Eighth Amendment, it is inapplicable to the claims here. The Supreme Court has stated that "[a]n examination of the history of the Amendment and decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). *Ingraham* has been interpreted to mean that the protection of the Eighth Amendment does not attach "until after conviction and sentence." *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989); *see also Shanklin v. Seals*, 2010 U.S. Dist. LEXIS 29164, at *25 (E.D. Va. 2010). Consequently, Count VII fails to state a claim and should be dismissed with prejudice.

## B.  CONCLUSION

For the reasons stated above, the Court should dismiss both claims filed against the City with prejudice.

Respectfully Submitted,

_____/s/_____
Stephen M. Hall, Esquire (VSB #44132)
Deputy City Attorney
Richard E. Hill, Jr., Esquire (VSB #44164)
Assistant City Attorney
900 East Broad Street, Room 400
Richmond, Virginia  23219
Telephone:  (804) 646-7953
Facsimile:  (804) 646-79396
Email:  Stephen.Hall@richmondgov.com
Email:  Richard.E.Hill@richmondgov.com
  *Counsel for Defendant City of Richmond*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of October 2017, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_____/s/ _____
Stephen M. Hall (VSB #44132)
Deputy City Attorney
900 East Broad Street, Room 400
Richmond, VA  23219
Telephone:  (804) 646-7953
Facsimile: (804) 646-7939
stephen.hall@richmondgov.com
*Counsel for Defendant City of Richmond*