IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| BRAVETTE JOHNSON and <br> CURTIS WILLIAMS, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 3:17CV00553 |
| CITY OF RICHMOND, ET AL., | ) <br> ) <br> ) | |
| Defendants. | ) | |

**CITY OF RICHMOND'S REPLY
IN SUPPORT OF MOTION TO DISMISS**

The Plaintiffs fail to understand the difference between a criminal justice system that must change criminal sentences because of law enforcement errors, and a system that rewards criminals for time served, for crimes they actually committed. We have the former, but thankfully *not* the latter. Here, the presence of drugs and weapons noted on the warrants in question established probable cause, which was further established by independent grand juries seeing that evidence. The only way for the Plaintiffs to prevail is to have this court up-end Fourth Circuit precedent, which forbids applying the "fruit of the poisonous three" doctrine to civil cases.

The Plaintiffs' causation problem is clear: because grand juries and prosecutors, seeing clear evidence of guilt (drugs, weapons, or both), were responsible for the Plaintiffs' sentences. Those intervening causes break the causal chain between the Plaintiffs and the Defendants. To state the obvious, malicious prosecution claims have to include facts relating to prosecutions, which are utterly absent in this Complaint. The "deprivation of liberty" claims also fail under Fourth Circuit decisions.

1

Put succinctly, the Plaintiffs' have no viable claims for three reasons. First, and as argued previously, any claim based on actions prior to the Plaintiffs' indictments are time barred. Second, if the Plaintiffs are now claiming they are actually innocent, that further undermines their Fourth Amendment claims because they clearly knew or had reason to know of their cause of action at the time and could have challenged the warrants at the time of their arrests, but did not. *See Wallace v. Keto*, 549 U.S. 384, 388 (2007). And third, any malicious prosecution claims based upon favorable termination of the proceedings flowing from the indictments fail because (a) those independent indictments were superseding causes, and (b) the Plaintiffs allege no facts establishing *Monell*-liability because all their allegations against the City focus on warrants, not influence upon prosecutors (which was non-existent). They also fail to allege facts showing deliberate indifference and even plead facts showing the opposite.

The Plaintiffs allege three types of claims in their Opposition to the City's Motion to Dismiss: (1) malicious prosecution; (2) knowing and intelligent plea claims; and (3) liberty claims under the "Eighth and/or Fourteenth Amendment." Opp. at 5. Each theory fails as explained previously and briefly below.

**A. Once Again, No Malicious Prosecution Claim**

To reiterate, any Plaintiff alleging malicious prosecution must allege "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)(citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). These Plaintiffs were *not* seized pursuant to legal process: these warrants permitted searches that led to warrantless arrests once the police found the contraband

described in the warrants. *See Wallace*, 549 U.S. at 389 (a detention was "without legal process" because the police "did not have a warrant for his arrest"); *Evans*, 703 F.3d at 647 (warrantless arrest is not "a seizure . . . pursuant to legal process").

Even if this court finds that the Plaintiffs can meet the favorable termination prong,[1] no Plaintiff has pled or can plausibly plead any facts establishing a malicious prosecution claim based on the subsequent indictments because each of those indictments was supported by probable cause as a matter of law, for all the reasons stated previously by the City.[2] The very presence of the contraband in question supports this and is nowhere denied by the Plaintiffs. Whether or not evidence was obtained lawfully goes to whether the search was lawful, and whether the initial seizure was lawful, *not* whether the indictments were supported by probable cause. As stated, unlawfully obtained evidence can still support probable cause because the "fruit of the poisonous tree" doctrine does not apply in civil cases. *Ware v. James City County*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009)("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.")(citation omitted); *Sommerville v. Dobson*, 2011 U.S. Dist. LEXIS 156380, *36 (E.D. Va. 2011)(same).

The Fourth Circuit has stated that "a police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer]

---

[1] The City questions whether the Plaintiffs can meet the favorable termination prong notwithstanding the vacating of their sentences, since the alleged "fraud" here would have been extrinsic, not intrinsic, to support such a ruling.

[2] The Supreme Court and the Fourth Circuit both recognize that "'an indictment 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." *Durham v. Horner*, 690 F. 3d 183, 189 (4th Cir. 2012)(citation omitted).[2] The Plaintiffs' Opposition does absolutely nothing to overcome this fatal problem with their claims.

3

misled or pressured the prosecution.'" *Evans v. Chalmers*, 703 F.3d at 648 (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). Again, there are no such allegations here, so there is no malicious prosecution claim.

