IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRAVETTE JOHNSON and )
CURTIS WILLIAMS, )
  )
              Plaintiffs, )
  )
v. ) Civil Action No. 3:17-cv-00553-MHL
  )
CITY OF RICHMOND, et al., )
  )
              Defendants. )

**REPLY IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS ALSTON, CORRIGAN, HARRISON AND BLACKWELL**

Defendants Lieutenant Michael Alston ("Lt. Alston"), Lieutenant Brian Corrigan ("Lt. Corrigan"), Captain Martin Harrison ("Cpt. Harrison"), and Captain William Blackwell ("Cpt. Blackwell") (collectively, the "Officers") submit this Reply in Support of their Motion to Dismiss the Complaint filed by Plaintiffs Bravette Johnson and Curtis Williams (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6):

## INTRODUCTION

This case is not about innocent individuals seeking their liberty or compensation for time spent behind bars. Instead, this case is about individuals who acknowledged their guilt and already achieved a remedy for alleged Constitutional violations, but now seek a windfall in the millions of dollars.

Plaintiffs' Response is full of hypotheticals, inflammatory suggestions, speculation and conjecture, yet short on supporting case law. Plaintiffs include a lengthy discussion regarding their opinion on what the law *should* be, but little analysis of what the law actually *is*. Their claims are an attempt to hold liable officers who had nothing to do with their arrests or

convictions, and would require the Court to adopt a position wholly without support in the Fourth Circuit. The lengthy and convoluted Response also features numerous procedural and legal flaws.

First, Plaintiffs simply cannot state a claim for supervisory liability. Plaintiffs ask the Court to ignore years of well-settled precedent in the Fourth Circuit and other jurisdictions holding that the fruit of the poisonous tree doctrine does not apply to Section 1983 cases and create a special exception allowing them to pursue claims against the Officers. Such an exception would require the Court to overlook Plaintiffs' underlying guilt in order to impose millions of dollars of liability on the Officers, who had no involvement in Plaintiffs' arrests, convictions or incarcerations. Additionally, the doctrine of respondeat superior does not apply to Section 1983 cases. And, even if one or more of the Officers were Norton's supervisors at the time of Plaintiffs' arrests (and the timeline in the Complaint demonstrates they were not), none of the Officers were involved in Plaintiffs' arrests, so they cannot be held liable as supervisors on Plaintiffs' malicious prosecution claims.

Second, Plaintiffs misstate the law as it relates to the accrual of Section 1983 claims based upon an allegedly defective search. Plaintiffs were on notice to challenge any alleged deficiencies in the search warrants at the time of their arrests. Plaintiffs' argument ignores binding precedent on this point from the Fourth Circuit in *Cramer v. Crutchfield*, a decision to which Plaintiffs have no answer.

Third, Plaintiffs have not alleged the requisite knowledge to impose liability upon the Officers. The Complaint offers *no* evidence that any of the Officers knew – actually or constructively – that any of the Plaintiffs were arrested or incarcerated, a deficiency fatal to any claims for supervisory or individual liability. Lacking facts to support liability, Plaintiffs create

out of whole cloth a "likely knew" standard for imposing liability.  *See* Pls.' Resp. Br. (ECF No. 31) at 9.  Plaintiffs argue that because there were rumors that Defendant Jason Norton ("Norton") conducted sloppy police work, the Officers "likely knew" Norton was falsifying search warrant paperwork, and thus the Officers should be liable.  Putting aside the leaps of logic required to reach this conclusion, "likely knew" is not the legal standard for any claim Plaintiffs could bring against the Officers.

Fourth, the same deficiency that led Plaintiffs to urge the adoption of a "likely knew" standard unknown to the law exists with respect to their argument in opposition to qualified immunity.  Plaintiffs ask the Court to assume that the Officers had knowledge of Plaintiffs' incarcerations.  But, again, this essential allegation is found nowhere in Plaintiffs' Complaint.

For all of these reasons, and those stated in the Officers' Memorandum in Support of their Motion to Dismiss, the Court should dismiss the Complaint.

