IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BRAVETTE JOHNSON and <br> CURTIS WILLIAMS, <br>                 Plaintiffs, <br>   v. <br> CITY OF RICHMOND, <br> ET AL., <br>                 Defendants. | Civil Action No. 3:17-CV-553 |

**REPLY IN SUPPORT OF DEFENDANT BRYAN T. NORWOOD'S
MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

Both of these Plaintiffs were arrested because officers executing search warrants found contraband in their possession. Both Plaintiffs then pled guilty, acknowledging ownership of the contraband. Each Plaintiff served time in prison following his guilty plea, and neither Plaintiff now disputes his guilt.

Plaintiffs nevertheless demand more than $20 million for the time they spent in prison because of alleged Fourth Amendment violations preceding their arrests. In Plaintiffs' view, this case should be adjudicated as if they had not been caught red-handed and as if they had not confessed their guilt. The problem is that in civil cases, courts cannot ignore this undisputed evidence of guilt. Thus, each Plaintiff's arrest and guilty plea was fully supported by probable cause, and Plaintiffs fail to state a Fourth Amendment claim or any other constitutional violation. As one court said under nearly identical circumstances: "[T]his is not a case of actual innocence or wrongful imprisonment." There is accordingly "no reason to compensate" Plaintiffs for the time they served after pleading guilty to offenses of which they were guilty. *Williams v. City of Tulsa*, 2016 WL 1572957, at *7 (N.D. Okla. Apr. 19, 2016).

Even if Plaintiffs could state a predicate claim—under the Fourth Amendment or otherwise—Chief Norwood would not be liable. Under *Ashcroft v. Iqbal*, the Court must dismiss a § 1983 complaint against a supervisor unless the supervisor's *own individual actions* violated the Constitution. 556 U.S. 662, 676 (2009). Even under the pre-*Iqbal* standard for supervisory liability, Plaintiffs bear a "heavy burden of proof," *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984), because proving that a supervisor was *negligent* is not enough. Rather, supervisors are only liable for being *deliberately indifferent* to constitutional violations—for choosing to do nothing in the face of a serious problem.

Plaintiffs' own allegations doom any claim of deliberate indifference. Far from turning a blind eye to Officer Norton, the RPD reprimanded him multiple times under Chief Norwood's leadership. And far from doing nothing for the confidential informant program, the RPD assigned a lieutenant to spearhead reform in what even Plaintiffs acknowledge was a "targeted effort by RPD leadership." Compl. ¶ 124.

Because Plaintiffs cannot argue that Chief Norwood did *nothing* to address the RPD's confidential informant program, they must argue that he should have done *more*. And so they do—setting out a series of "reasonable" (in their view) steps that the RPD should have taken here. Whether Plaintiffs' policy recommendations would have been reasonable or effective is academic, however, because that would only show potential *negligence*. Deliberate indifference is a much higher standard, and Plaintiffs' attempt to meet that standard with allegations of negligence fails as a matter of law. Because there is no basis for making Chief Norwood liable for the imprisonment of these undisputedly guilty men, the Court should dismiss all claims against him.

ARGUMENT

I. **Plaintiffs fail to state a Fourth Amendment claim against Chief Norwood as a supervisor.**

   A. **Plaintiffs fail to state a predicate Fourth Amendment claim.**

The malicious prosecution claims at the heart of the Complaint remain defective because Plaintiffs were not seized "pursuant to legal process unsupported by probable cause." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

First, it is undisputed that Plaintiffs were arrested *without* warrants, not pursuant to search warrants. *See* Norwood Motion to Dismiss ("MTD"), Doc. No. 16, at 3. A warrantless arrest is not "a seizure . . . pursuant to legal process." *Evans*, 703 F.3d at 647; *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) (a detention pursuant to warrantless arrest was "*without legal process*"). Because Plaintiffs' Opposition does not allege any other seizure that was made pursuant to legal process without probable cause, they fail to state a claim for malicious prosecution.

Plaintiffs also fail to state a Fourth Amendment claim because there *was* probable cause for their arrests: the search warrants revealed undisputed evidence of guilt that cannot be excluded in a civil case. MTD 3-4. Plaintiffs' argument for pretending that evidence did not exist under the "fruit of the poisonous tree" doctrine has no support in law or logic in this civil case.