### B. The "Knowing and Intelligent Plea" Theory Does Not Save This Case

The Plaintiffs try to rely on *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013) to claim that their guilty pleas were not voluntary. Nowhere in the Complaint nor the Amended Complaint in *Ensley* do any Plaintiffs claim innocence, *or* deny that the contraband identified in all the warrants in question were found. These Plaintiffs nonetheless claim that, had they known about errors in Norton's warrants, they would not have pled guilty despite clear evidence of their guilt.

This again misses the critical point that *Fisher* was a *criminal* case in which the question of law enforcement errors led to a change in Fisher's sentence and guilty plea. That is a very different situation from a civil case where a plaintiff seeks to profit from an illegal act. The restraint on the Plaintiffs' liberty was removed based upon the accepted public policy rationale of the exclusionary rule, which permits nullifying criminal convictions even if an individual is undisputedly guilty. Here the Plaintiffs are also asking that they be paid – that they receive a windfall – even though they were guilty.

*Fisher* may support Judge Hudson's decision to vacate sentences because of Norton's careless warrants. It does *not*, however, lead to the conclusion that these Plaintiffs should be rewarded for time they spent in prison for crimes they actually committed, based on evidence found concurrent with their arrests. As all the Defendants have pointed out, the Plaintiffs' demand for relief runs counter to the principles of tort law and public policy. "The evil of an unreasonable search and seizure is that it invades

4

privacy, not that it uncovers crime, which is no evil at all." *Townes v. City of New York,* 176 F.3d 138, 148 (2nd Cir. 1999). "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Id.*

As the City pointed out already, numerous courts across the country, including the Third Circuit in *Hector v. Watt,* 235 F.3d 154, 157 (3rd Cir. 2000), and district courts, including in the Fourth Circuit, have followed *Townes* on this and related issues, such as the inapplicability of the fruit of the poisonous tree doctrine in Section 1983 actions.[3] This Court should as well. And again, a federal court considering a case with nearly identical circumstances dismissed those claims because that case, like this one, "[was] not a case of actual innocence or wrongful imprisonment," so there is "no reason to compensate" the plaintiffs for the time they served for offenses they committed. *Williams v. City of Tulsa*, 2016 U.S. Dist. LEXIS 52066, at *24 (N.D. Okla. Apr. 19, 2016). The Plaintiffs' attempt to distinguish this case is unavailing given the close similarity of facts

---

[3] *See Washington v. Hanshaw,* 552 Fed. Appx. 169, 172-173 (3rd Cir. 2014)(following *Townes* and *Hector,* and rebutting Fourteenth Amendment argument related to an illegal search); *Martin v. City of Chicago,* No. 15-cv-04576, 2017 U.S. Dist. LEXIS 1157, at *9-13 (N.D. Ill. Jan. 5, 2017); *Willis v. Mullins*, Case No. 1:04-CV-6542 AWI BAM, 2014 U.S. Dist. LEXIS 37762, at *16-17 (E.D. Cal. Mar. 20, 2014); *Koven v. Lewis*, 8:10CV373, 2014 U.S. Dist. LEXIS 2458, at *15 (D. Neb. Jan. 9, 2014); *Silver v. D.C. Metro. Police Dept.*, 939 F. Supp. 2d 20, 22-23 (D.D.C. 2013)(citing *Townes* and *Hector*); *Smith v. Kelly*, Case No. C11-623RAJ, 2013 U.S. Dist. LEXIS 153172, at *41 (W.D. Wash. Oct. 24, 2013); *Ruth v. Ford*, Case No. 09-11278, 2010 U.S. Dist. LEXIS 83825, at *18-20 (E.D. Mich. Aug. 17, 2010); *Vaughn v. Davis,* Civil Action No. 8:07-1173-TLW-BHH, 2008 U.S. Dist. LEXIS 29867, at *13-14 (D.S.C. Jan. 31, 2008); *see also Williams v. Carroll*, No. 08 C 4169, 1010 U.S. Dist. LEXIS 137868, at *11, 14-15 (N.D. Ill. Dec. 29, 2010)(citing several Seventh Circuit district court decisions following *Townes* on the exclusionary rule and there agreeing that no damages were owed for an improper arrest once contraband was found).

and the right application of law. This Court should follow that same sound reasoning and dismiss this action with prejudice.

**C. The Plaintiffs' Deterrence Argument Is Self-Defeating**

The Plaintiffs try to play both sides of the coin in their Opposition, suggesting first that they may not be factually guilty—something they had no nerve to claim in the Complaint, given evidence of their guilt found in the searches. They then try to argue that, even if they were guilty, a ruling in their favor would have a necessary deterrent effect on police misdeeds. Opp. at 11. They must make this argument, since there is no credible claim to their innocence.