### FACTUAL BACKGROUND

Plaintiffs spend considerable time reiterating the facts from their Complaint in a convoluted and disjointed manner.  To bring order to the confusion created by this approach, the Officers provide the following concise summary of the facts as alleged in the Complaint (which are taken as true for purposes of Plaintiffs' Motion):[1]

In 2009, Capt. Blackwell was in charge of the Richmond Police Department ("RPD") confidential informant program.  (Compl. ¶ 19.)

On July 7, 2009, Williams was arrested. (*Id.* at ¶ 86.)  He pled guilty on December 11, 2009 and was sentenced to two years in jail and a term of probation.  (*Id.* at ¶ 94.)

---

[1] *See also* Def.'s Mem. in Support of Mot. to Dismiss (ECF No. 18) at 6-7.

On March 11, 2010, Johnson was arrested. (*Id.* at ¶ 78.) He pled guilty on August 17, 2010 and received a prison sentence of 15 years in jail, with 13 years suspended, and a term of probation. (*Id.* at ¶ 80.)

In or around 2011 through March 2013, Cpt. Harrison served as head of the RPD's special investigations division. (*Id*. at ¶ 18.)

On March 25, 2011, RPD reprimanded Co-Defendant Norton, for seizing contraband without making an arrest and for his work with confidential informants. (*Id*. at ¶¶ 32, 34, 110-15.)

Cpt. Blackwell left the confidential informant program by the end of 2011. (*Id*. at ¶ 19.)

In April 2012, Williams was released from prison. (*Id.* at ¶ 95.)

In or around June 2012, Lt. Alston replaced Co-Defendant Christopher Gleason ("Gleason") as Norton's "Direct Supervisor." (*Id*. at ¶¶ 13, 16.)

In August 2012, Lt. Corrigan became head of RPD's confidential informant program and becomes Norton's "Intermediate Supervisor." (*Id*. at ¶¶ 17, 121.)

On August 3, 2013, Williams was arrested for violating the terms of his probation. (*Id.* at ¶ 95.) He was released soon thereafter. *Id.*

In August 2014, Johnson pled guilty to separate charges in another case. (*Id.* at ¶ 84.)

On July 5, 2015, the Commonwealth moved to vacate Johnson's 2010 conviction. (*Id.* at 85.) On September 15, 2015, state prosecutors moved to vacate Williams' 2009 conviction. (*Id*. at ¶ 97.)

On August 27, 2015, Johnson's 2010 conviction was vacated and his 2012 conviction was amended to constitute a second offense. (*Id.* at 85.) On April 12, 2016, a Richmond Circuit Court judge vacated Williams' conviction. *Id.*

## ARGUMENT

I. **Plaintiffs' Arguments for Supervisory Liability Against the Officers Would Require the Court to Ignore Long-Standing Fourth Circuit Precedent in Order to Rule in Plaintiffs' Favor.**

Plaintiffs' attempts to state a claim for supervisory liability with regard to alleged Fourth Amendment violations fail for a number of reasons. First, their underlying guilt forecloses any Section 1983 liability because the fruit of the poisonous tree doctrine does not apply to save their claims. Second, the Officers did not undertake any proceedings against either Plaintiff, so they cannot state a claim against the Officers for malicious prosecution. Plaintiffs' arguments are built upon assumptions layered on conjecture. Even if the Court accepts their many leaps of logic, Plaintiffs still have not offered any concrete evidence that the Officers, most of whom were not responsible for Defendant Norton at the time of Plaintiffs' arrests, should be held liable for his alleged misdeeds.

A. **The Fruit of the Poisonous Tree Doctrine Does Not Apply.**

Because Plaintiffs' claims against the Officers are actually claims for damages arising from improper searches and seizures, the Court must determine whether any intervening actions break the causal link between any alleged inaction by the Officers and any constitutional injury suffered by the Plaintiffs. In the present case, Plaintiffs state numerous facts that constitute intervening causes, including their arrests (Compl. ¶¶ 70, 92), their criminal charges (*Id.* at ¶¶ 79, 93) and, most importantly, their guilty pleas (*Id.* at ¶¶ 80, 94).

In their response to Norton's Motion to Dismiss, Plaintiffs urge this Court to ignore relevant case law and take on the role of judicial activism. As noted by each of the Defendants in their Motions to Dismiss, precedent in this District and many others is clear. The fruit of the poisonous tree doctrine does not apply in the context of Section 1983 cases. *See Ware v. James*

*City Cnty.*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) (quoting *Townes v. City of New York*, 176 F.3d 138, 148-49 (2d Cir. 1999)).