Plaintiffs do not dispute that courts have applied a clear rule: the fruit of the poisonous tree doctrine does not apply in civil cases. *See* Opp. 10. At least three circuits have held that "the exclusionary rule and the fruit of the poisonous tree doctrine *never* apply in a civil suit against police officers." *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) (emphasis added) (citing *Townes v. City of New York,* 176 F.3d 138, 145 (2d Cir. 1999); *Wren v. Towe,* 130 F.3d 1154, 1158 (5th Cir. 1997)). And multiple courts have applied that rule despite allegations that "an officer has intentionally defrauded the legal system. *See Williams v. City of Tulsa* is right on

3

point. 2016 WL 1572957 (N.D. Okla. Apr. 19, 2016); *Bradshaw v. Mazurski*, 2004 WL 170337, at *6 (N.D. Ill. Jan. 15, 2004).

Plaintiffs have not identified a single case applying the fruit of the poisonous tree doctrine in a civil case. They do not even attempt to distinguish *Bradshaw v. Mazurski*, which refused to apply the fruit of the poisonous tree doctrine where officers allegedly procured a search warrant using false testimony and then discovered contraband that led to the plaintiff's arrest and prosecution. 2004 WL 170337, at *6. And Plaintiffs cannot distinguish *Williams*, which is right on point. Their only response to *Williams* is that "the plaintiff did not address the issue at all." Opp. 13. But the plaintiff's brief plainly asked the court to apply the exclusionary rule in that civil case: "[A]ny evidence garnered from a falsified search warrant should be excluded when considering whether probable cause existed to continue the prosecution of the Plaintiff." 2016 WL 3566057 (N.D. Okla. Jan. 8, 2016). The *Williams* court refused, like every other court, to consider this issue. 2016 WL 1572957, at *6-7.

Plaintiffs' policy arguments do not justify applying the fruit of the poisonous tree doctrine to Chief Norwood either. The Fourth Amendment is meant to protect privacy, not crime, but applying the doctrine in civil cases would protect the latter with little or no benefit to the former. Moreover, Plaintiffs' arguments suggest at most that additional deterrence is appropriate in civil cases against bad egg officers who have "intentionally defrauded the legal system." Opp. 12. Even if that argument had merit—despite no court adopting it—it would not justify incorporating the fruit of the poisonous tree doctrine into civil cases against *supervisors* who have not participated in any intentional violations. Because Plaintiffs have neither precedent nor any policy argument

4

for applying the doctrine *to Chief Norwood*, the Court cannot ignore the undisputed evidence of guilt when deciding whether there was probable cause that Plaintiffs were guilty.[1]

### B. *Iqbal* forecloses Plaintiffs' theory of supervisory liability.

Plaintiffs contend (at 13-15) that the Court can determine supervisory liability without regard to *Ashcroft v. Iqbal*. But they ignore *Iqbal*'s holding that a supervisor "is only liable for his or her own misconduct," 556 U.S. at 677, and that "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *id.* at 676 (emphasis added); *see also id.* at 693 (Souter, J., dissenting) ("The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."). Because Plaintiffs have not alleged that Chief Norwood violated the Constitution *through his own individual actions*, their supervisory liability claims fail.

Plaintiffs nevertheless contend that in the Fourth Circuit, *Iqbal* "is a pleading case, not a supervisory liability case," such that "tacit authorization" remains a viable theory of supervisory liability. Opp. 15 (citing *Danser v. Stansberry*, 772 F.3d 340 (4th Cir. 2014)). That statement cannot be reconciled with *Iqbal*'s holding. *See also Evans*, 703 F.3d at 661 (Wilkinson, J., concurring) ("[T]he complaints in this case repeatedly allege that the so-called supervisory defendants violated plaintiffs' constitutional rights on the theory that they 'knew or should have known' about their subordinates' conduct. This directly contradicts *Iqbal*'s holding that such allegations, standing alone, cannot give rise to supervisory liability.").

---

[1] In addition, Plaintiffs' claims remain time-barred under Va. Code § 8.01-243 for the reasons in the City of Richmond's brief and reply.