But the Plaintiffs' proposed remedy would have Richmond taxpayers reward the Plaintiffs for time they served, for crimes they committed. Independent grand juries and prosecutors saw the same clear evidence of guilt which led to indictments, and understandable guilty pleas. The numerous courts just cited held that the remedy wanted to enrich the Plaintiffs would have a terrible effect on the justice system, by rewarding wrongdoing. City taxpayers would enrich these drug dealers, not Defendant Norton.

Moreover, the costs to a city and the courts, by encouraging suits like this one, would outweigh any deterrent benefit *where the contraband on the warrants was found and therefore guilt cannot **genuinely** be questioned.* Under this balancing test, courts across the country have refused to apply the "fruit of the poisonous tree" doctrine in cases like this, as the Plaintiffs admit. Opp. at 9 (citing cases from the Second, Third, Fifth, and Ninth Circuits, not to mentioned the Fourth Circuit cases cited by the Defendants).

The Plaintiffs also appear to argue that because Jason Norton was never charged with any crime, forcing the City to pay the Plaintiffs will somehow provide future

6

deterrence. But the fact that Defendant Norton was never charged after a lengthy FBI investigation allows this Court to surmise that the Plaintiffs' allegations are likely an exaggeration of the real facts. Norton was apparently careless with his warrants, but those warrants identified the contraband found with the Plaintiffs.

Perhaps more importantly, the lengthy FBI investigation, that yielded no indictment against Norton, more than suggests that there is no need for additional deterrence here. The City previously cited federal court filings from three other Norton-related civil cases showing that the underlying warrants were, in fact, supported by probable cause, and that there were reliable informants behind those warrants (though ones who were apparently misidentified). Given that, this is no case for a court to upend established precedent and apply the "fruit of the poisonous tree" doctrine.

### D. The Plaintiffs Distort *Pembaur* and Their *Monell* Claim Still Fails

The Plaintiffs' truly try to untether *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) from its moorings. In that case, the specific action complained of (a warrantless entry into a medical clinic) was authorized by the municipal policymaker. There is no allegation here that Norwood specifically authorized any of the warrants or that he (or any other municipal policymaker) instructed Norton to do what Norton allegedly did. In fact, the Court stated in *Pembaur* that "municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." 475 U.S. at 483.

In *Tobey v. Napolitano*, 808 F. Supp. 830, 841 (E.D.Va. 2011), Judge Hudson noted that the plaintiff in *Tobey* did not "alleg[e] any specific directive on the part of

7

Trice or any other policymaker." As previously noted, the same is true here: the Plaintiffs do not point to any specific action by Defendant Norwood that constitutes a municipal policy or any directive or instruction to Norton to take a particular action. If they allege anything, it is that Norwood violated their rights by not adequately disciplining Detective Norton, or not acting quickly enough. But, the Richmond Police Department took several steps both to deal with Norton, by formally reprimanding him twice after investigations, and to reform the City's confidential informant program.

Judge Hudson warned expressly against second-guessing every municipal action for fear of establishing liability every time a City fails to do more, in-hind-sight, than it did. That is not enough to show a deliberate indifference claim. Indeed, disciplining Norton twice showed the opposite, as *Riddick v. School Bd.*, 238 F.3d 518, 524 (4th Cir. 2000) and the cases it cites show.

Nor is the Plaintiff's theory cognizable as a failure to train. As noted, the Supreme Court stated in *City of Canton v. Harris*, 489 U.S. 378, 392 (1989) that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." Under the Plaintiffs' theory, almost no city could escape liability. Moreover, there is no allegation here that the City of Richmond failed to provide any training at all in the relevant area, as was the case in *City of Canton*. There, the Supreme Court countenanced the possibility of *Monell*-based liability for failure to train because the municipality provided no special training whatsoever "as to when to summon medical care for an injured detainee." *Id.* at 382.

8

The Plaintiffs try to rely upon *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2nd Cir. 2004) to support their *Monell* claim. They omit the fact that the failure-to-train claim was dismissed there on summary judgment, a decision affirmed in that Second Circuit opinion. There, the court relied on *City of Canton* in its decision. *Id.* 130-31.

The Plaintiffs claim that Norwood had to act because the Plaintiffs "…might be subjected to such harms." Opp. at 16. That someone "might" be subject to harm is mere speculation. It also is not the standard, even by the Plaintiffs' own admission. The Plaintiffs cite *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994) (a supervisory liability case and therefore arguably not applicable to a *Monell*-based claim) for the notion that deliberate indifference requires a showing (among other elements) that the supervisor "had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" and that such risk was the actual cause of the Plaintiffs' injuries. 13 F.3d at 799.