Plaintiffs' case hinges on shielding the Court's eyes from their acknowledged guilt in order to preserve a causal connection between any alleged inaction by any of the Defendants and their alleged injury. The fruit of the poisonous tree doctrine is the only way that Plaintiffs' blindfold can be applied. Unfortunately for Plaintiffs, this doctrine does not and was never intended to apply in the civil context. *See Ware*, 652 F. Supp. 2d at 705 (finding the fruit of the poisonous tree is unavailable to § 1983 plaintiffs). The doctrine exists solely to prevent "dubious shortcuts" by officers attempting to obtain evidence for a criminal conviction. *Nix v. Williams*, 467 U.S. 431 (1984). Thus, it operates as a deterrent against improper criminal investigations, not as an aid to civil litigants.

Plaintiffs' acknowledgment of their guilt is a fact that Plaintiffs cannot avoid and it prevents them from maintaining a Section 1983 suit against the Officers. By pleading guilty, each Plaintiff removed any causal link between alleged inaction by the Officers and any alleged constitutional injury. The Officers, who had no personal involvement in Plaintiffs' arrests and detentions, cannot be held directly liable for failing to prevent guilty men from going to prison or for failing to effectuate their releases from prison. And, to find supervisory liability under these circumstances requires actual or constructive knowledge, which Plaintiffs have failed to allege, let alone demonstrate. *See* Sec. III, *infra*.

Furthermore, Plaintiffs fail to acknowledge that despite admitting their wrongdoings, they have already achieved vacatur of their convictions. As the *Townes* court stated, "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." 176 F.3d at 148. Plaintiffs have already received their remedies – release and

vacatur. These are, in and of themselves, tremendous benefits. *See Ware*, 652 F. Supp. 2d at 706 (stating that the freedom obtained due to an unreasonable search is an "enormous benefit"). Now, Plaintiffs want to be rewarded with millions of dollars from the Officers despite the fact that they have already received their respective resolutions. The Court should decline that invitation.

As Plaintiffs noted, the Northern District of Oklahoma recently confronted a similar situation in *Williams v. City of Tulsa*, Case No. 11-CV-4690TCK-FHM, 2016 U.S. Dist. LEXIS 52066, (N.D. Okla. Apr. 19, 2016), when a newly-freed criminal defendant brought suit against a police officer who falsified information supporting a search warrant. The court concluded that the fruit of the poisonous tree did not apply to save the plaintiff's claims.

> Here, a constitutional violation did occur – namely, an unreasonable search in violation of the Fourth Amendment. But without the benefit of the exclusionary rule and the fruit of the poisonous tree doctrine, which are not available in this Section 1983 action, no further constitutional violation occurred. Williams' seizure/imprisonment were not wrongful and his prosecution was not malicious due to the existence of probable cause. This is not an inequitable result because Williams already reaped the benefit of being released from prison. In short, this is not a case of actual innocence or wrongful imprisonment, and the Court finds no reason to compensate Williams for the six years he served.

2016 U.S. Dist. LEXIS 52066, at *23-24. Plaintiffs' argument is the same one made in *Williams* and rejected by that court in its well-reasoned decision.[2] As stated in *Williams*, this case is not one of wrongful imprisonment and there is no reason to compensate Plaintiffs for any time served. This Court should dismiss the claims against the Officers with prejudice.

---

[2] Plaintiffs make much of the concept of "testilying" – a term drawn from a report in the early 1990s about the New York City Police Department – yet are still unable to offer any decisions supporting the extension of the fruit of the poisonous tree doctrine to the context of Section 1983 cases.