In any event, *Danser* was an 8th Amendment case for which "tacit authorization" may be a viable theory of liability. Because a subordinate who is deliberately indifferent to a risk of serious physical harm can be directly liable under the 8th Amendment, a supervisor who is deliberately indifferent to the same harm is also *directly* liable under the 8th Amendment. *See Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) ("[A]fter *Iqbal,* Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved 'knowingly or with 'deliberate indifference' that a constitutional violation would occur' at the hands of his subordinates, *unless that is the same state of mind required for the constitutional deprivation he alleges*." (emphasis added)). Thus, *Danser* is consistent with *Iqbal*'s holding as explained in Chief Norwood's brief (at 5-7).

### C. Chief Norwood is not liable as a supervisor even under Plaintiffs' own theory.

Even under the pre-*Iqbal* standard, these Plaintiffs fail to satisfy the "heavy burden of proof in supervisory liability cases." *Slakan*, 737 F.2d at 373. That is because Plaintiffs have alleged no facts showing that Chief Norwood had "actual or constructive knowledge of a risk of constitutional injury," showed "deliberate indifference to that risk," and that there was "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered." *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999).

First, Plaintiffs still have not shown Chief Norwood's actual or constructive knowledge of a risk "that a violation of a *particular* constitutional or statutory right will follow." *Carter*, 164 F.3d at 218. At most, Plaintiffs' allegations amount to characterizing an officer as a bad egg. Plaintiffs offer no argument that Officer Norton's alleged interference with the arrest of a confidential informant would render his informants unreliable. Opp. 17. Nor does the fact of an FBI interview with a confidential informant or the existence of rumors that Officer Norton was

6

playing "too fast and too loose" reveal any risk of the *particular* constitutional violation that Plaintiffs allege here. *Id*. Likewise, failing to properly record signatures for payments to confidential informants may not be best practices for public funds, *id.*, but it does not implicate the reliability of the informants themselves. Such a splatter-painted picture of scattered violations is insufficient as a matter of law because Plaintiffs fail to show that Chief Norwood *knew* that Officer Norton was relying on confidential informants who were not reliable. *Carter*, 164 F.3d at 219; *see also Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011) (dismissing a supervisory claim for failing to plead a supervisor's knowledge of "factually similar" violations).

Second, Plaintiffs still have not shown that Chief Norwood was deliberately indifferent to the risk that warrants were issuing based on unreliable informants. Plaintiffs ignore the important steps that the RPD took under his leadership. In particular, the RPD initiated an investigation into the confidential informant program that even Plaintiffs acknowledge was a "targeted effort" to fix issues with that program. Compl. ¶ 124. Furthermore, the RPD actually reprimanded Officer Norton for his behavior. Compl. ¶¶ 110-12. That disciplinary action shows that Chief Norwood was not deliberately indifferent. *See Carter*, 164 F.3d at 221. And Plaintiffs raise no allegation that Chief Norwood failed to fully comply with the FBI's investigation.

Plaintiffs' Opposition attempts to pivot from a deliberate indifference standard to mere negligence, and urges that Chief Norwood was negligent because it was unreasonable not to do *more* than reprimand Officer Norton and clean up the CI program. *See, e.g.*, Opp. 8 ("Norwood failed to take *reasonable steps*"); *id.* at 18 (alleging that Chief Norwood had an "*insufficient response*" to Officer Norton) (emphases added). Even if those allegations amounted to negligence, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "Actions that in hindsight are 'unfortunate'

7

or even 'imprudent' will not suffice" for deliberate indifference. *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001). The law of deliberate indifference accordingly "does not burden a superior officer with a heightened affirmative duty to investigate." *Jackson*, 771 F. Supp. 2d at 603. Thus, whether it would have been reasonable to take additional steps such as launching additional investigations is irrelevant: Chief Norwood's actions were more than adequate under the deliberate indifference standard.

Finally, Plaintiffs fail to state a claim that Chief Norwood is liable as a supervisor because they ignore the "intervening superseding causes that break the causal chain." *Evans*, 703 F.3d at 647. In particular, Plaintiffs have no response to the insulating effect of "subsequent acts of independent decision-makers," *id.*, including the independent prosecutors, grand juries, and their own decisions to plead guilty. MTD 9-10. Because all of those actors break the "affirmative causal link" as a matter of law, Plaintiffs' claims for supervisor liability must be dismissed.