Once again, the Plaintiffs fail to acknowledge the incredibly close fit they must show between an alleged error by a City, and the actions that harmed the Plaintiffs. *Connick v. Thompson*, 563 U.S. 51, 62-63 (2010) illustrates this clearly, where four Brady violations by prosecutors provided insufficient notice to a policymaker because those violations did not involve *the exact type* of Brady violation in that case, involving blood sample testing. This Complaint points to no warrant-related errors by Norton prior to the two arrests here in July 2009 and March 2010, nor any such errors by anyone else. Consequently, the municipal liability theory that was weak in *Ensley* is even weaker here. The Plaintiffs attempt splatter accusations about Norton, Opp. 15-16, but many of those were investigations or disciplinary actions having nothing to do with warrants, or were

9

investigations that looked back in hind-sight. None showed knowledge by former Chief Norwood prior to the arrests here, certainly related to warrants.

### D. There Are Still No Eighth or Fourteenth Amendment Claims

The City first re-incorporates here its earlier arguments showing why there are no viable Eighth or Fourteenth Amendment claims. With no case law support, the Plaintiffs still persist on these claims even though Fourth Circuit cases are clear that the Fourth Amendment provides for Section 1983 deprivation of liberty claims, not the Eighth or Fourteenth. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996). There is no "fabrication of evidence" allegation here as recognized in *Washington v. Wilmore*, 407 F.3d 274 (2005), leaving the Plaintiffs in the same fruitless Fourth Amendment territory.

The Plaintiffs still somehow try to rely on *Golson v. Department of Corrections*, 914 F.2d 1491, 1990 U.S. App. LEXIS 17452 (4th Cir. 1990)(unpublished opinion), a *pro se* Section 1983 lawsuit against the Department of Corrections and various corrections officials alleging their failure to credit the plaintiff for previous time spent in jail, leading to a longer imprisonment. *Id.* at *1-2. Since *Golson* nowhere suggests that wrongful imprisonment claims can be alleged against people with no direct connection to such imprisonment, the City is baffled by the attempt to use that case for that theory. There are no allegations of "fabrication of evidence" recognized in *Washington v. Wilmore*, 407 F.3d 274 (2005). Eight and Fourteenth Amendment claims are not sustainable against these Defendants. *See, e.g., Wells v. Artrip,* 2017 U.S. Dist. LEXIS 67153, at *11 (W.D. Va. May 3, 2017); *Owens v. Butler,* 2016 U.S. Dist. LEXIS 15673, at *13 (W.D. N.C. Feb. 9, 2016)("Specifically, [the Plaintiff] must establish that a *jail official* knew of and disregarded a serious risk that he was being improperly detained." (Emphasis added));

*Cheatham v. Johnson*, 2010 U.S. Dist. LEXIS 14346, at *13-15 (E.D. Va. Feb. 18, 2010)(also rejecting due process claim).

The Plaintiffs allege in their Opposition that Norwood all but knowingly allowed them to stay in jail wrongfully. Until the details of the investigation of Norton were completed by the FBI, the Court cannot jump (or infer) such a conclusion from the facts in the Complaint. What it shows is that Norwood disciplined Norton as investigations established the need for that, and that he assigned someone to address problems in the confidential information program in 2012 when problems about Norton began to become clear. Prosecutors who were involved in the Plaintiffs' sentences were the ones to address issues arising from the FBI investigation of Norton, not Norwood. Chief Norwood had no power to release any Plaintiff and his department, the RPD, cooperated with the FBI investigation—and there is no allegation to the contrary.

There is no claim here for wrongful imprisonment or deprivation of liberty against Norwood or the City, or any Defendant for that matter. Prosecutors and grand juries independently worked on obtaining the Plaintiffs' sentences, and Prosecutors, judges, and finally jail officials had to take measures to address problems identified in the FBI investigation. These claims against these Defendants should be dismissed with prejudice.

## A. CONCLUSION

For the reasons stated above, the Court should dismiss both claims filed against the City with prejudice.

Respectfully Submitted,

_____/s/_____
Stephen M. Hall, Esquire (VSB #44132)
Deputy City Attorney
Richard E. Hill, Jr., Esquire (VSB #44164)
Assistant City Attorney
900 East Broad Street, Room 400
Richmond, Virginia 23219
Telephone: (804) 646-7953
Facsimile: (804) 646-79396
Email: Stephen.Hall@richmondgov.com
Email: Richard.E.Hill@richmondgov.com
 *Counsel for Defendant City of Richmond*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 17th day of November, 2017, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                              _____/s/_____
                              Richard E. Hill, Jr., Esquire (VSB #44164)
                              Assistant City Attorney
                              900 East Broad Street, Room 400
                              Richmond, VA  23219
                              Telephone:  (804) 646-7946
                              Facsimile: (804) 646-7939
                              richard.e.hill@richmondgov.com
                              *Counsel for Defendant City of Richmond*