### B. The Doctrine of Respondeat Superior Does Not Apply in Section 1983 Cases.

Plaintiffs argue that *Brown v. Poplin*, No. 3:10cv565, 2011 U.S. Dist. LEXIS 124912 (W.D.N.C. Oct. 27, 2011),[3] stands for the proposition that a supervisor can be held liable for the actions of his subordinates (*see* ECF No. 31 at 15-16), but the case actually notes, again and again, that respondeat superior is *unavailable* in Section 1983 cases. "The United States Supreme Court and the Court of Appeals for the Fourth Circuit have repeatedly held that the doctrine of respondeat superior has no application in Section 1983 cases." *Id.* at *26. (citing *Hughes v. Blankenship*, 672 F.2d 403 (4th Cir. 1982)). The court further found that "supervisory liability will not attach where, as here, the supervisor was not the supervisor at the time of the allegedly deficient investigation and where continued detention was based on a probable cause determination by a neutral and detached judicial official." *Id.* at *21. As a result, even if the Officers were responsible for Defendant Norton at the time of Plaintiffs' arrests – and three of the Officers undoubtedly were *not* – Plaintiffs could not hold them liable in a supervisory capacity.

### C. Plaintiffs Cannot State a Claim for Supervisory Liability Based on Malicious Prosecution Because the Officers Did Not Maintain Any Proceedings Against Plaintiffs.

Plaintiffs argue, in cursory fashion, that they can maintain a claim for supervisory liability against the Officers based on malicious prosecution, yet they offer scant support for this claim, as they do not allege that any of the Officers were personally involved in their arrests. To

---

[3] Plaintiffs cite to the report and recommendation of the Magistrate Judge, 2011 WL 5119483, 2011 U.S. Dist. LEXIS 124913. The district court accepted this report and recommendation over the objections submitted by the plaintiff, which are discussed in the court's opinion. 2011 WL 5119476, 2011 U.S. Dist. LEXIS 124912. The district court's discussion in overruling those objections provides further support for the Officers' argument.

succeed on a claim of malicious prosecution,[4] "a plaintiff must show that 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor.'" *Humbert v. Mayor & City Council of Balt. City*, Nos. 15-1768, 15-2461, 2017 U.S. App. LEXIS 16104, at *13 (4th Cir. Aug. 7, 2017) (quoting *Evans*, 703 F.3d at 647). As the Officers noted in their Opening Brief, ECF No. 18 at 26-29, none of them were involved in either Plaintiff's arrest and both arrests were supported by probable cause, given that each Plaintiff possessed contraband at the time of the searches. Furthermore, under the persuasive decision by the Western District of Virginia, *Krumtum v. Crawford*, No. 1:16CV00007, 2016 U.S. Dist. LEXIS 112936, at *9 (W.D. Va. Aug. 24, 2016), a plaintiff cannot make a general allegation against an entire group of defendants where the plaintiff does not specifically identify a defendant as having engaged in tortious conduct. Plaintiffs' Complaint is devoid of any allegation that any of the Officers personally engaged in tortious conduct, an omission that is fatal to any claim of supervisory liability based upon malicious prosecution.

## II. Numerous Cases in the Fourth Circuit Conclude that a Section 1983 Claim Accrues at the Time of the Search, Despite Plaintiffs' Arguments to the Contrary.

The Officers' position on the issue of when Plaintiffs' claims accrued is not only unrebutted, it is well-supported. Federal courts use the forum state's statute of limitations for Section 1983 claims. *Wallace v. Cato*, 549 U.S. 384 (2007). In Virginia, the limitations period

---

[4] This assumes, of course, that a cause of action for a Section 1983 claim based on malicious prosecution exists under Fourth Circuit precedent. *See Davis v. Beck,* Civil Action No. 3:09cv557, 2010 U.S. Dist. LEXIS 42030, at *37-38 (E.D. Va. Apr. 29, 2010) ("The Fourth Circuit acknowledges that it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution.") (quoting *Snider v. Lee*, 584 F.3d 193, 199 (4th Cir. 2009)) (internal quotation marks omitted); *see also Albright v. Oliver*, 510 U.S. 266, 279-80 n.5 (1994) (Ginsburg, J., concurring) ("Albright's reliance on a 'malicious prosecution' theory, rather than a Fourth Amendment theory, is anomalous.").