**II.     Plaintiffs fail to state a claim against Chief Norwood as a supervisor for allowing the guilty to plead guilty.**

As explained above, Chief Norwood is not liable as a supervisor either under *Iqbal* or under the pre-*Iqbal* standard. Plaintiffs agree that supervisory liability analysis is "nearly identical" for the malicious prosecution and guilty plea claims, and offer no reason why Chief Norwood could be liable for the former but not the latter. Opp. 23 ("Plaintiffs' allegations state a claim for relief under this standard for the same reasons discussed above in relation to their malicious prosecution claim."). Thus, these claims should be dismissed for the same reasons.

### III. Chief Norwood is not liable under the Eighth or Fourteenth Amendments for failing to have admittedly guilty Plaintiffs released from prison sooner.

#### A. Plaintiffs fail to state a claim for letting the guilty remain in prison during their judicially determined sentence.

Plaintiffs' Opposition relies entirely on one unpublished decision for the proposition that Chief Norwood had an obligation to seek the early release of prisoners who pleaded guilty and do not dispute their guilt. Opp. 23-24. But *Golson v. Department of Corrections*, 914 F.2d 1491 (4th Cir. 1990) (unpublished), does not support the unprecedented right Plaintiffs ask this Court to create.

First, Plaintiffs tellingly avoid quoting the relevant part of *Golson*: "Incarceration *beyond the termination of one's sentence* may state a claim under the due process clause and the eighth amendment." *Id.* (emphasis added); *see also* MTD 12. Nothing in *Golson* supports any rule beyond so-called "overdetention" cases, or else Plaintiffs would have quoted it. Nor do Plaintiffs cite any case actually finding a right in *Golson* for the confessedly guilty to be released *before* the termination of their sentences.

Second, Plaintiffs avoid the fact that *Golson* applies to the corrections officials who are actually responsible for determining the correct release date. Plaintiffs do not even attempt to distinguish *Owens v. Butler*, which recognizes a plaintiff's burden under *Golson* to "establish that a *jail official* actually knew of and disregarded a serious risk" of overdetention. 2016 WL 538463, at *4 (W.D.N.C. Feb. 9, 2016); *see also* MTD 13.[2]

---

[2] Oddly, Plaintiffs assert that Chief Norwood did not contest the "non-supervisory" allegations in Count VI "in any way." Opp. 25 n.15. Yet two pages before, Plaintiffs recite (and fail to rebut) the arguments in the Motion to Dismiss why those allegations do not state a claim Opp. 23 (citing MTD 12-13). In addition, the Motion to Dismiss cited the allegations in that very count and explained that they create "no duty to intervene except where an officer would be liable as a bystander." MTD 13. Plaintiffs do not dispute that there is no duty to intervene except in those circumstances.

## B. Plaintiffs fail to state a claim for bystander liability.

Plaintiffs do not dispute that their bystander liability claims under the Eighth or Fourteenth Amendments require *actual knowledge* that "a fellow officer is violating an individual's constitutional rights." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014); *see also* Opp. 24. This requires such "specific knowledge" that the bystander, "by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 n.24 (4th Cir. 2002). Thus, bystander liability might attach if one officer passively observes another beating an arrestee, *see, e.g.*, *Stevenson*, 743 F.3d at 419, or one officer is a passenger in a car with which the driver attempts to injure a citizen, *Yang v. Hardin*, 37 F.3d 282, 283 (7th Cir. 1994).

The facts alleged by Plaintiffs simply do not amount to such functional participation in another officer's unconstitutional act. *Randall*, 302 F.3d at 204. Unlike the defendants in those successful bystander liability cases, there is no allegation that Chief Norwood knew about the decision to seek the search warrants at issue, or to arrest these particular Plaintiffs, or to allow them to plead guilty. Plaintiffs rely on a series of innuendo and inference that does not even plausibly demonstrate deliberate indifference, let alone the sort of "specific knowledge" necessary for liability as a bystander. Moreover, Plaintiffs do not dispute that at the time, their guilty pleas constituted "an admission of past conduct" that rebutted any inference that their imprisonment was unwarranted. *United States v. Murphy*, 380 F. App'x 344, 345 (4th Cir. 2010). Plaintiffs have no persuasive explanation for how Chief Norwood could have had actual knowledge that they should not be in jail when they publicly confessed to jailable offenses.