9

is two years from the date of accrual. Va. Code § 8.01-243. Section 1983 claims accrue when the plaintiff either is aware of his or her injury, or is put on notice that he or she should make a "reasonable inquiry as to whether a claim exists." *Keck v. Commonwealth*, Civil Action No. 3:13-cv-555-MHL, 2011 U.S. Dist. LEXIS 115795, at *32 (E.D. Va. Sept. 9, 2011) (quoting *United States v. Kubrick*, 444 U.S. 111, 123 (1979); *Almond v. Sisk*, No. 3:08-cv- 138, 2009 U.S. Dist. LEXIS 686688, at *4 (E.D. Va. Aug. 6, 2009) (internal quotation marks omitted)). According to well-settled Fourth Circuit precedent, the accrual date for Plaintiffs' claims was the date of the search. *See* Defs.' Br. at 10-12 (ECF No. 18).

In their Opposition, Plaintiffs argue that the Officers have misconstrued Fourth Circuit precedent, yet it is Plaintiffs who have overlooked facts crucial to the courts' holdings, failing to acknowledge that they were each on notice of a potential Section 1983 claim on the day each allegedly illegal search occurred. In each of the cases Plaintiffs cite, the courts specifically held that the Section 1983 plaintiff's claims accrued on the date of the allegedly illegal search and seizure, finding that the plaintiffs were either aware of their injury or were put on notice to make a reasonable inquiry as to whether a claim exists *at that time*:

- *Smith v. McCarthy*, 349 F. App'x 851 (4th Cir. 2009) (affirming district court's dismissal of § 1983 claim based on statute of limitations grounds for all events that allegedly occurred on the date of the plaintiffs' arrest, including the unlawful search and seizure claims);

- *Irving v. Hall*, Civil Action No. 3:16CV308, U.S. Dist. LEXIS 158177, at *11 (E.D. Va. Nov. 15, 2016) ("[Plaintiff] would have been aware of any claim he may have regarding the validity of the traffic stop at that time.");

- *Craddock v. Fisher*, Civil Action No. 3:12CV430, U.S. Dist. LEXIS 52412, at *10-11 (E.D. Va. Apr. 21, 2015) ("More importantly, Craddock's claim of illegal search and seizure arise from events on August 11 [2007], April 3, 2008, and April 14, 2008 and accrued on those dates, not after the conclusion of his criminal case or collateral challenge.");

- *Keck v. Virginia*, Civil Action No. 3:10cv555, 2011 U.S. Dist. LEXIS 115795, at *32 (E.D. Va. Sept. 9, 2011) *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 112695 (E.D. Va. Sept. 30, 2011) *aff'd*, 470 F. App'x 127 (4th Cir. 2012) (finding that the plaintiff's claims accrued at the time of the allegedly illegal search and seizure);

- *Horne v. Bailey,* 1:10cv641 (CMH/IDD), 2010 U.S. Dist. LEXIS 145096, at *5 (E.D. Va. June 25, 2010) ("Here, according to his allegations, the events giving rise to Horne's Section 1983 claims occurred on September 20, 2007, when the defendants conducted the allegedly unlawful search and seizure. . . . At that time, plaintiff possessed sufficient facts about the harm done to him that reasonable inquiry would reveal his cause of action, so it accrued on that date.") (internal citations and quotation marks omitted);

- *Blackmon v. Perez*, 791 F. Supp. 1086, 1091 (E.D. Va. 1992) ("Plaintiffs allege a host of discrete constitutional violations stemming from their allegations of illegal search and seizure. . . . Those claims based on the events of September 1-2, 1989, accrued on that date and were in no way affected by the subsequent dismissal of the criminal charges against the plaintiffs.").

Plaintiffs cite *Nasim v. Warden, Maryland House of Corrections*, 64 F.3d 951 (4th Cir. 1995), yet fail to consider the implications of the Fourth Circuit's analysis. Plaintiffs were on notice of their potential Section 1983 claims when the allegedly improper searches occurred. Further, Plaintiffs do not have any answer for the Fourth Circuit's decision in *Cramer v. Crutchfield*, 648 F.2d 943 (4th Cir. 1981), which is directly on point, and which held that a Section 1983 claimant cannot bring a claim based on an allegedly illegal search and seizure more than two years from the date of the search. In sum, Plaintiffs' claims accrued on the date of their respective searches (and arrests) and are barred by the statute of limitations.

### III. Plaintiffs Have Failed to Allege the Officers Had Any Knowledge of Their Arrests or Incarcerations, a Deficiency Fatal to Both Their Supervisory Claims and Any Individual Claims Against the Officers.