## C. Plaintiffs fail to state a claim for supervisory liability.

Chief Norwood is not liable as a supervisor under the Eight and Fourteenth Amendment claims for the same reasons that the other supervisory liability claims fail. Plaintiffs agree that the

same *Shaw* standard of supervisory liability applies, Opp. 25-26, and offer no reason why this last batch of supervisory liability claims could survive when the others fail. These claims should be dismissed.

IV.    **Chief Norwood is entitled to qualified immunity.**

   A.    **Qualified immunity bars the malicious prosecution claims.**

Chief Norwood's brief explained that he is entitled to qualified immunity, which shields government officials from liability in a § 1983 suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Raub v. Campbell*, 785 F.3d 876, 880–81 (4th Cir. 2015) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). In particular, qualified immunity bars Plaintiffs' malicious prosecution claims, because the "facts would not have put a reasonable officer on notice of any defects in the warrants that produced uncontested proof of Plaintiffs' guilt." MTD 15-16; *see also Smith v. Munday*, 848 F.3d 248, 255-56 (4th Cir. 2017) ("[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner").

Plaintiffs still do not dispute that those warrants produced uncontested proof of guilt. Under the law in effect at the time, each Plaintiff's guilty plea was "an admission of past conduct" that "does not depend on the seized evidence." *United States v. Murphy*, 380 F. App'x 344, 345 (4th Cir. 2010). That means that under operative law at the time, Plaintiffs were *not* "unlawfully in jail"—they were in jail due to their decision to admit the charges against them. *Cf.* Opp. 26. Thus, a reasonable officer in Chief Norwood's position would see no need to seek Plaintiffs' release. The fact that the fruit of the poisonous tree doctrine does not apply here only confirms that Chief Norwood is entitled to qualified immunity.

### B. Qualified immunity bars the guilty-plea claims.

Chief Norwood is also immune from Plaintiffs' guilty-plea claims because the only case with any hope of clearly establishing this right was decided *after* Chief Norwood left the Richmond Police Department. Plaintiffs do not (and cannot) dispute that he was no longer a state actor at that point. MTD 18. Up until Chief Norwood's resignation in February 2013, the Fourth Circuit held that "even assuming arguendo a Fourth Amendment violation had occurred, this would not undermine [a criminal defendant's] guilty plea because a plea is an admission of past conduct and does not depend on the seized evidence." *Murphy*, 380 F. App'x at 345. It follows that a proposition *cannot* be clearly established when the only word from the 4th Circuit squarely holds to the contrary. *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), which drew a dissent from Judge Agree criticizing the *departure* from previous law, therefore cannot overcome Chief Norwood's qualified immunity.[3]

### C. Qualified immunity bars the Eighth and Fourteenth Amendment claims.

Finally, Chief Norwood is entitled to qualified immunity on Plaintiffs' Eighth and Fourteenth Amendment claims that he failed to take action to secure their release from prison before the end of their term. Plaintiffs rely solely on *Golson* for the creation of this right. But *Golson* was limited by its terms to "overdetention" situations where prisoners remain in prison beyond their judicially determined sentence when jail officers have an obligation to release them. *See supra* at 9. *Golson* does not establish *any* right that Plaintiffs can invoke here, let alone a *clearly established* right.

---

[3] *Fisher* is also irrelevant because qualified immunity attaches once and for all if the allegedly violated right was not clearly established "at the time of the violation." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017). The time of the violation for the guilty-plea claims was when Plaintiffs pleaded guilty—well before *Fisher* was decided.

## CONCLUSION

For these reasons, the Court should dismiss all claims against Bryan Norwood with prejudice.

Dated: November 17, 2017

Respectfully submitted,

/s/ Brian D. Schmalzbach
Jonathan P. Harmon (VSB #39081)
Brian D. Schmalzbach (VSB #88544)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that on November 17, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered users.

/s/ Brian D. Schmalzbach
Jonathan P. Harmon (VSB #39081)
Brian D. Schmalzbach (VSB #88544)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(T) (804) 775-1000
(F) (804) 698-2304
jharmon@mcguirewoods.com
bschmalzbach@mcguirewoods.com