Plaintiffs' allegations regarding the Officers' knowledge are entirely insufficient to support any of their claims. Indeed, so deficient are they that Plaintiffs have attempted to create a new knowledge standard for imposing liability: "likely knew." *See* Pls.' Resp. Br. at 13. This

standard appears nowhere in any relevant law. Instead, the applicable standard requires Plaintiffs to plead that the Officers had *actual or constructive knowledge*. *See Patrick v. City of Petersburg, et al.,* Civil Action No. 3:15cv565-MHL, 2016 U.S. Dist. LEXIS 136380, at *17-18 n.19 (E.D. Va. Sept. 30, 2016) (noting the first element for supervisory liability is a showing that "the supervisor had *actual or constructive knowledge* that his or her subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injuries . . ." (emphasis added) (quoting *Shaw v. Stroud*, 13 F.3d 791,799 (4th Cir. 1994)); *Oliver v. Powell*, 250 F. Supp. 593, 598 (E.D. Va. 2002) (finding that a plaintiff alleging a Section 1983 violation must allege that a defendant "had personal knowledge of and involvement in the alleged violations of constitutional rights")).

Plaintiffs cannot point to a single allegation in the Complaint that suggests the Officers had *actual* knowledge of their arrests, convictions, or incarcerations. Plaintiffs thus are left to rely on constructive knowledge. But the facts alleged are insufficient as a matter of law to demonstrate that the Officers had even constructive knowledge of their arrests, convictions or incarcerations. A plaintiff can allege constructive knowledge in a number of ways, from pointing to written reports of misconduct, to a "supervisor's high level of responsibility coupled with the violations alleged to have occurred on her or his watch." *Woodson v. City of Richmond*, 88 F. Supp. 3d 551, 553 (E.D. Va. 2015) (quoting *Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007)).

In support of their claim that knowledge of Norton's misconduct was widespread, Plaintiffs offer an alleged interview with a confidential informant. (Compl. ¶¶ 106-09.) Plaintiffs, however, provide no information about this interview – not even the date the interview took place or any information about its contents. Like the rest of their allegations, Plaintiffs'

timeline of the interview is based on a guess.  And, without evidence of its contents, there is no way to know whether any alleged wrongdoing (let alone what sort of wrongdoing) by Norton was even discussed.  Nor is there any evidence of how widely the contents of the interview were disseminated.  Instead, Plaintiffs' allegations of liability are all based upon assumptions and theories, guesses and hypotheses about what *might* have happened – and what *probably* happened after that.  But Plaintiffs have not offered any evidence that the Officers knew that Defendant Norton allegedly violated any of Plaintiffs' rights or even that any of the Officers knew that Plaintiffs were arrested and detained.  Thus, there are no allegations to demonstrate the Officers knew or should have known that Norton allegedly was violating Plaintiffs' constitutional rights.

It also is important to note that the Complaint alleges violations that occurred while the Officers were employed in other divisions of the Richmond Police Department.  *See also* Defs.'s Br. at 13-15 (ECF No. 18).  According to the Plaintiffs' allegations, Capt. Harrison, Lt. Alston and Lt. Corrigan had no supervisory responsibility for Norton at the time of the arrest of either Plaintiff.  Cpt. Blackwell's supervision of Norton ended sometime in 2011.  In sum, Plaintiffs have not alleged any facts which could suggest constructive knowledge of the alleged violations.

Furthermore, Plaintiffs argue in their Response that the individual claims are not tethered to any allegations of supervisory responsibility:  "Defendants' liability in this respect does not depend on their roles as supervisors, but simply on their failures to act given their knowledge that Norton's misconduct would likely have caused persons like Plaintiffs to be unlawfully jailed."  Pls.' Resp. Brief at 12.  But, this assertion ignores the Complaint, which is entirely devoid of any allegations of the Officers' personal involvement or knowledge of Plaintiffs' respective incarcerations.  The *only* way that the Complaint attempts to tie the Officers to

Norton's alleged acts is through the Officers' roles as supervisors. The Complaint offers no facts upon which the Court could find that Plaintiffs have stated a plausible claim for relief against the Officers in their individual capacities.

Nor can Plaintiffs argue that any of the Officers are liable for a claim based upon "deprivation of liberty." Plaintiffs use inflammatory hypotheticals to argue that the Officers had a duty to personally intervene in their sentences and secure their releases from prison, but Plaintiffs' Opposition does not point to any case law that establishes such a duty.

Plaintiffs separately argue that *Golson v. Department of Corrections*, 914 F.2d 1491, 1990 U.S. App. LEXIS 17452 (4th Cir. 1990) (unpublished, per curiam), stands for the proposition that "when a person has reason to believe that someone is in jail but ought not to be, that person has a duty to act." (*See* ECF No. 31 at 27.) This is not the holding of *Golson*, however, where the Fourth Circuit affirmed the Eastern District of Virginia's dismissal of a Section 1983 case. Instead of imposing a duty to intervene on any actor in *Golson*, the Fourth Circuit actually held the opposite – that the Department of Corrections, which did not have actual knowledge of the plaintiff's incarceration beyond his sentence, did *not* have a duty to intervene on his behalf. *Id.* at *4. As the court said: "We are not prepared to hold that the Department, faced with a general inquiry from Golson about the accuracy of the calculation [of his remaining prison sentence], had a duty to contact the jail for Golson." *Id.* The court further found that the Department of Corrections did not act "with something more than mere negligence or with deliberate indifference to [the plaintiff's] situation so as to state a claim under § 1983." *Id.* Thus, the lone case Plaintiffs cite for the proposition that the Officers had a duty to intervene actually supports the Officers' position and arguments.

And, as discussed, Plaintiffs have not even pled that the Officers knew of Plaintiffs' arrests or incarcerations. Without this knowledge, even if a duty could be established (and it cannot), under the facts pled in the Complaint, the Officers who did not know Plaintiffs were arrested or incarcerated simply cannot have had any duty to intervene on their behalf.

The failure to plead any facts demonstrating that the Officers had knowledge of Plaintiffs' arrests or incarcerations also means Plaintiffs are unable to state a claim for bystander liability. As noted in the Officers' Brief, "[t]o succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." *Stevenson v. City of Seat Pleasant, Md.,* 743 F.3d 411, 417 (4th Cir. 2014) (internal quotation marks and modifications omitted). The first element of this claim plainly requires knowledge, something Plaintiffs have altogether failed to allege in their Complaint (leading to Plaintiffs arguing the "likely knew" standard in their response).

In sum, Plaintiffs' novel "likely knew" standard does not apply. Plaintiffs have failed to plead actual or constructive knowledge on the part of the Officers of any alleged violations by Norton. Plaintiffs therefore may not maintain personal or supervisory claims against the Officers, and all the claims against them must be dismissed with prejudice.

## IV. The Officers Are Entitled to Qualified Immunity Because Their Conduct Was Reasonable Under Any Objective Standard.

Finally, Plaintiffs' Response does not refute the Officers' assertion that they are entitled to qualified immunity. Plaintiffs have failed to allege (1) sufficient facts to make out a violation of constitutional right, (2) that was clearly established at the time of the alleged violation, and (3) that a reasonable person in the Officers' position would have known. *See Alfaro-Garcia v.*

*Henrico Cnty.*, Civil Action No. 3:15-cv-349-MHL, 2016 U.S. Dist. LEXIS 132274, at *38-39 (E.D. Va. Sept. 26, 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

In analyzing Plaintiffs' claims, the Court must view the Officers' conduct objectively, taking into consideration the relevant facts and circumstances existing at the time of the alleged violation. *See Henry v. Prunell*, 652 F.3d 524, 535 (4th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (finding that objective reasonableness has been the "touchstone" of qualified immunity). The Complaint and Plaintiffs' Response offer no evidence that would indicate to the Officers that Norton was falsifying or altering paperwork used to obtain search warrants. Instead, Plaintiffs' Response asks the Court to make incredible leaps in logic without laying any factual groundwork. For example, Plaintiffs allege that all of the Officers should have known Norton was lying to obtain search warrants because Norton's partner supposedly called him a "sinking ship," or because another officer stated Norton's desk was messy and he was "flying too fast and too loose." Pls.' Resp. Br. (ECF No. 31) at 7. Furthermore, Plaintiffs fail to allege facts showing how *any* reasonable police officer in the Officers' position would have any indication Plaintiffs' rights were being violated.[5] Plaintiffs do not allege the Officers were present for their arrests or even signed off on the arrest paperwork. The best Plaintiffs can allege is that the Officers "likely knew" there was some violation. But, again, they cite no case law for this standard. *See* Sec. III, *supra*.

Also important are the actions by Norton's supervisors on the two occasions where his alleged missteps came to light. On these occasions, Norton's supervisors issued a reprimand – a reasonable action by any standard. Indeed, the law is clear that even if an action proved to be ineffective, it does not render that action unreasonable. *See Mikkelsen v. DeWitt*, 141 F. App'x

---

[5] It is particularly difficult to understand how the Officers would have known that Norton had violated the rights of two individuals who pled guilty.

88, 92 (4th Cir. 2005) (stating that ineffective actions can still be reasonable because they are judged at the time they are made, not in hindsight) (citing *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001)). As a result, all of the Officers are entitled to qualified immunity, and Plaintiffs' Complaint should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Defendants Lieutenant Michael Alston, Lieutenant Brian Corrigan, Captain Martin Harrison, and Captain William Blackwell, by counsel, respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, enter judgment in favor of these Defendants, award costs and attorneys' fees expended herein, and grant such other and further relief as the Court deems just and appropriate.

Dated: November 17, 2017

**MICHAEL ALSTON,
BRIAN CORRIGAN,
MARTIN HARRISON, and
WILLIAM BLACKWELL**

By: __/s/ Stephen C. Piepgrass__
Ashley L. Taylor, Jr. (Va. Bar No. 36521)
Stephen C. Piepgrass (Va. Bar No. 71361)
Brooke K. Conkle (Va. Bar No. 87413)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1286
Facsimile: (804) 697-1339
E-mail: ashley.taylor@troutman.com
E-mail: stephen.piepgrass@troutman.com
E-mail: brooke.conkle@troutman.com

*Counsel for Michael Alston, Brian Corrigan,
Martin Harrison, and William Blackwell*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of November, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

**Counsel for Plaintiffs Bravette Johnson and Curtis Williams**
Mark J. Krudys
The Krudys Law Firm, PLC
SunTrust Center
919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
Email: mkrudys@krudys.com

John Frederick Preis
7719 Rock Creek Road
Henrico, VA 23229
Phone: (804) 289-8682
Email: jpreis@richmond.edu

Amy L. Austin
The Law Office of Amy L. Austin, PLLC
101 Shockoe Slip, Suite M
Richmond, VA 23219
Phone: (804) 343-1900
Fax: (804) 343-1901
Email: amyaustinlawyer@gmail.com

**Counsel for Defendant City of Richmond**
Stephen Hall
Richard E. Hill, Jr.
Office of the City Attorney
900 E. Broad St.
Richmond, VA 23219
Phone: (804) 646-7946
Email: Stephen.Hall@richmondgov.com
Email: Richard.HillJr@richmondgov.com

**Counsel for Defendant Jason Norton**
David P. Corrigan
M. Scott Fisher, Jr.
Harman Claytor Corrigan & Wellman
4951 Lake Brook Drive, Suite 100
Glen Allen, VA 23060-9272
Phone: (804) 762-8017
Email:  dcorrigan@hccw.com
Email: sfisher@hccwcom

**Counsel for Defendant Bryan T. Norwood**
Jonathan P. Harmon
Brian D. Schmalzbach
McGuireWoods
Gateway Plaza
800 E. Canal St.
Richmond, VA 23219-3916
Phone:  (804) 775-4712
Email: jharmon@mcguirewoods.com
Email: bschmalzbach@mcguirewoods.com

**Counsel for Defendants Christopher Gleason, Charles Sipple, and Roger Russell**
D. Cameron Beck, Jr.
C. Walker Terry
McCandlish Holton Morris
1111 E. Main Street, Suite 2100
P.O. Box 796
Richmond, VA 23218-0796
Phone: (804) 344-6322
Email: cbeck@lawmh.com
Email:  wterry@lawmh.com

/s/ Stephen C. Piepgrass
Stephen C. Piepgrass (Va. Bar No. 71361)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1286
Facsimile: (804) 697-1339
E-mail: stephen.piepgrass@troutman.com

33246439